[newpol]

# BOP0076884 02  05/08/2018   EN-

```
JAI DEV INC DBA BEST WESTERN RADFORD INN
1501 TYLER AVE
RADFORD, VA 24141
```

Dear Valued Policyholder,

Thank you for choosing Brethren Mutual to service your insurance needs.  We value you as a customer and appreciate your business.

We want to be sure you completely understand your policy and the coverage we provide.  If you have any questions concerning your policy, please contact your agency  MCGRIFF INSURANCE SERVICES INC at 540-437-1300 or Brethren Mutual's Policyholder Services Department at 800-621-4264.

Please note that your policy is non-assessable, and the named insured shall not be liable for any additional contingent premium or assessment liability.

In the event you experience a claim, please report the claim to your agency or Brethren's Claims Department at 800-621-4264 (Monday thru Friday/8am - 4:30 pm).  For emergency claims service after normal business hours, weekends or holidays, please call 800-241-2541.

The insured named in this policy is hereby notified by virtue of this policy, he or she is a member of The Brethren Mutual Insurance Company and is entitled to vote either in person or by proxy at any and all member meetings of the Company.  The Annual Meeting of the policyholders is held at the Home Office of the Company located at 149 North Edgewood Drive, Hagerstown, MD, on the second Friday in April each year at 9:00 am.

For more information on Brethren Mutual insurance products and services, visit www.bmic.com.  Once again, thank you for your business and we look forward to serving your insurance needs.

Michael W. Brashears
Vice Chairman & President/CEO


Exhibit 1

**POLICY NUMBER:**   BOP0076884  02                                                                BMI 12 01 09 11

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# POLICY CHANGES

| POLICY EFFECTIVE DATE | POLICY CHANGE EFFECTIVE DATE |
|---|---|
| **From**  05/08/2018   **to**  05/08/2019 | 08/14/2018 |

CHANGES

ADD LP

**PREMIUM ADJUSTMENT**          No Premium Change

$ _____ 0.00 _____

          Includes copyrighted material of Insurance Services Office, Inc. with its permission

**POLICY NO.** BOP0076884  02

# Brethren Mutual
## Insurance Company
### Hagerstown, MD  21740

## BUSINESSOWNERS POLICY DECLARATIONS

Policy Change Endorsement          Eff:08/14/2018

Policy Type: [ ] Special   [X] Advantage

| NAMED INSURED and MAILING ADDRESS | AGENCY |
|---|---|
| JAI DEV INC DBA BEST WESTERN RADFORD INN<br>1501 TYLER AVE<br>RADFORD VA 24141 | 7010000    0002894<br>MCGRIFF INSURANCE SERVICES INC<br>P. O. BOX 929<br>HARRISONBURG VA 22801-0000<br><br>Phone:  540-437-1300 |

| POLICY PERIOD: | Billing Inquiries: 1-800-621-4264 |
|---|---|

FROM    05/08/2018      TO     05/08/2019       12:01 A.M. Standard Time at your Mailing Address above.

**IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.**

| TOTAL ANNUAL PREMIUM:  $     27,417 | POLICY SUBJECT TO ANNUAL AUDIT: | [X] YES | [ ] NO |
|---|---|---|---|

### Description Of Business

Form Of Business:  [ ] Individual   [ ] Partnership   [ ] Joint Venture   [ ] Limited Liability Company   [X] Corporation

### Premises Information

| Prem. No. | Bldg. No. | Premises Address: | Business Description |
|---|---|---|---|
| 001 | 001 | 1501 TYLER AVE<br>RADFORD VA 24141-5007 | HOTEL |
| 001 | 002 | 1501 TYLER AVE<br>RADFORD VA 24141-5007 | AUXLIARY BUILDING |

### LIABILITY AND MEDICAL PAYMENTS

Each paid claim for the following coverages reduces the amount of insurance we provide during the applicable annual period. Please refer to Section II - Liability in the Businessowners Coverage Form and any attached endorsements.

| | | |
|---|---|---|
| Liability & Medical Expenses | $ 1,000,000 | Per Occurrence |
| Medical Expenses | $     5,000 | Per Person |
| Damage To Premises Rented To You | $   500,000 | Any One Premises |
| Other Than Products/Completed Operations Aggregate | $ 2,000,000 | |
| Products/Completed Operations Aggregate | $ 2,000,000 | |

### DEDUCTIBLE

**Optional Property Damage Liability Deductible:**       $  N/A       Per Occurrence (Refer to BP 07 04)

### Property Coverage Limits Of Insurance

| Prem. No. | Bldg. No. | Type Of Property (Bldg/Bus. Pers. Prop.) | Actual Cash Value Bldg. Option | Automatic Increase Bldg. Limit (Percentage)** | Limit of Insurance* |
|---|---|---|---|---|---|
| 001 | 001 | Building | | 2 | $ INCLUDED |
| | | Personal Property | | | $ INCLUDED |
| 001 | 002 | Building | | 2 | $ INCLUDED |
| | | Personal Property | | | $ INCLUDED |

*Includes Automatic Increase Building Limit Percentage

**This percentage can only vary by premises, not by building.

### BLANKET INSURANCE

Indicate the type of property to be blanketed and the blanket limit of insurance.

**Type Of Property:**   Combined  Bldg & Personal Property       **Limit Of Insurance:**   $  8,204,500

**COMPANY COPY**

**POLICY NO.** BOP0076884   02

# Brethren Mutual
## Insurance Company
Hagerstown, MD  21740

## BUSINESSOWNERS POLICY DECLARATIONS

### Mortgageholder Name And Address:

BANKUNITED NA                                                                      1ST MTG L1B1-2
ITS SUCCESSORS AND/OR ASSIGNS
PO BOX 5919
TROY, MI 48007

### DEDUCTIBLES (Apply per location, per occurrence)

| Prem. No. | Property Deductible | Optional Coverage/Glass Deductible | Windstorm Or Hail Percentage Deductible |
|---|---|---|---|
| 001 | $  5,000 | $500 | N/A  % |

### Additional Coverages –   Optional Higher Limits/Extended Number Of Days (Per Policy)

| Coverage | Limit Of Insurance/Extended Number of Days | |
|---|---|---|
| Business Income - Extended Number Of Days For Ordinary Payroll Expenses | | Days |
| Extended Business Income-Extended Number Of Days | | Days |
| Electronic Data - Increased Limit | $     25,000 | |
| Interruption Of Computer Operations - Increased Limit | $     25,000 | |
| Employee Dishonesty | $    100,000 | |
| Forgery Or Alteration | $    100,000 | |
| Hired and Non-Owned | $Refer to BP0404 | |

### Additional Coverage - Optional Higher Limits (Per Building)

| Coverage | Prem No. | Bldg No. | Limit Of Insurance |
|---|---|---|---|
| Accounts Receivable | 001 | 001 | $    100,000 |
| Accounts Receivable | 001 | 002 | $    100,000 |
| Valuable Papers and Records | 001 | 001 | $    100,000 |
| Valuable Papers and Records | 001 | 002 | $    100,000 |
| Ordinance or Law | 001 | 001 | Refer to BP0463 |
| Ordinance or Law | 001 | 002 | Refer to BP0463 |
| Business Income From Dependent Properties | 001 | 001 | $     25,000 |
| Business Income From Dependent Properties | 001 | 002 | $     25,000 |

Optional Coverages - Applicable only if an 'X' is shown in the boxes below:

**Location:**  001          1501 TYLER AVE
RADFORD VA 24141-5007

| | Coverage | Limit of Insurance | |
|---|---|---|---|
| X | Outdoor Signs | $     25,000 | Per Occurrence |
| X | Money & Securities | $     25,000 | Inside the Premises |
| | | $     25,000 | Outside the Premises |
| X | Equipment Breakdown | $    INCLUDED | |
| X | Fire Department Service Charge | $     25,000 | |
| X | Water Back Up | $ Refer to BP0453 | |
| | Auto Legal Liability | $ | |

**Self-Storage Facilities:**

| | Coverage | Limit of Insurance | |
|---|---|---|---|
| | Customer Goods Legal Liability | $ | |
| | | $ | |
| X | Motels - Liability For Guests' Property Optional Limits: | $     50,000 | Per Occurrence |
| | | $      2,000 | Per Guest |
| X | Motels - Liability For Guests' Property In Safe Deposit Boxes: | $     25,000 | Per Occurrence |

BMI DS 01 07 11                    ISO Properties, Inc., 2005                    **Page**

**COMPANY COPY**

**POLICY NO.** BOP0076884  02

# Brethren Mutual
## Insurance Company
Hagerstown, MD  21740

## BUSINESSOWNERS POLICY DECLARATIONS

**ENDORSEMENTS APPLICABLE PER POLICY**

See Attached BMI 99 99 01 89

Countersigned: _____08/24/18_____
                          Date

By: _SIGNATURE NOT REQUIRED_
         Authorized Representative

BMI DS 01 07 11                    ISO Properties, Inc., 2005                    **Page**

**COMPANY COPY**

**BUSINESSOWNERS**
**B63 BO 1223 01 17**



# Brethren Mutual
## Insurance Company

Policy Number  BOP0076884    02
Insured   JAI DEV INC DBA BEST WESTERN RADFORD INN

# Schedule of Auditable Classes

| Location # | Building # | Class Code | Class Description | Exposure Basis | Sales/Payroll Exposure |
|---|---|---|---|---|---|
| 1 | 1 | 69161 | MOTELS-W/ LIMI | SL | $1,350,000 |

# POLICYHOLDER*page*

### Commercial Lines Updates Published for Brethren Mutual Policyholders

## ✓  A Quick Note Regarding the U.S. Treasury Department's Office Of Foreign Assets Control ("OFAC")

The Office of Foreign Assets Control(OFAC) administers and enforces sanction policy, based on Presidential declarations of "national emergency." This notice provides information concerning possible impact on your insurance coverage due to directives issued by OFAC.

The following has been identified by OFAC as "Specially Designated Nationals and Blocked Persons:"

- Foreign agents;
- Front organizations;
- Terrorists;
- Terrorist organizations; and
- Narcotics traffickers.

This list is located on the United States Treasury's website @www.treas.gov/ofac.

In accordance with OFAC regulations, if it is determined that **you or any other insured**, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law or is a Specially Designation National and Blocked Person, as identified by OFAC, this insurance will be considered a blocked or frozen contract and all provisions of this insurance are immediately subject to OFAC.

When an insurance policy is considered to be such a blocked or frozen contract, no payment nor premium refunds may be made without authorization from OFAC.  Other limitations on the premiums and payment also apply.

## ✓  Farm Package Policy *& Farm Plus*

Farming is your business. Protecting your farm is our business. Did you know Brethren Mutual is the largest farm insurance writer in the state of Maryland? We have been protecting farmers from loss to their property since 1897. Brethren offers farmers the opportunity to add the **Farm Plus Endorsement** to the Farm Package for enhanced coverage and protection. Contact your BMIC independent insurance agent for more details!

## ✓ Enhance Your Commercial Coverage

Brethren is pleased to offer its commercial customers two enhancements for commercial package accounts. The Property Plus I provides a variety of coverages at no additional cost to the policyholder. The new Property Plus II adds a comprehensive package of coverages for an additional premium.

## ✓ Protect Your Equipment from Breakdown

Equipment Breakdown Coverage covers your equipment that plugs into an electrical outlet. Your equipment is protected from breakdown of mechanical, electrical and pressure systems resulting from power surges, mechanical breakdown, short circuits, electrical arcing, operator error, etc. Contact your BMIC independent agent for a quote!

## ✓ Brethren Mutual Continues to Automatically Provide Terrorism Coverage at No Charge

In compliance with the Terrorism Risk Insurance Act (TRIA) of 2002 signed into law by President Bush, Brethren Mutual automatically provided coverage from Certified Acts of International Terrorism on commercial and farm accounts at no charge.  Congress and President Bush have approved the Terrorism Risk Insurance Program Reauthorization Act of 2007 (TRIPRA).  This extends TRIA for an additional seven years through December 31, 2014.  Plus, the distinction between foreign and domestic acts of terrorism has been eliminated.

The TRIPRA does not apply to or cover crime insurance and commercial auto coverage.  Additionally, personal lines losses (i.e. homeowner, personal auto, etc.) are not covered under the Act.  Terrorism coverage is provided at no cost to the commercial insured. However, Brethren Mutual is mandated by law to charge for the coverage on all Workers' Compensation policies.

## ✓ Paying Your Premium With a Check?

Brethren Mutual has recently begun using a Remote Deposit machine to deposit premium payments made by check.  An electronic scan of each check is sent to the bank daily.  Therefore, customers who currently receive physical checks with their monthly bank statements will now only receive an IRD (Image Replacement Document) for their Brethren Mutual payment.

# BRETHREN MUTUAL CONSUMER PRIVACY NOTICE
### For information only - No action required

The Brethren Mutual Insurance Company respects your right to privacy. We maintain the confidentiality of any non-public personal information we obtain from you. In compliance with federal law, Brethren Mutual is required to provide its existing and former policyholders with the Company's privacy policy. This notice will describe how Brethren Mutual safeguards, collects and uses information it receives about individuals who apply for our products.

## Why Brethren Mutual collects information.

When applying for insurance with Brethren Mutual, we will evaluate your application to see whether you qualify for the requested policy and rate. Once you are a Brethren Mutual policyholder, we will periodically review your eligibility for coverage to ensure you are receiving proper discounts and surcharges.

## What information does Brethren Mutual collect.

Brethren Mutual may collect the following categories of information about you:
- Information we receive from you on applications, such as your name, address, social security, employment, etc.
- Information about your transactions with us, such as payment and claims history.
- Information we receive from third parties, such as your credit history.
- Information we obtain from others to verify information provided by you.

## How Brethren Mutual collects information.

As part of Brethren Mutual's underwriting process to determine proper rates and coverages for you, we may request additional information from: you, a resident of your household, your independent agent, or a third party (i.e. consumer reporting agency).

## How Brethren Mutual uses information.

Brethren Mutual processes its new business applications and renewals in a consistent manner to ensure all consumers are treated fairly and receive the proper rate for insurance. Our information about you is used **only** for business purposes relevant to your relationship with us. We may use this information to determine your eligibility for coverage or adjust a claim.

## How Brethren Mutual protects your information.

Brethren Mutual's employees are required to protect the confidentiality of your information. Employees may access your information to administer or offer a product or service. Our employees are authorized to access consumer information only for legitimate business purposes. To further protect your information, Brethren Mutual also maintains physical, electronic and procedural safeguards within the Company that comply with all applicable laws.

## Maintenance and Disclosure of Information.

In most cases, Brethren Mutual will **not** send information about you to third parties without your consent. However, disclosure may be necessary for the conduct of our business or required by law. In this situation, Brethren Mutual may send some or all of the information to our agents or third parties without your consent. For example, we may give information to:
- state insurance departments in order to regulate Brethren Mutual's business,
- other government authorities,
- your independent agent,
- organizations that perform underwriting or claim investigations,
- another insurance company to which you have applied for coverage or submitted a claim,
- insurance support agencies, law enforcement agencies and our reinsurers, or
- any other third party, as permitted or required by law.

Additionally, Brethren Mutual may disclose information about you for audit or research purposes. However, we will **not** share your information with non-affiliated third parties for the purpose of marketing products or services.

## Consumer Reporting Agencies.

Any consumer reporting agency that gathers information about you may share your information with others who are authorized to use consumer reports by the Federal Fair Credit Reporting Act or by applicable state credit reporting acts. Insurance companies obtain these reports from a consumer reporting agency. Brethren Mutual may obtain the following reports for you: Motor Vehicle Records (MVR's), credit reports, reports that deal with your claims with us and other insurance companies, and reports that describe the condition and maintenance of your property.

You may obtain a copy of your consumer report by directly contacting the consumer reporting agency. It's important to understand the consumer reporting agencies are independent and impartial. Consumer reporting agencies do not make insurance decisions and cannot explain Brethren Mutual's decisions for you.



**149 North Edgewood Drive, Hagerstown, MD  21740-6599**
**Telephone: 301- 739-0950 or Toll Free: 1- 800- 621-4264**
**TDD: 1- 800- 888- 3650    FAX: 301- 739- 6300**

# NOTICE TO POLICYHOLDER
# CLAIMS - MADE COVERAGE

**Please carefully review this information, your policy, your declaration page, and your**
**endorsements for complete information on the coverages you are provided with.**

You have purchased a policy that includes claims-made liability coverage. Please read your policy carefully to understand your coverage.

There are certain circumstances in which you must be provided the opportunity to purchase a supplemental extended reporting period for reporting claims. These are explained in your policy.

If you have any questions regarding the cost of a supplemental extended reporting period or the options available to you under the supplemental extended reporting period, please contact your insurance agent.

**BMI CM 10 11**                                                                                    **Page 1of 1**

# VIRGINIA EARTHQUAKE EXCLUSION
# ADVISORY NOTICE TO POLICYHOLDERS

No coverage is provided by this notice nor can it be construed to replace any provision of your policy. You should read your policy and review your Declarations Page for complete information on the coverages you are provided. If there is any conflict between the policy and this Advisory Notice to Policyholders, **THE PROVISIONS OF YOUR POLICY SHALL PREVAIL.**

**EARTHQUAKE EXCLUSION**

This notice applies to the lines of insurance checked below.

☐   Agricultural Capital Assets (Output Policy)

☒   Businessowners

☐   Commercial Inland Marine

☐   Commercial Property

☐   Farm

☐   Capital Asets Program (Output Policy)


Your policy does not protect you against losses from earthquakes. Earthquake coverage is excluded unless purchased by endorsement. Information regarding the availability of earthquake insurance is available from us or your insurance agent.

   Copyright  Insurance Services Office, Inc. 2012 with its permission



## BRETHREN MUTUAL
Insurance Company
Hagerstown, MD 21740

**POLICY NUMBER:** BOP0076884 02

# SCHEDULING FORM

### POLICY FORMS SCHEDULE

## BUSINESSOWNERS

```
BMICM      (10/11) EPLI Claims-Made PH Notice
BMIDS01    (07/11) BOP Policy Declarations
BMI0443    (07/11) Pers Prop off Premise Cov
BMI9932    (04/08) Exclusion-Absolute Asbestos
BMI9999    (01/06) Scheduling Form
BP0003     (01/06) Businessowners Coverage Form
BP0132     (10/15) Virginia Changes
BP0159     (08/08) Water Exclusion
BP0404     (01/06) Hired Auto/Non Owned Auto Liab
BP0412     (01/06) Limit Cov to Desig Prem/Proj
BP0415     (01/06) Spoilage Coverage
BP0417     (07/02) Employment Related Pract Excl.
BP0448     (01/06) AI-Designated Person/Org
BP0453     (08/08) Water Back-Up/Sump Overflow
BP0463     (04/07) Ordinance or Law Cov-VA Broad
BP0497     (01/06) Waiver Transfer of Rights
BP0501     (07/02) Calculation of Premium
BP0515     (01/15) Disclosure Pursuant Terr Risk
BP0517     (01/06) Excl - Silica or Related Dust
BP0538     (01/15) Lim Terr Excl Other Cert Acts
BP0542     (01/15) Excl Punitive Dam Rel to Terr.
BP0564     (01/15) Conditional Excl Terrorism
BP0577     (01/06) Fungi or Bacteria Excl Liab
BP0601     (01/07) Exc Loss Due Virus or Bacteria
BP0622     (04/07) VA-Employee Benefits Liab Cov.
BP0710     (01/06) Motels
BP0711     (01/06) Motel-Liab Guest Prop Safe Dep
BP1005     (07/02) Excl Year 2000 Computer Relatd
BP1203     (01/06) Loss Payable Provisions
BP1216     (07/02) Virginia Eff Time Changes
BP1217     (07/02) VA Changes-Policy Period
BVA0496    (10/13) Ad-Vantage Endorsement
BVA9903    (07/11) VA-Equipment Breakdown End
BVA9931    (04/11) Exclusion - Lead Poisoning
B45CY1225  (01/17) VA Changes Cyber Liability
B45EP2000  (12/15) EPLI Amendment - VA
B63BO1223  (01/17) Audit Schedule
B63CY1222  (01/17) Cyber Liab (Coverage Form)
ILP051     (01/13) Earthquake Exclusion Advisory
VEP0002    (10/11) EPLI Coverage Form
```

BMI 99 99 01 89



**Brethren Mutual**
Insurance Company
Hagerstown, MD 21740

**POLICY NUMBER:** BOP0076884 02

# SCHEDULING FORM

**POLICY FORMS SCHEDULE**

**BMI 99 99 01 89**



**Brethren Mutual**
Insurance Company
Hagerstown, MD 21740

**POLICY NUMBER:** BOP0076884 02

## SCHEDULING FORM

NAMED INSURED -

JAI DEV INC DBA BEST WESTERN RADFORD INN &

JAI DEV INC DBA ECONO LODGE INN & SUITES

POLICY NUMBER: BOP0076884  02

BUSINESSOWNERS
BP 12 03 01 06

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# LOSS PAYABLE PROVISIONS

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

**SCHEDULE**

| Premises Number: | 001 | Building Number: | | Provision Applicable (Indicate Paragraph A, B or C): | B |
|---|---|---|---|---|---|
| **Description Of Property:** BLDG @ L1B1 | | | | | |
| **Loss Payee Name:** | ALLIANCE LAUNDRY SYSTEMS | | | | |
| **Loss Payee Address:** | ATTN: FINANCE DEPARTMENT PO BOX 990 RIPON WI 54971-0990 | | | | |
| **Premises Number:** | | **Building Number:** | | **Provision Applicable (Indicate Paragraph A, B or C):** | |
| **Description Of Property:** | | | | | |
| **Loss Payee Name:** | | | | | |
| **Loss Payee Address:** | | | | | |
| **Premises Number:** | | **Building Number:** | | **Provision Applicable (Indicate Paragraph A, B or C):** | |
| **Description Of Property:** | | | | | |
| **Loss Payee Name:** | | | | | |
| **Loss Payee Address:** | | | | | |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | | | | | |

The following is added to the **Loss Payment** Property Loss Condition in **Section I - Property,** as shown in the Declarations or by an **"A", "B" or "C"** in the Schedule:

**A. Loss Payable**

For Covered Property in which both you and a Loss Payee shown in the Schedule or in the Declarations have an insurable interest, we will:

**1.** Adjust losses with you; and

**2.** Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

**B. Lender's Loss Payable**

**1.** The Loss Payee shown in the Schedule or in the Declarations is a creditor (including a mortgageholder or trustee) with whom you have entered a contract for the sale of Covered Property, whose interest in that Covered Property is established by such written contracts as:

**a.** Warehouse receipts;

**b.** A contract for deed;

**c.** Bills of lading; or

BP 12 03 01 06

ISO Properties, Inc., 2004

**Page 1 of 2**

**d.** Financing statements.

**2.** For Covered Property in which both you and a Loss Payee have an insurable interest:

   **a.** We will pay for covered loss or damage to each Loss Payee in their order of precedence, as interests may appear.

   **b.** The Loss Payee has the right to receive loss payment even if the Loss Payee has started foreclosure for similar action on the Covered Property.

   **c.** If we deny your claim because of your acts or because you have failed to comply with the terms of this policy, the Loss Payee will still have the right to receive loss payment if the Loss Payee:

     **(1)** Pays any premium due under this policy at our request if you have failed to do so;

     **(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and

     **(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

   All of the terms of **Section I - Property** will then apply directly to the Loss Payee.

   **d.** If we pay the Loss Payee for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this policy:

     **(1)** The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

     **(2)** The Loss Payee's right to recover the full amount of the Loss Payee's claim will not be impaired.

     At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest. In this event, you will pay your remaining debt to us.

**3.** If we cancel this policy, we will give written notice to the Loss Payee at least:

   **a.** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

   **b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**4.** If we do not renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

**C. Contract Of Sale**

**1.** The Loss Payee shown in the Schedule or in the Declarations is a person or organization you have entered a contract with for the sale of Covered Property.

**2.** For Covered Property in which both you and the Loss Payee have an insurable interest, we will:

   **a.** Adjust losses with you; and

   **b.** Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

**3.** The following is added to Paragraph **H. Other Insurance** in **Section III - Common Policy Conditions:**

   For Covered Property that is the subject of a contract of sale, the word "you" includes the Loss Payee.

POLICY NUMBER: BOP0076884  02

BUSINESSOWNERS
BP 04 48 01 06

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED - DESIGNATED PERSON OR ORGANIZATION

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

**SCHEDULE**

| Name Of Additional Insured Person(s) Or Organization(s): |
|---|
| BEST WESTERN INTERNATIONAL INC<br>ATTN KATHY WATER<br>C/O COMPLIANCE SERVICES CORP<br>INSURANCE DEPT, PO BOX 2750<br>MONTGOMERY VILLAGE MD 20886 |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

The following is added to Paragraph **C. Who Is An Insured** in **Section II - Liability:**

3.  Any person(s) or organization(s) shown in the Schedule is also an additional insured, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by your acts or omissions or the acts or omissions of those acting on your behalf in the performance of your ongoing operations or in connection with your premises owned by or rented to you.

ISO Properties, Inc., 2004

POLICY NUMBER: BOP0076884 02

**BUSINESSOWNERS**
**BP 04 48 01 06**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED - DESIGNATED PERSON OR ORGANIZATION

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

**SCHEDULE**

| Name Of Additional Insured Person(s) Or Organization(s): |
| --- |
| CSX ENGINEERING & SIGNAL CREWS<br>CORPORATE LODGING CONSULTANTS<br>INC<br>8111 E 32ND ST N, SUITE 300<br>WICHITA KS 67226 |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

The following is added to Paragraph **C. Who Is An Insured** in **Section II - Liability:**

   **3.**   Any person(s) or organization(s) shown in the Schedule is also an additional insured, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by your acts or omissions or the acts or omissions of those acting on your behalf in the performance of your ongoing operations or in connection with your premises owned by or rented to you.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED - DESIGNATED PERSON OR ORGANIZATION

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

**SCHEDULE**

| Name Of Additional Insured Person(s) Or Organization(s): |
|---|
| CHOICE HOTELS INTERNATIONAL INC C/O CERTFOCUS PO BOX 140528 KANSAS CITY MO 64114 |
| |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

The following is added to Paragraph **C. Who Is An Insured** in **Section II - Liability:**

**3.**   Any person(s) or organization(s) shown in the Schedule is also an additional insured, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by your acts or omissions or the acts or omissions of those acting on your behalf in the performance of your ongoing operations or in connection with your premises owned by or rented to you.

POLICY NUMBER:BOP0076884  02

**BUSINESSOWNERS**

**BP 04 12 01 06**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# LIMITATION OF COVERAGE TO DESIGNATED PREMISES OR PROJECT

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

**SCHEDULE**

| A. | Premises: |
|---|---|
| | 1501 TYLER AVE<br>RADFORD VA 24141 |
| B. | Project: |
| | |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

The following is added to **Section II - Liability:**

This insurance applies only to "bodily injury", "property damage", "personal and advertising injury" and medical expenses arising out of:

**1.**   The ownership, maintenance or use of the premises shown in the Schedule and operations necessary or incidental to those premises; or

**2.**   The project shown in the Schedule.

**BP 04 12 01 06**                    ISO Properties, Inc., 2004                    **Page 1 of 1**

POLICY NUMBER:  BOP0076884  02

**BUSINESSOWNERS**
**BP 04 15 01 06**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# SPOILAGE COVERAGE

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

**SCHEDULE**

| Prem. No. | Bldg. No. | Description Of Perishable Stock | Refrigeration Maintenance Agrement | | |
|---|---|---|---|---|---|
| 001 | 001 | CONTENTS USUAL TO A HOTEL | | Yes | X | No |

| Causes Of Loss (Check Which One Applies) | | | | Limit Of Insurance | Deductible |
|---|---|---|---|---|---|
| X | Breakdown Or Contamination | X | Power Outage | $   50,000 | $ 500 |

| Prem. No. | Bldg. No. | Description Of Perishable Stock | Refrigeration Maintenance Agrement | | |
|---|---|---|---|---|---|
| | | | | Yes | | No |

| Causes Of Loss (Check Which One Applies) | | | | Limit Of Insurance | Deductible |
|---|---|---|---|---|---|
| | Breakdown Or Contamination | | Power Outage | $ | $ |

| Prem. No. | Bldg. No. | Description Of Perishable Stock | Refrigeration Maintenance Agrement | | |
|---|---|---|---|---|---|
| | | | | Yes | | No |

| Causes Of Loss (Check Which One Applies) | | | | Limit Of Insurance | Deductible |
|---|---|---|---|---|---|
| | Breakdown Or Contamination | | Power Outage | $ | $ |

**Section I - Property** is extended to insure against direct physical loss of or damage to "perishable stock" indicated in the Schedule, caused by the Covered Cause(s) of Loss, as provided by this endorsement.

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**BP 04 15 01 06**                    ISO Properties, Inc., 2004                    **Page 1 of 3**

The following provisions (**A.** through **I.** inclusive) apply to the coverage provided by this endorsement:

**A.** Paragraph **A.1. Covered Property** in **Section I - Property,** is replaced by the following:

**1. Covered Property**

Covered Property means "perishable stock" shown in the Schedule at the described premises, if the "perishable stock" is:

**a.** Owned by you and used in your business; or

**b.** Owned by others and in your care, custody or control except as otherwise provided in Loss Payment Property Loss Condition **E.5.d.(3)(b).**

**B.** The following is added to Paragraph **A.2. Property Not Covered** in **Section I - Property:**

**j.** Property located:

**(1)** On buildings;

**(2)** In the open; or

**(3)** In vehicles.

**C.** Paragraph **A.3. Covered Causes Of Loss** in **Section I - Property** is replaced by the following:

**3. Covered Causes Of Loss**

Subject to the exclusions described in Item **E.** of this endorsement, Covered Causes of Loss means the following as indicated in the Schedule:

**a.** Breakdown or Contamination, meaning:

**(1)** Change in temperature or humidity resulting from mechanical breakdown or mechanical failure of refrigerating, cooling or humidity control apparatus or equipment, only while such apparatus or equipment is at the described premises shown in the Schedule; or

**(2)** Contamination by a refrigerant, only while the refrigerating apparatus or equipment is at the described premises shown in the Schedule.

Mechanical breakdown and mechanical failure do not mean power interruption, regardless of how or where the interruption is caused and whether or not the interruption is complete or partial.

**b.** Power Outage, meaning change in temperature or humidity resulting from complete or partial interruption of electrical power, either on or off the described premises, due to conditions beyond your control.

**D.** Paragraph **A.6. Coverage Extensions** in **Section I - Property** does not apply.

**E.** Paragraph **B. Exclusions** in **Section I - Property** is replaced by the following:

**B. Exclusions**

**1.** Of the **Exclusions** contained in Paragraph **B.1.** in **Section I - Property,** only the following apply to Spoilage Coverage:

**b.** Earth Movement;

**c.** Governmental Action;

**d.** Nuclear Hazard;

**f.** War And Military Action; and

**g.** Water.

**2.** The following exclusions are added:

We will not pay for loss or damage caused by or resulting from:

**a.** The disconnection of any refrigerating, cooling or humidity control system from the source of power.

**b.** The deactivation of electrical power caused by the manipulation of any switch or other device used to control the flow of electrical power or current.

**c.** The inability of an electrical utility company or other power source to provide sufficient power due to:

**(1)** Lack of fuel; or

**(2)** Governmental order.

**d.** The inability of a power source at the described premises to provide sufficient power due to lack of generating capacity to meet demand.

**e.** Breaking of any glass that is a permanent part of any refrigerating, cooling or humidity control unit.

**F.** Section **D. Deductibles** in **Section I - Property** is replaced by the following:

We will not pay for loss or damage in any one occurrence until the amount of loss or damage exceeds the Deductible shown in the Schedule of this endorsement. We will then pay the amount of loss or damage in excess of that Deductible, up to the applicable Limit of Insurance. No other deductible in this policy applies to the coverage provided by this endorsement.

## G. Conditions

1. Under **Property Loss Conditions** in **Section I - Property,** Item **d.** of Condition **5. Loss Payment** is replaced by the following:

   d. We will determine the value of Covered Property as follows:

      (1) For "perishable stock" you have sold but not delivered, at the selling price less discounts and expenses you otherwise would have had;

      (2) For other "perishable stock", at actual cash value.

2. The following condition applies in addition to the **Property Loss Conditions** (as modified in **1.** above) and **Property General Conditions** in **Section I - Property** and **Section III - Common Policy Conditions:**

   **Additional Condition - Refrigeration Maintenance Agreements**

   If Breakdown or Contamination is designated as a Covered Cause of Loss and a refrigeration maintenance agreement is shown as applicable in the Schedule, the following condition applies:

   You must maintain a refrigeration maintenance or service agreement as described below. If you voluntarily terminate this agreement and do not notify us within 10 days, the insurance provided by this endorsement under the Breakdown or Contamination Covered Cause of Loss will be automatically suspended at the location involved.

However, coverage provided by this endorsement is restored upon:

   a. Reinstatement of the applicable refrigeration maintenance or service agreement; or

   b. Procurement of a replacement refrigeration maintenance or service agreement.

A refrigeration maintenance agreement means a written service contract, between you and the refrigeration service organization, which provides for regular periodic inspection of the refrigeration equipment at the insured location, and the servicing and repair of the equipment, including emergency response at the insured location.

**H.** Paragraph **G. Optional Coverages** in **Section I - Property** does not apply.

**I.** The following is added to the **Definitions** in **Section I - Property:**

"Perishable Stock" means property:

   a. Maintained under controlled temperature or humidity conditions for preservation; and

   b. Susceptible to loss or damage if the controlled temperature or humidity conditions change.

POLICY NUMBER: BOP0076884   02

**BUSINESSOWNERS**
**BP 04 63 04 07**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# VIRGINIA - ORDINANCE OR LAW COVERAGE (BROAD)

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

**SCHEDULE**

| Prem. No. | Bldg. No. | Coverage 1 (Check If Applies) | Coverage 2 Limit Of Insurance | Coverage 3 Limit Of Insurance | Coverages 2 And 3 Combined Limit Of Insurance* |
|---|---|---|---|---|---|
| 001 | 001 | X | | | 250,000 |
| 001 | 002 | X | | | 250,000 |
| | | | | | |
| **Business Income And Extra Expense Optional Coverage Enter Yes Or No:** YES | | | | | |
| **Number Of Hours Waiting Period For Period Of Restoration Applicable To Business Income And Extra Expense Optional Coverage:**  72 Hours | | | | | |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | | | | | |
| *Do **not** enter a Combined Limit of Insurance if individual Limits of Insurance are selected for Coverages **2** and **3**, or if one of these Coverages is not applicable. | | | | | |

**Section I - Property** is amended as follows:

**A.** Each Coverage - Coverage **1**, Coverage **2** and Coverage **3** - is provided under this endorsement only if that Coverage(s) is chosen by entry in the above Schedule and then only with respect to the building identified for the Coverage(s) in the Schedule.

**B. Application Of Coverage(s)**

The Coverage(s) provided by this endorsement apply only if both **B.1.** and **B.2.** are satisfied and are then subject to the qualifications set forth in **B.3.**

**1.** The ordinance or law:

**a.** Regulates the demolition, construction or repair of buildings, or establishes zoning or land use requirements at the described premises; and

**b.** Is in force at the time of loss.

But coverage under this endorsement applies only in response to the minimum requirements of the ordinance or law. Losses and costs incurred in complying with recommended actions or standards that exceed actual requirements are not covered under this endorsement.

**2.** The building sustains direct physical damage:

**a.** That is covered under this policy and such damage results in enforcement of the ordinance or law; or

**b.** That is covered under this policy and direct physical damage that is not covered under this policy, and the building damage in its entirety results in enforcement of the ordinance or law.

**c.** But the damage is not covered under this policy, and such damage is the subject of the ordinance or law, then there is no coverage under this endorsement even if the building has also sustained covered direct physical damage.

**3.** In the situation described in **B.2.b.** above, we will not pay the full amount of loss otherwise payable under the terms of Coverages **1, 2** and/or **3** of this endorsement. Instead, we will pay a proportion of such loss; meaning the proportion that the covered direct physical damage bears to the total direct physical damage.

(Section **H.** of this endorsement provides an example of this procedure.)

However, if the covered direct physical damage alone would have resulted in enforcement of the ordinance or law, then we will pay the full amount of loss otherwise payable under terms of Coverages **1, 2** and/or **3** of this endorsement.

## C. Coverage

**1. Coverage 1- Coverage For Loss To The Undamaged Portion Of The Building**

With respect to the building that has sustained covered direct physical damage, we will pay under Coverage **1** for the loss in value of the undamaged portion of the building as a consequence of enforcement of an ordinance or law that requires demolition of undamaged parts of the same building. Coverage **1** is included within the Limit of Insurance shown in the Declarations as applicable to the covered building. Coverage **1** does not increase the Limit of Insurance.

**2. Coverage 2 - Demolition Cost Coverage**

With respect to the building that has sustained covered direct physical damage, we will pay the cost to demolish and clear the site of undamaged parts of the same building, as a consequence of enforcement of an ordinance or law that requires demolition of such undamaged property.

Paragraph **E.5.d. Loss Payment** Property Loss Condition does not apply to Demolition Cost Coverage.

**3. Coverage 3 - Increased Cost Of Construction Coverage**

With respect to the building that has sustained covered direct physical damage, we will pay the increased cost to:

**a.** Repair or reconstruct damaged portions of that building; and/or

**b.** Reconstruct or remodel undamaged portions of that building, whether or not demolition is required;

when the increased cost is a consequence of enforcement of the minimum requirements of the ordinance or law.

However:

**a.** This coverage applies only if the restored or remodeled property is intended for similar occupancy as the current property, unless such occupancy is not permitted by zoning or land use ordinance or law.

**b.** We will not pay for the increased cost of construction if the building is not repaired, reconstructed or remodeled.

Paragraph **E.5.d. Loss Payment** Property Loss Condition does not apply to the Increased Cost Of Construction Coverage.

## D. Exclusion

We will not pay under Coverage **1, 2** or **3** of this endorsement for the costs associated with the en forcement of any ordinance or law which requires any insured or others to test for, monitor, or assess the existence, concentration or effects of "pollutants", "fungi", wet or dry rot or bacteria. But we will pay for testing which is performed in the course of removal of "pollutants", "fungi", wet or dry rot or bacteria from a building, if the ordinance or law, as enforced, requires such testing.

## E. Loss Payment

**1.** All following loss payment Provisions **E.2.** through **E.5.,** are subject to the apportionment procedure set forth in Section **B.3.** of this endorsement.

**2.** When there is a loss in value of an undamaged portion of a building to which Coverage **1** applies, the loss payment for that building, including damaged and undamaged portions, will be determined as follows:

**a.** If the property is repaired or replaced on the same or another premises, we will not pay more than the lesser of:

**(1)** The amount you actually spend to repair, rebuild or reconstruct the building, but not for more than the amount it would cost to restore the building on the same premises and to the same height, floor area, style and comparable quality of the original property insured; or

**(2)** The Limit of Insurance shown in the Declarations as applicable to the covered building.

**b.** If the property is **not** repaired or replaced, we will not pay more than the lesser of:

    **(1)** The actual cash value of the building at the time of loss; or

    **(2)** The Limit of Insurance shown in the Declarations as applicable to the covered building.

**3.** Unless Paragraph **E.5.** applies, loss payment under Coverage **2** - Demolition Cost Coverage will be determined as follows:

We will not pay more than the lesser of the following:

  **a.** The amount you actually spend to demolish and clear the site of the described premises; or

  **b.** The applicable Limit of Insurance shown for Coverage **2** in the Schedule above.

**4.** Unless Paragraph **E.5.** applies, loss payment under Coverage **3** - Increased Cost Of Construction Coverage will be determined as follows:

  **a.** We will not pay under Coverage **3**:

    **(1)** Until the property is actually repaired or replaced, at the same or another premises; and

    **(2)** Unless the repairs or replacement are made as soon as reasonably possible after the loss or damage, not to exceed two years. We may extend this period in writing during the two years.

  **b.** If the building is repaired or replaced at the same premises, or if you elect to rebuild at another premises, the most we will pay under Coverage **3** is the lesser of:

    **(1)** The increased cost of construction at the same premises; or

    **(2)** The applicable Limit Of Insurance shown for Coverage **3** in the Schedule above.

  **c.** If the ordinance or law requires relocation to another premises, the most we will pay under Coverage **3** is the lesser of:

    **(1)** The increased cost of construction at the new premises; or

    **(2)** The applicable Limit Of Insurance shown for Coverage **3** in the Schedule above.

**5.** If a Combined Limit Of Insurance is shown for Coverages **2** and **3** in the Schedule above, Paragraphs **E.2.** and **E.3.** of this endorsement do not apply with respect to the Building property that is subject to the Combined Limit, and the following loss payment provisions apply instead:

The most we will pay, for the total of all covered losses for Demolition Cost and Increased Cost of Construction, is the Combined Limit Of Insurance shown for Coverages **2** and **3** in the Schedule above. Subject to this Combined Limit Of Insurance, the following loss payment provisions apply:

  **a.** For Demolition Cost, we will not pay more than the amount you actually spend to demolish and clear the site of the described premises.

  **b.** With respect to the Increased Cost of Construction:

    **(1)** We will not pay for the increased cost of construction:

      **(a)** Until the property is actually repaired or replaced, at the same or another premises; and

      **(b)** Unless the repairs or replacement are made as soon as reasonably possible after the loss or damage, not to exceed two years. We may extend this period in writing during the two years.

    **(2)** If the building is repaired or replaced at the same premises, or if you elect to rebuild at another premises, the most we will pay for the increased cost of construction is the increased cost of construction at the same premises.

    **(3)** If the ordinance or law requires relocation to another premises, the most we will pay for the increased cost of construction is the increased cost of construction at the new premises.

**F.** The terms of this endorsement apply separately to each building to which this endorsement applies.

**G.** Under this endorsement, we will not pay for loss due to any ordinance or law that:

  **1.** You were required to comply with before the loss, even if the building was undamaged; and

  **2.** You failed to comply with.

**H.** Example of Proportionate Loss Payment for Ordinance Or Law Coverage Losses (procedure as set forth in Section **B.3.** of this endorsement).

Assume:

- l Wind is a Covered Cause of Loss. Flood is an excluded Cause of Loss;
- l The building has a value of $200,000;
- l Total direct physical damage to building: $100,000;
- l The ordinance or law in this jurisdiction is enforced when building damage equals or exceeds 50% of the building's value;
- l Portion of direct physical damage that is cov ered (caused by wind): $30,000;
- l Portion of direct physical damage that is not covered (caused by flood): $70,000; and
- l Loss under Ordinance or Law Coverage **3** of this endorsement: $60,000.

Step **1:** Determine the proportion that the covered direct physical damage bears to the total direct physical damage.

$30,000 divided by $100,000 = .30

Step **2:** Apply that proportion to the Ordinance or Law loss.

$60,000 x .30 = $18,000

In this example, the most we will pay under this endorsement for the Coverage **3** loss is $18,000, subject to the applicable Limit of Insurance and any other applicable provisions.

**NOTE**

The same procedure applies to losses under Coverages **1** and **2** of this endorsement.

**I.** If shown as applicable in the Schedule of this endorsement, the following applies:

**BUSINESS INCOME AND EXTRA EXPENSE OPTIONAL COVERAGE**

**1.** If a Covered Cause of Loss occurs to property at the premises described in the Declarations, coverage is extended to include the amount of actual and necessary loss you sustain during the increased period of suspension of your "operations" caused by or resulting from the enforcement of any ordinance or law that:

**a.** Regulates the construction or repair of any property;

**b.** Requires the tearing down of parts of any property not damaged by a Covered Cause of Loss; and

**c.** Is in force at the time of loss.

However, coverage is not extended under this endorsement to include loss caused by or resulting from the enforcement of any ordinance or law which requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants".

**2.** Paragraph **H.9. Period Of Restoration** Definition is replaced by the following:

**9.** "Period of restoration" means the period of time that:

**a.** Begins:

**(1)** 72 hours after the time of direct physical loss or damage caused by or resulting from any Covered Cause of Loss at the described premises, unless a lesser number of hours is shown in the Schedule of the endorsement; or

**(2)** Immediately after the time of the direct physical loss or damage for Extra Expense Coverage caused by or resulting from any Covered Cause of Loss at the described premises; and

**b.** Ends on the earlier of:

**(1)** The date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality; or

**(2)** The date when business is resumed at a new permanent location.

"Period of restoration" includes any increased period required to repair or reconstruct the property to comply with the minimum standards of any ordinance or law, in force at the time of loss, that regulates the construction or repair, or requires the tearing down of any property.

The expiration date of this policy will not cut short the "period of restoration".

POLICY NUMBER: BOP0076884  02                                                **BUSINESSOWNERS**
                                                                                **BP 04 53 08 08**

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# WATER BACK-UP AND SUMP OVERFLOW

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

### SCHEDULE

| Premises Number | Limit Of Insurance |
|:---:|:---|
| 001 | $ 10,000 |
|  | $ |
|  | $ |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | |

**A.** We will pay for direct physical loss or damage to Covered Property, covered under Section **I** - Property, caused by or resulting from:

1. Water or waterborne material which backs up through or overflows or is discharged from a sewer or drain; or

2. Water or waterorne material which overflows or is otherwise discharged from a sump, sump pump or related equipment, even if the overflow or discharge results from mechanical breakdown of a sump pump or its related equipment.

However, with respect to Paragraph **2.** above, we will not pay the cost of repairing or replacing a sump pump or its related equipment in the event of mechanical breakdown.

**B.** The coverage described in Paragraph **A.** of this endorsement does not apply to loss or damage resulting from an insured's failure to:

1. Keep a sump pump or its related equipment in proper working condition; or

2. Perform the routine maintenance or repair necessary to keep a sewer or drain free from obstructions.

**C.** The most we will pay for the coverage provided under this endorsement is $5,000 per location, unless a higher Water Back-Up And Sump Overflow Limit of Insurance is indicated in the Schedule of this endorsement.

**D.** With respect to the coverage provided under this endorsement, Exclusion **B.1.g. Water** in **Section I - Property** is replaced by the following exclusion:

**Water**

1. Flood, surface water, waves (including tidal wave and tsunami), tides, tidal water, overflow of any body of water, or spray from any of these, all whether or not driven by wind (including storm surge);

2. Mudslide or mudflow; or

3. Water under the ground surface pressing on, or flowing or seeping through:

   **(a)** Foundations, walls, floors or paved surfaces;

   **(b)** Basements, whether paved or not; or

   **(c)** Doors, windows or other openings.

4. Waterborne material carried or otherwise moved by any of the water referred to in Paragraph **1.** or **3.**, or material carried or otherwise moved by mudslide or mudflow.

This exclusion applies regardless of whether any of the above, in Paragraphs 1. through 4., is caused by an act of nature or is otherwise caused. An example of a situation to which this exclusion applies is the situation where a dam, levee, sea-wall or other boundary or containment system fails in whole or in part, for any reason, to contain the water.  But if any of the above, in Paragraphs **1.** through **4.**, results in fire, explosion or sprinkler leakage, we will pay for the loss or damage caused by that fire, explosion or sprinkler leakage.

**BUSINESSOWNERS**
**BP 05 01 07 02**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# CALCULATION OF PREMIUM

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

The following is added:

The premium shown in the Declarations was computed based on rates in effect at the time the policy was issued. On each renewal, continuation, or anniversary of the effective date of this policy, we will compute the premium in accordance with our rates and rules then in effect.



**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# PERSONAL PROPERTY OFF PREMISES COVERAGE ENDORSEMENT

This endorsement modifies Insurance provided under the following:

**BUSINESSOWNERS COVERAGE FORM - BP 00 03**

**SCHEDULE**

| | | |
|---|---|---|
| Personal Property Off Premises Limit: | $ | 25,000 |

**SECTION I - PROPERTY, A. Coverage, 6. Coverage Extensions, b.  Personal Property Off premises** is amended as follows:

> The limit of $10,000 is increased to the limit shown in the **Schedule** of this endorsement.

If this policy is endorsed by any:

> **Ad-Vantage Endorsement**, then the most this Policy will pay under **A.6.b.  Personal Property Off premises** is the **Limit** for **Personal Property Off premises** shown in the **Schedule** above.

POLICY NUMBER:BOP0076884  02

**BUSINESSOWNERS**
**BP 06 22 04 07**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# VIRGINIA - EMPLOYEE BENEFITS LIABILITY COVERAGE

**THIS ENDORSEMENT PROVIDES CLAIMS-MADE COVERAGE**
**PLEASE READ THE ENTIRE ENDORSEMENT CAREFULLY.**

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

**SCHEDULE**

| Employee Benefits Program | | Retroactive Date | |
|---|---|---|---|
| INCLUDED | | 05/08/2016 | |
| **Limit Of Insurance** | | **Deductible (Each Employee)** | **Premium** |
| **Each Employee** | **Aggregate** | | |
| $1,000,000 | $1,000,000 | $1,000 | $ INCLUDED |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | | | |

**A. Section II –  Liability** is amended as follows:

**1.** The following is added to Paragraph **A. Coverages:**

**COVERAGE –  EMPLOYEE BENEFITS LIABILITY**

**a. Insuring Agreement**

**(1)** We will pay those sums that the insured becomes legally obligated to pay as damages because of any act, error or omission, of the insured, or of any other person for whose acts the insured is legally liable, to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages to which this insurance does not apply. We may, at our discretion, investigate any report of an act, error or omission and settle any "claim" or "suit" that may result. But:

**(a)** The amount we will pay for damages is limited as described in Paragraph **5.** of this endorsement; and

**(b)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments.

**(2)** This insurance applies to damages only if:

**(a)** The act, error or omission, is negligently committed in the "administration" of your "employee benefit program";

**(b)** The act, error or omission, did not take place before the Retroactive Date, if any, shown in the Schedule nor after the end of the policy period; and

**BP 06 22 04 07**

ISO Properties, Inc., 2006

**Page 1 of 6**

o

**(c)** A "claim" for damages, because of an act, error or omission, is first made against any insured, in accordance with Paragraph **c.** below, during the policy period or an Extended Reporting Period we provide under Paragraph **6.** of this endorsement.

**(3)** A "claim" seeking damages will be deemed to have been made at the earlier of the following times:

**(a)** When notice of such "claim" is received and recorded by any insured or by us, whichever comes first; or

**(b)** When we make settlement in accordance with Paragraph **a.(1)** above.

A "claim" received and recorded by the insured within 60 days after the end of the policy period will be considered to have been received within the policy period, if no subsequent policy is available to cover the "claim".

**(4)** All "claims" for damages made by an "employee" because of any act, error or omission, or a series of related acts, errors or omissions, including damages claimed by such "employee's" dependents and beneficiaries, will be deemed to have been made at the time the first of those "claims" is made against any insured.

**b. Exclusions**

This insurance does not apply to:

**(1) Dishonest, Fraudulent, Criminal Or Malicious Act**

Damages arising out of any intentional, dishonest, fraudulent, criminal or malicious act, error or omission, committed by any insured, including the willful or reckless violation of any statute.

**(2) Bodily Injury, Property Damage, Or Personal And Advertising Injury**

"Bodily injury", "property damage" or "personal and advertising injury".

**(3) Failure To Perform A Contract**

Damages arising out of failure of performance of contract by any insured.

**(4) Insufficiency Of Funds**

Damages arising out of an insufficiency of funds to meet any obligations under any plan included in the "employee benefit program".

**(5) Inadequacy Of Performance Of Investment/Advice Given With Respect To Participation**

Any "claim" based upon:

**(a)** Failure of any investment to perform;

**(b)** Errors in providing information on past performance of investment vehicles; or

**(c)** Advice given to any person with respect to that person's decision to participate or not to participate in any plan included in the "employee benefit program".

**(6) Workers' Compensation And Similar Laws**

Any "claim" arising out of your failure to comply with the mandatory provisions of any workers' compensation, unemployment compensation insurance, social security or disability benefits law or any similar law.

**(7) ERISA**

Damages for which any insured is liable because of liability imposed on a fiduciary by the Employee Retirement Income Security Act of 1974, as now or hereafter amended, or by any similar federal, state or local laws.

**(8) Available Benefits**

Any "claim" for benefits to the extent that such benefits are available, with reasonable effort and cooperation of the insured, from the applicable funds accrued or other collectible insurance.

**(9) Taxes, Fines Or Penalties**

Taxes, fines or penalties, including those imposed under the Internal Revenue Code or any similar state or local law.

**(10) Employment-Related Practices**

Damages arising out of wrongful termination of employment, discrimination or other employment-related practices.

**2.** For the purposes of the coverage provided by this endorsement:

**a.** All references to Supplementary Payments are replaced by Supplementary Payments and Employee Benefits Liability.

**b.** Paragraphs **f.(1)(b), f.(2)** and **f.(3) Coverage Extension - Supplementary Payments** do not apply.

ISO Properties, Inc., 2006

o

**3.** For the purposes of the coverage provided by this endorsement, Paragraph **C.2. Who Is An Insured** is replaced by the following:

**2.** Each of the following is also an insured:

**a.** Each of your "employees" who is or was authorized to administer your "employee benefit program".

**b.** Any persons, organizations or "employees" having proper temporary authorization to administer your "employee benefit program" if you die, but only until your legal representative is appointed.

**c.** Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this endorsement.

**4.** For the purposes of the coverage provided by this endorsement, Paragraph **D. Liability And Medical Expenses Limits Of Insurance** is replaced by the following:

**a. Limits Of Insurance**

**(1)** The Limits of Insurance shown in the Schedule and the rules below fix the most we will pay regardless of the number of:

**(a)** Insureds;

**(b)** "Claims" made or "suits" brought;

**(c)** Persons or organizations making "claims" or bringing "suits";

**(d)** Acts, errors or omissions; or

**(e)** Benefits included in your "employee benefits program".

**(2)** The Aggregate Limit is the most we will pay for all damages because of acts, errors or omissions negligently committed in the "administration" of your "employee benefit program".

**(3)** Subject to the Aggregate Limit, the Each Employee Limit is the most we will pay for all damages sustained by any one "employee", including damages sustained by such "employee's" dependents and beneficiaries, as a result of:

**(a)** An act, error or omission; or

**(b)** A series of related acts, errors or omissions negligently committed in the "administration" of your "employee benefit program".

However, the amount paid under this endorsement shall not exceed, and will be subject to, the limits and restrictions that apply to the payment of benefits in any plan included in the "employee benefit program".

The Limits of Insurance of this endorsement apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations of the policy to which this endorsement is attached, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

**b. Deductible**

**(1)** Our obligation to pay damages on behalf of the insured applies only to the amount of damages in excess of the deductible amount stated in the Schedule as applicable to Each Employee. The Limits of Insurance shall not be reduced by the amount of this deductible.

**(2)** The deductible amount stated in the Schedule applies to all damages sustained by any one "employee", including such "employee's" dependents and beneficiaries, because of all acts, errors or omissions to which this insurance applies.

**(3)** The terms of this insurance, including those with respect to:

**(a)** Our right and duty to defend any "suits" seeking those damages; and

**(b)** Your duties, and the duties of any other involved insured, in the event of an act, error or omission, or "claim";

apply irrespective of the application of the deductible amount.

**(4)** We may pay any part or all of the deductible amount to effect settlement of any "claim" or "suit" and, upon notification of the action taken, you shall promptly reimburse us for such part of the deductible amount as we have paid.

**5.** For the purposes of the coverage provided by this endorsement, Paragraph **E.2. Duties In The Event Of Occurrence, Offense, Claim Or Suit** is replaced by the following:

**2. Duties In The Event Of An Act, Error Or Omission, Or Claim Or Suit**

**a.** You must see to it that we are notified as soon as practicable of an act, error or omission which may result in a "claim". To the extent possible, notice should include:

**(1)** What the act, error or omission was and when it occurred; and

**(2)** The names and addresses of anyone who may suffer damages as a result of the act, error or omission.

**b.** If a "claim" is made or "suit" is brought against any insured, you must:

**(1)** Immediately record the specifics of the "claim" or "suit" and the date received; and

**(2)** Notify us as soon as practicable.

You must also see to it that we receive written notice of the "claim" or "suit" as soon as practicable.

**c.** You and any other involved insured must:

**(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "claim" or "suit";

**(2)** Authorize us to obtain records and other information;

**(3)** Cooperate with us in the investigation or settlement of the "claim" or defense against the "suit"; and

**(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of an act, error or omission to which this insurance may also apply.

**d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation or incur any ex pense without our consent.

**6.** For the purposes of the coverage provided by this endorsement, the following Extended Reporting Period provisions are added:

**EXTENDED REPORTING PERIOD**

**a.** If we have issued a renewal of, or a revision has been made to, this insurance which newly excludes or removes coverage, an Extended Reporting Period For Excluded Or Removed Coverage is automatically provided via endorsement at no additional charge. The Extended Reporting Period For Excluded Or Removed Coverage lasts for two years.

**b.** You will have the right to purchase an Extended Reporting Period from us if:

**(1)** The policy to which this endorsement is attached is cancelled or not renewed for any reason except non-payment of the premium, failure to comply with the terms or conditions of the policy or fraud; or

**(2)** Any of the following occurs:

**(a)** The Retroactive Date is changed such that it is later than the date shown in the Schedule of this endorsement; or

**(b)** This endorsement no longer applies to an act, error or omission on a claims-made basis;

**(c)** Previously existing coverage is newly excluded or removed; or

**(d)** The coverage provided by this endorsement is terminated by the insured.

**c.** Any Extended Reporting Period for previ ously existing coverage that is newly ex cluded or removed applies only to the newly excluded or removed coverage.

**d.** An Extended Reporting Period, as specified in Paragraph **6.b.** above, lasts five years and is available only by endorsement and for an additional charge.

You must give us a written request for the Extended Reporting Period Endorsement within sixty (60) days after the date in which an event described in Paragraph **6.b.(1)** or **(2)** of this endorsement takes place or the effective date of cancellation, whichever comes first. The Extended Reporting Period will not go into effect unless you pay the additional premium promptly when due and any premium or deductible you owe us for the coverage provided under this policy. Once in effect, the Extended Reporting Period may not be cancelled by us except for fraud.

We will determine the additional premium in accordance with our rules and rates. In doing so, we may take into account the following:

**(1)** The "employee benefit programs" insured;

**(2)** Previous types and amounts of insurance;

**(3)** Limits of Insurance available under this endorsement for future payment of damages; and

**(4)** Other related factors.

The additional premium will not exceed 200% of the annual premium for this endorsement.

The Extended Reporting Period endorsement applicable to this coverage shall set forth the terms, not inconsistent with this Section, applicable to the Extended Reporting Period, including a provision to the effect that insurance afforded for "claims" first received during such period is excess over any other valid and collectible insurance available under policies in force after the Extended Reporting Period.

**e.** The Extended Reporting Period starts with the end of the policy period. It does not extend the policy period or change the scope of coverage provided. It applies only to "claims" for acts, errors or omissions that were first committed before the end of the policy period but not before the Retroactive Date, if any, shown in the Schedule.

**f.** The Extended Reporting Period Endorse ment will provide an Extended Reporting Period Aggregate Limit of Insurance de scribed below, but only for claims first re ceived and recorded during the Extended Reporting Period. The Extended Reporting Period will not extend the policy period.

The Extended Reporting Period Aggregate Limit of Insurance will be equal to the dollar amount shown in the Schedule of this endorsement under Limits of Insurance.

Paragraph **4.a.(2)** of this endorsement will be amended accordingly. The Each Employee Limit shown in the Schedule will then continue to apply as set forth in Paragraph **4.a.(3).**

**7.** For the purposes of the coverage provided by this endorsement, the following definitions are added to Paragraph **F. Liability And Medical Expenses Definitions:**

**a.** "Administration" means:

**(1)** Providing information to "employees", including their dependents and beneficiaries, with respect to eligibility for or scope of "employee benefit programs";

**(2)** Handling records in connection with the "employee benefit program"; or

**(3)** Effecting, continuing or terminating any "employee's" participation in any benefit included in the "employee benefit program".

However, "administration" does not include handling payroll deductions.

**b.** "Cafeteria plans" means plans authorized by applicable law to allow employees to elect to pay for certain benefits with pre-tax dollars.

**c.** "Claim" means any demand, or "suit", made by an "employee" or an "employee's" dependants and beneficiaries, for damages as a result of an act, error or omission.

**d.** "Employee benefit program" means a program providing some or all of the following benefits to "employees", whether provided through a "cafeteria plan" or otherwise:

**(1)** Group life insurance; group accident or health insurance; dental, vision and hearing plans; and flexible spending accounts; provided that no one other than an "employee" may subscribe to such benefits and such benefits are made generally available to those "employees" who satisfy the plan's eligibility requirements;

**(2)** Profit sharing plans, employee savings plans, employee stock ownership plans, pension plans and stock subscription plans, provided that no one other than an "employee" may subscribe to such benefits and such benefits are made generally available to all "employees" who are eligible under the plan for such benefits;

**(3)** Unemployment insurance, social security benefits, workers' compensation and disability benefits;

**(4)** Vacation plans, including buy and sell programs; leave of absence programs, including military, maternity, family, and civil leave; tuition assistance plans; transportation and health club subsidies; and

**(5)** Any other similar benefits designated in the Schedule or added thereto by endorsement.

**8.** For the purposes of the coverage provided by this endorsement, Paragraphs **F.5.** and **F.18. Liability And Medical Expenses Definitions** are replaced by the following:

**5.** "Employee" means a person actively employed, formerly employed, on leave of absence or disabled, or retired. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

**18.** "Suit" means a civil proceeding in which damages because of an act, error or omission to which this insurance applies are alleged. "Suit" includes:

**a.** An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

**b.** Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

**B.** **Section III - Common Policy Conditions** is amended as follows:

**1.** For the purposes of the coverage provided by this endorsement, paragraph **H.2. Other Insurance** is replaced by the following:

**2.** This Employee Benefits Liability insurance is excess over any of the other insurance, whether primary, excess, contingent or on any other basis:

**a.** That is effective prior to the beginning of the policy period shown in the Declarations of the policy to which this endorsement is attached and that applies to an act, error or omission on other than a claims-made basis, if:

**(1)** No Retroactive Date is shown in the Schedule of this endorsement; or

**(2)** The other insurance has a policy period which continues after the Retroactive Date shown in the Schedule of this endorsement.

POLICY NUMBER: BOP0076884 02

**BUSINESSOWNERS
BP 04 97 01 06**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# WAIVER OF TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

**SCHEDULE**

| Name Of Person Or Organization: |
| --- |
| CHOICE HOTELS INTERNATIONAL INC C/O CERTFOCUS PO BOX 140528 KANSAS CITY MO 64114 |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

Paragraph **K. Transfer Of Rights Of Recovery Against Others To Us** in **Section III – Common Policy Conditions** is amended by the addition of the following:

We waive any right of recovery we may have against the person or organization shown in the Schedule above because of payments we make for injury or damage arising out of your ongoing operations or "your work" done under a contract with that person or organization and included in the "products-completed operations hazard". This waiver applies only to the person or organization shown in the Schedule above.

ISO Properties, Inc.,  2004                    **Page 1 of 1**

POLICY NUMBER: BOP0076884  02

**BUSINESSOWNERS**
**BP 04 04 01 06**

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# HIRED AUTO AND NON-OWNED AUTO LIABILITY

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

### SCHEDULE

| Coverage | Additional Premium |
|---|---|
| **A.   Hired Auto Liability:** | $ Included |
| **B.   Non-Owned Auto Liability:** | $ Included |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | |

**A.** Insurance is provided only for those coverages for which a specific premium charge is shown in the Declarations or in the Schedule.

**1. Hired Auto Liability**

The insurance provided under Paragraph **A.1. Business Liability** in **Section II - Liability,** applies to "bodily injury" or "property damage" arising out of the maintenance or use of a "hired auto" by you or your "employees" in the course of your business.

**2. Non-Owned Auto Liability**

The insurance provided under Paragraph **A.1. Business Liability** in **Section II - Liability,** applies to "bodily injury" or "property damage" arising out of the use of any "non-owned auto" in your business by any person.

**B.** For insurance provided by this endorsement only:

**1.** The exclusions, under the Paragraph **B.1. Applicable To Business Liability Coverage** in **Section II - Liability,** other than Exclusions **a., b., d., f.** and **i.** and the Nuclear Energy Liability Exclusion, are deleted and replaced by the following:

**a.** "Bodily injury" to:

**(1)** An "employee" of the insured arising out of and in the course of:

**(a)** Employment by the insured; or

**(b)** Performing duties related to the conduct of the insured's business; or

**(2)** The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **(1)** above.

This exclusion applies:

**(1)** Whether the insured may be liable as an employer or in any other capacity; and

**(2)** To any obligation to share damages with or repay someone else who must pay damages because of injury.

This exclusion does not apply to:

**(1)** Liability assumed by the insured under an "insured contract"; or

**(2)** "Bodily injury" arising out of and in the course of domestic employment by the insured unless benefits for such injury are in whole or in part either payable or required to be provided under any work ers compensation law.

**b.** "Property damage" to:

**(1)** Property owned or being transported by, or rented or loaned to the insured; or

**(2)** Property in the care, custody or control of the insured.

**BP 04 04 01 06**                    ISO Properties, Inc., 2004                    **Page 1 of 2**

**2.** Paragraph **C. Who Is An Insured** in **Section II - Liability,** is replaced by the following:

**1.** Each of the following is an insured under this endorsement to the extent set forth below:

**a.** You;

**b.** Any other person using a "hired auto" with your permission;

**c.** For a "non-owned auto":

**(1)** Any partner or "executive officer" of yours; or

**(2)** Any "employee" of yours

but only while such "non-owned auto" is being used in your business; and

**d.** Any other person or organization, but only for their liability because of acts or omissions of an insured under **a., b.** or **c.** above.

**2.** None of the following is an insured:

**a.** Any person engaged in the business of his or her employer for "bodily injury" to any co-"employee" of such person injured in the course of employment, or to the spouse, child, parent, brother or sister of that co-"employee" as a consequence of such "bodily injury", or for any obligation to share damages with or repay someone else who must pay damages because of the injury;

**b.** Any partner or "executive officer" for any "auto" owned by such partner or officer or a member of his or her household;

**c.** Any person while employed in or otherwise engaged in duties in connection with an "auto business", other than an "auto business" you operate;

**d.** The owner or lessee (of whom you are a sublessee) of a "hired auto" or the owner of a "non-owned auto" or any agent or "employee" of any such owner or lessee; or

**e.** Any person or organization for the conduct of any current or past partnership or joint venture that is not shown as a Named Insured in the Declarations.

**C.** The following additional definitions apply:

**1.** "Auto Business" means the business or occupation of selling, repairing, servicing, storing or parking "autos".

**2.** "Hired Auto" means any "auto" you lease, hire, rent or borrow. This does not include any "auto" you lease, hire, rent or borrow from any of your "employees", your partners or your "executive officers" or members of their households.

**3.** "Non-Owned Auto" means any "auto" you do not own, lease, hire, rent or borrow which is used in connection with your business. This includes "autos" owned by your "employees", your partners or your "executive officers", or members of their households, but only while used in your business or your personal affairs.

POLICY NUMBER: BOP0076884  02

BUSINESSOWNERS
BP 05 15 01 15

**THIS ENDORSEMENT IS ATTACHED TO AND MADE PART OF YOUR POLICY IN RESPONSE TO THE DISCLOSURE REQUIREMENTS OF THE TERRORISM RISK INSURANCE ACT. THIS ENDORSEMENT DOES NOT GRANT ANY COVERAGE OR CHANGE THE TERMS AND CONDITIONS OF ANY COVERAGE UNDER THE POLICY.**

# DISCLOSURE PURSUANT TO TERRORISM RISK INSURANCE ACT

### SCHEDULE

| SCHEDULE – PART I |
| --- |
| **Terrorism Premium (Certified Acts)**    **$ 0** |
| **Additional information, if any, concerning the terrorism premium:** |

| SCHEDULE – PART II |
| --- |
| **Federal share of terrorism losses** ___18___ **% Year: 20** ___18___ |
| (Refer to Paragraph **B.** in this endorsement.) |
| **Federal share of terrorism losses** _____ **% Year: 20** _____ |
| (Refer to Paragraph **B.** in this endorsement.) |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

**A. Disclosure Of Premium**

In accordance with the federal Terrorism Risk Insurance Act, we are required to provide you with a notice disclosing the portion of your premium, if any, attributable to coverage for terrorist acts certified under the Terrorism Risk Insurance Act. The portion of your premium attributable to such coverage is shown in the Schedule of this endorsement or in the policy Declarations.

**B. Disclosure Of Federal Participation In Payment Of Terrorism Losses**

The United States Government, Department of the Treasury, will pay a share of terrorism losses insured under the federal program. The federal share equals a percentage (as shown in Part **II** of the Schedule of this endorsement or in the policy Declarations) of that portion of the amount of such insured losses that exceeds the applicable insurer retention. However, if aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year, the Treasury shall not make any payment for any portion of the amount of such losses that exceeds $100 billion.

    © Insurance Services Office, Inc., 2015

**C. Cap On Insurer Participation In Payment Of Terrorism Losses**

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

**POLICY NUMBER:** BOP0076884  02

**BUSINESSOWNERS**
**BP 05 64 01 15**

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# CONDITIONAL EXCLUSION OF TERRORISM (RELATING TO DISPOSITION OF FEDERAL TERRORISM RISK INSURANCE ACT)

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

### SCHEDULE

| |
|---|
| The **Exception Covering Certain Fire Losses** (Paragraph **B.2**.) applies to property located in the following state(s): |
| |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

**A. Section I – Property** and **Section II – Liability** are amended as follows:

   **1. Applicability Of The Provisions Of This Endorsement**

   a. The provisions of this endorsement become applicable commencing on the date when any one or more of the following first occurs. But if your policy (meaning the policy period in which this endorsement applies) begins after such date, then the provisions of this endorsement become applicable on the date your policy begins.

   (1) The federal Terrorism Risk Insurance Program ("Program"), established by the Terrorism Risk Insurance Act, has terminated with respect to the type of insurance provided under this Coverage Form; or

   (2) A renewal, extension or replacement of the Program has become effective without a requirement to make terrorism coverage available to you and with revisions that:

   (a) Increase our statutory percentage deductible under the Program for terrorism losses. (That deductible determines the amount of all certified terrorism losses we must pay in a calendar year, before the federal government shares in subsequent payment of certified terrorism losses.); or

   (b) Decrease the federal government's statutory percentage share in potential terrorism losses above such deductible; or

**(c) Redefine terrorism or make insurance coverage for terrorism subject to provisions or requirements that differ from those that apply to other types of events or occurrences under this policy.**

**b. If the provisions of this endorsement become applicable, such provisions:**

**(1) Supersede any terrorism endorsement already endorsed to this policy that addresses "certified acts of terrorism" and/or "other acts of terrorism", but only with respect to loss or injury or damage from an incident(s) of terrorism (however defined) that occurs on or after the date when the provisions of this endorsement become applicable; and**

**(2) Remain applicable unless we notify you of changes in these provisions, in response to federal law.**

**c. If the provisions of this endorsement do NOT become applicable, any terrorism endorsement already endorsed to this policy, that addresses "certified acts of terrorism" and/or "other acts of terrorism", will continue in effect unless we notify you of changes to that endorsement in response to federal law.**

**2.** The following definition is added and applies under this endorsement wherever the term terrorism is enclosed in quotation marks.

"Terrorism" means activities against persons, organizations or property of any nature:

**a.** That involve the following or preparation for the following:

**(1)** Use or threat of force or violence; or

**(2)** Commission or threat of a dangerous act; or

**(3)** Commission or threat of an act that interferes with or disrupts an electronic, communication, information, or mechanical system; and

**b.** When one or both of the following applies:

**(1)** The effect is to intimidate or coerce a government or the civilian population or any segment thereof, or to disrupt any segment of the economy; or

**(2)** It appears that the intent is to intimidate or coerce a government, or to further political, ideological, religious, social or economic objectives or to express (or express opposition to) a philosophy or ideology.

**B. Section I – Property** is amended as follows:

**1.** The following exclusion is added:

**EXCLUSION OF TERRORISM**

We will not pay for loss or damage caused directly or indirectly by "terrorism", including action in hindering or defending against an actual or expected incident of "terrorism". Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss. But this exclusion applies only when one or more of the following are attributed to an incident of "terrorism":

**a.** The "terrorism" is carried out by means of the dispersal or application of radioactive material, or through the use of a nuclear weapon or device that involves or produces a nuclear reaction, nuclear radiation or radioactive contamination; or

**b.** Radioactive material is released, and it appears that one purpose of the "terrorism" was to release such material; or

**c.** The "terrorism" is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

**d.** Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the "terrorism" was to release such materials; or

**e.** The total of insured damage to all types of property in the United States, its territories and possessions, Puerto Rico and Canada exceeds $25,000,000. In determining whether the $25,000,000 threshold is exceeded, we will include all insured damage sustained by property of all persons and entities affected by the "terrorism" and business interruption losses sustained by owners or occupants of the damaged property. For the purpose of this provision, insured damage means damage that is covered by any insurance plus damage that would be covered by any insurance but for the application of any terrorism exclusions. Multiple incidents of "terrorism" which occur within a 72-hour period and appear to be carried out in concert or to have a related purpose or common leadership will be deemed to be one incident, for the purpose of determining whether the threshold is exceeded.

With respect to this Item **1.e.,** the immediately preceding paragraph describes the threshold used to measure the magnitude of an incident of "terrorism" and the circumstances in which the threshold will apply, for the purpose of determining whether this Exclusion will apply to that incident. When the Exclusion applies to an incident of "terrorism", there is no coverage under this Coverage Form.

**2. Exception Covering Certain Fire Losses**

The following exception to the Exclusion Of Terrorism applies only if indicated and as indicated in the Schedule of this endorsement.

If "terrorism" results in fire, we will pay for the loss or damage caused by that fire, subject to all applicable policy provisions including the Limit of Insurance on the affected property. Such coverage for fire applies only to direct loss or damage by fire to Covered Property. Therefore, for example, the coverage does not apply to insurance provided under Business Income and/or Extra Expense coverages or endorsements that apply to those coverages.

**3. Application Of Other Exclusions**

When the Exclusion Of Terrorism applies in accordance with the terms of Paragraph **1.a.** or **1.b.,** such exclusion applies without regard to the Nuclear Hazard Exclusion in this Coverage Form.

**C. Section II – Liability is amended as follows:**

**1.** The following definition is added and applies under this endorsement wherever the phrase any injury or damage, is enclosed in quotation marks:

"Any injury or damage" means any injury or damage covered under this Coverage Form or any applicable endorsement, and includes but is not limited to "bodily injury", "property damage" or "personal and advertising injury", as may be defined under this Coverage Form or any applicable endorsement.

**2.** The following exclusion is added:

**EXCLUSION OF TERRORISM**

We will not pay for "any injury or damage" caused directly or indirectly by "terrorism", including action in hindering or defending against an actual or expected incident of "terrorism". "Any injury or damage" is excluded regardless of any other cause or event that contributes concurrently or in any sequence to such injury or damage. **But this exclusion applies only when one or more of the following are attributed to an incident of "terrorism":**

**a.** The "terrorism" is carried out by means of the dispersal or application of radioactive material, or through the use of a nuclear weapon or device that involves or produces a nuclear reaction, nuclear radiation or radioactive contamination; or

**b.** Radioactive material is released, and it appears that one purpose of the "terrorism" was to release such material; or

**c.** The "terrorism" is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

**d.** Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the "terrorism" was to release such materials; or

**e.** The total of insured damage to all types of property exceeds $25,000,000. In determining whether the $25,000,000 threshold is exceeded, we will include all insured damage sustained by property of all persons and entities affected by the "terrorism" and business interruption losses sustained by owners or occupants of the damaged property. For the purpose of this provision, insured damage means damage that is covered by any insurance plus damage that would be covered by any insurance but for the application of any terrorism exclusions; or

**f.** Fifty or more persons sustain death or serious physical injury. For the purposes of this provision, serious physical injury means:

   **(1)** Physical injury that involves a substantial risk of death; or

   **(2)** Protracted and obvious physical disfigurement; or

   **(3)** Protracted loss of or impairment of the function of a bodily member or organ.

Multiple incidents of "terrorism" which occur within a 72-hour period and appear to be carried out in concert or to have a related purpose or common leadership will be deemed to be one incident, for the purpose of determining whether the thresholds in Paragraph **2.e.** or **2.f.** are exceeded.

With respect to this Exclusion, Paragraphs **2.e.** and **2.f.** describe the threshold used to measure the magnitude of an incident of "terrorism" and the circumstances in which the threshold will apply, for the purpose of determining whether this Exclusion will apply to that incident. When the Exclusion applies to an incident of "terrorism", there is no coverage under this Coverage Form.

**D.** The following provision is added to **Section I – Property** and **Section II – Liability:**

The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for loss or injury or damage that is otherwise excluded under this Policy.

   © Insurance Services Office, Inc., 2015

# Brethren Mutual
## Insurance Company

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# VIRGINIA - AD-VANTAGE ENDORSEMENT

This endorsement modifies Insurance provided under the following:

> **BUSINESSOWNERS COVERAGE FORM - BP 00 03**
> **VIRGINIA CHANGES - BP 01 32**

The **BUSINESSOWNERS COVERAGE FORM BP 00 30** is amended as follows:

1.  **SECTION I - PROPERTY**, **A. Coverage, 5. Additional Coverages,** the following is deleted:

    **l.**   Increased Cost of Construction

2.  **SECTION I - PROPERTY**, **A. Coverage, 5. Additional Coverages,** is amended as follows:

    **a.**   **Debris Removal** limit is increased from $10,000 to $25,000.

    **h.**   **Pollutant Cleanup and Removal** limit is increased from $10,000 to $25,000.

    **j.**   **Money Orders And "Counterfeit Money"** limit is increased from $1,000 to $25,000.

    **k.**   **Forgery or Alteration** limit is increased from $2,500 to $100,000.

    If a higher limit is requested, there will be an additional charge.

    **m.**   **Business Income From Dependent Properties** limit is increased from $5,000 to $25,000.

    If a higher limit is requested, there will be an additional charge.

    **o.**   **Fire Extinguisher System Recharge** limit is increased from $5,000 to $10,000.

    **p.**   **Electronic Data** limit is increased from $10,000 to $25,000.

    If a higher limit is requested, there will be an additional charge.

    **q.**   **Interruption Of Computer Operations** limit is increased from $10,000 to $25,000.

    If a higher limit is requested, there will be an additional charge

3.  **SECTION I - PROPERTY**, **A. Coverage, 5. Additional Coverages,** the following are added:

    **s.**   **Ordinance or Law Coverage**

    By attachment of Form **BP 04 63**, the most we will pay under this Additional Coverage is $250,000 per premise.  This Additional Coverage is for **Combined Coverages 2 (Demolition Cost)** & **3 (Increased Cost of Construction)** and also **Business Income and Extra Expense Optional Coverage**.

    If a higher limit is requested, there will be an additional charge.

    **t.**   **Locks**

    We will pay the reasonable expenses you incur to re-key locks on exterior doors of the buildings located on the premises when the keys to those locks are part of a covered theft loss.  The most we will pay under this Additional Coverage is $1,000. This amount is in addition to the Limits of Insurance.

    **u.**   **Water Back - Up And Sump Overflow**

    By attachment of Form **BP 04 53**, the most we will pay under this Additional Coverage is $10,000 per premise.

    If a higher limit is requested, there will be an additional charge.

**v.   Brands and Labels**

If branded or labeled merchandise that is Covered Property is damaged by a Covered Cause of Loss, we may take all or any part of the property at an agreed or appraised value. If so, you may:

**(1)** Stamp the word <u>salvage</u> on the merchandise or its containers, if the stamp will not physically damage the merchandise; or

**(2)** Remove the brands or labels, if doing so will not physically damage the merchandise. You must relabel the merchandise or its containers to comply with the law.

We will pay for the resulting reduction in value as a result of (1) and/or (2) above.

The most we will pay for loss or damage under this additional coverage is $25,000.

**w.   Food Contamination**

**(1)** If your business at the described premises is ordered closed by the Board of Health or any other governmental authority as a result of the discovery or suspicion of "food contamination," we will pay:

**(a)** Your expense to clean your equipment as required by the Board of Health or any other governmental authority;

**(b)** Your cost to replace the food which is, or is suspected to be contaminated;

**(c)** Your expense to provide necessary medical tests or vaccinations for your infected employees. However, we will not pay for any expense that is otherwise payable under a workers' compensation policy;

**(d)** The loss of Business Income you sustain due the necessary "suspension" of your "operations." The coverage for Business Income will begin 24 hours after you receive notice of closing from the Board of Health or any other governmental authority; and

**(e)** Any additional advertising expenses you incur to restore your reputation.

**(2)** The most we will pay for all loss under paragraphs **a(1)** through **a(4)** including Business Income, is $10,000. The most we will pay for loss under paragraph **a(5)** is $3,000.

**(3)** We will not pay any fines or penalties levied against you by the Board of Health or any other governmental authority as a result of the discovery or suspicion of food contamination at the described premises.

**x.   Utility Services Direct Damage**

We will pay for loss of or damage to Covered Property caused by the interruption of service to the described premises scheduled on the Declarations. The interruption must result from direct physical loss or damage by a Covered Cause of Loss to the following property not located on the described premises:

**(1)** Water supply services, meaning pumping stations and water mains supplying water to the described premises.

**(2)** Communication supply services, meaning property supplying communication services, including telephone, radio, microwave, television and internet services to the described premises, such as:

**(a)** Communication transmission lines, including fiber optic cable transmission lines;

**(b)** Coaxial cables; and

**(c)** Microwave radio relays except satellites.

Overhead communications lines are excluded from such communication supply services.

**(3)** Power Supply services, meaning the following types of property supplying electricity, steam or gas to the described premises:

    **(a)** Utility generating plants;

    **(b)** Switching stations;

    **(c)** Substations;

    **(d)** Transformers; and

    **(e)** Transmission lines.

Overhead communications lines are excluded from such communication supply services.

The most we will pay for this additional coverage is $25,000. A minimum deductible of $1,000 applies to this additional coverage; if the policy deductible exceeds this minimum then the policy deductible will apply.

**y.** **Utility Services Time Element**

We will pay for loss of Business Income or Extra Expense at the described premises caused by the interruption of service to the described premises. The interruption must result from direct physical loss or damage by a Covered Cause of Loss to the following property not located on the described premises:

**(1)** Water supply services, meaning pumping stations and water mains supplying water to the described premises.

**(2)** Communication Supply services, meaning property supplying communication services, including telephone, radio, microwave, television and internet services to the described premises, such as:

    **(a)** Communication transmission lines, including fiber optic cable transmission lines;

    **(b)** Coaxial cables; and

    **(c)** Microwave radio relays except satellites.

Overhead communications lines are excluded from such communication supply services.

**(3)** Power Supply services, meaning the following types of property supplying electricity, steam or gas to the described premises:

    **(a)** Utility generating plants;

    **(b)** Switching stations;

    **(c)** Substations

    **(d)** Transformers; and

    **(e)** Transmission lines.

Overhead communications lines are excluded from such communication supply services.

The most we will pay for this additional coverage is $25,000.

**4.** **SECTION I - PROPERTY, A. Coverage, 6. Coverage Extensions** is amended as follows**:**

**a.** **Newly Acquired or Constructed Property**

    **(1)** **Buildings** limit is increased from $250,000 to $1,000,000;

    **(2)** **Business Personal Property** limit is increased from $100,000 to $500,000.

    **(3)** **Period of Coverage** limit is increased from 30 days to 60 days.

**b.** **Personal Property Off Premises**

By attachment of Form **BMI 04 43**, the most we will pay under this Coverage Extension is $25,000.

If a higher limit is requested, there will be an additional charge.

**c.** **Outdoor Property** limit is increased from $2,500 to $25,000.

**d.** **Personal Effects** limit is increased from $2,500 to $25,000.

**e.** **Valuable Papers And Records** (at described premises) limit is increased from $10,000 to $100,000.

If a higher limit is requested, there will be an additional charge.

**f.** **Accounts Receivable** (at described premises) limit is increased from $10,000 to $100,000.

If a higher limit is requested, there will be an additional charge.

**5.** **SECTION I - PROPERTY, A. Coverage, 6. Coverage Extension** the following is added:

**g.** **Fine Arts**

You may extend the insurance that applies to Business Personal Property to apply to loss or damage by a Covered Cause of Loss to "Fine Arts" at the premises described in the declarations. The most we will pay under this Coverage Extension is $25,000 at each described premises.

Loss or damage must be caused by or result from a Covered Cause of Loss except: Exclusion **1.a. (Ordinance or Law). 1.b. (Earth Movement), 1.e. (Power Failure)** and **1.g. (Water)** of the Businessowners Coverage Form, Section I - Property, do not apply to this Coverage Extension.

"Fine Arts" means paintings, etchings, pictures, tapestries, art glass windows, valuable rugs, statuary, marbles, bronzes, antique furniture, rare books, antique silver, manuscripts, porcelains, rare glass, bric-a-brac and similar property of rarity, historical value or artistic merit.

**6.** **SECTION I - PROPERTY, E. Property Loss Conditions, 5. Loss Payment,** Paragraph **d.** is amended as follows:

**d.** Except as provided in Paragraphs **(2)** through **(8)** below, we will determine the value of Covered Property as follows:

**7.** **SECTION I - PROPERTY, E. Property Loss Conditions, 5. Loss Payment, d.** the following is added:

**(8)** With respect to "Fine Arts," we will determine the value of Fine Arts as follows:

Works of art, antiques or rare articles at the lesser of:

**(a)** Market value at the time and place of loss;

**(b)** Cost of reasonably restoring that property; or

**(c)** Replacing that property with substantially the same property.

This amount is in addition to the Limits of Insurance.

**8.** **SECTION I - PROPERTY, G. Optional Coverages,** is amended as follows:

**1.** **Outdoor Signs**

**d.** The most we will pay for loss or damage in any one occurrence is $25,000, unless a higher Limit of Insurance for Outdoor Signs is shown in the Declaration.

If a higher limit is requested, there will be an additional charge.

**2.** **Money And Securities**

**c.** The most we will pay for loss in any one occurrence is:

**(1)** Inside the Premises - $25,000 for "money"  and "securities" while:

**(a)** In or on the described premises; or

**(b)** Within a bank or savings institution; and

**(2)** Outside the Premises - $25,000 for "money" and "securities" while anywhere else.

If a higher limit is requested, there will be an additional charge.

**3.** **Employee Dishonesty**

**c.** The most we will pay for loss or damage in any one occurrence is $100,000, unless a higher Limit of Insurance is shown in the Declaration.

If a higher limit is requested, there will be an additional charge.

9. **SECTION I - PROPERTY, H. Property Definitions**, the following is added:

**15. "Food Contamination" means:**

An incidence of food poisoning to one or more of your customers as a result of:

**a.** Tainted food you purchased;

**b.** Food which has been improperly stored, handled or prepared; or

**c.** A communicable disease transmitted through one or more of your employees.

10. **SECTION II - LIABILITY, D. Liability and Medical Expenses Limits of Insurance,** is amended as follows:

**3.** The most we will pay under Business Liability Coverage for damages because of "property damage" to a premises while rented to you or in the case of fire while rented to you or temporarily occupied by you with permission of the owner is $500,000 per premise, unless a higher Limit of Insurance is shown in the Declaration.

If a higher limit is requested, there will be an additional charge.

The **VIRGINIA CHANGES FORM BP 01 32** is amended as follows:

1. **SECTION A. 1. c. Fire Department Service Charge**, is replaced with the following:

**c.** With respect to each premises described in the Declarations, the most we will pay for the total of all services provided under Paragraphs **a.** or **b.** is $25,000.

2. **SECTION A. 1. d.** has been added:

**d.** No deductible applies to the Additional Coverage.

ANY LIMIT LISTED ON THE DECLARATION PAGE &/OR A COVERAGE ENDORSEMENT

ATTACHED TO THIS POLICY, IS THE MAXIMUM AMOUNT.

THE LIMITS PROVIDED BY THIS ENDORSEMENT (BVA 04 96)

**ARE NOT IN ADDITION** TO THOSE LIMITS.

BUSINESSOWNERS
BP 00 03 01 06

# BUSINESSOWNERS COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this Coverage Form the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the Company providing this insurance.

In Section **II** - Liability, the word "insured" means any person or organization qualifying as such under Paragraph **C.** Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Paragraph **H.** Property Definitions in Section **I** - Property and Paragraph **F.** Liability And Medical Expenses Definitions in Section **II** - Liability.

**SECTION I- PROPERTY**

**A. Coverage**

We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.

**1. Covered Property**

Covered Property includes Buildings as described under Paragraph **a.** below, Business Personal Property as described under Paragraph **b.** below, or both, depending on whether a Limit of Insurance is shown in the Declarations for that type of property. Regardless of whether coverage is shown in the Declarations for Buildings, Business Personal Property, or both, there is no coverage for property described under Paragraph **2.** Property Not Covered.

**a.** Buildings, meaning the buildings and structures at the premises described in the Declarations, including:

**(1)** Completed additions;

**(2)** Fixtures, including outdoor fixtures;

**(3)** Permanently installed:

**(a)** Machinery; and

**(b)** Equipment;

**(4)** Your personal property in apartments, rooms or common areas furnished by you as landlord;

**(5)** Personal property owned by you that is used to maintain or service the buildings or structures or the premises, including:

**(a)** Fire extinguishing equipment;

**(b)** Outdoor furniture;

**(c)** Floor coverings; and

**(d)** Appliances used for refrigerating, ventilating, cooking, dishwashing or laundering;

**(6)** If not covered by other insurance:

**(a)** Additions under construction, alterations and repairs to the buildings or structures;

**(b)** Materials, equipment, supplies and temporary structures, on or within 100 feet of the described premises, used for making additions, alterations or repairs to the buildings or structures.

**b.** Business Personal Property located in or on the buildings at the described premises or in the open (or in a vehicle) within 100 feet of the described premises, including:

**(1)** Property you own that is used in your business;

**(2)** Property of others that is in your care, custody or control, except as otherwise provided in Loss Payment Property Loss Condition Paragraph **E.5.d.(3)(b);**

**(3)** Tenant's improvements and betterments. Improvements and betterments are fixtures, alterations, installations or additions:

**(a)** Made a part of the building or structure you occupy but do not own; and

**(b)** You acquired or made at your expense but cannot legally remove;

**(4)** Leased personal property which you have a contractual responsibility to insure, unless otherwise provided for under Paragraph **1.b.(2);** and

**(5)** Exterior building glass, if you are a tenant and no Limit of Insurance is shown in the Declarations for Building property. The glass must be owned by you or in your care, custody or control.

**2. Property Not Covered**

Covered Property does not include:

**a.** Aircraft, automobiles, motortrucks and other vehicles subject to motor vehicle registration;

**b.** "Money" or "securities" except as provided in the:

  **(1)** Money and Securities Optional Coverage; or

  **(2)** Employee Dishonesty Optional Coverage;

**c.** Contraband, or property in the course of illegal transportation or trade;

**d.** Land (including land on which the property is located), water, growing crops or lawns;

**e.** Outdoor fences, radio or television antennas (including satellite dishes) and their lead-in wiring, masts or towers, signs (other than signs attached to buildings), trees, shrubs or plants, all except as provided in the:

  **(1)** Outdoor Property Coverage Extension; or

  **(2)** Outdoor Signs Optional Coverage;

**f.** Watercraft (including motors, equipment and accessories) while afloat;

**g.** Accounts, bills, food stamps, other evidences of debt, accounts receivable or "valuable papers and records"; except as otherwise provided in this policy;

**h.** "Computer(s)" which are permanently installed or designed to be permanently installed any aircraft, watercraft, motortruck or other vehicle subject to motor vehicle registration. This paragraph does not apply to "computer(s)" while held as "stock";

**i.** "Electronic Data", except as provided under Additional Coverages - Electronic Data. This Paragraph **i.** does not apply to your "stock" of prepackaged software.

**3. Covered Causes Of Loss**

Risks of direct physical loss unless the loss is:

**a.** Excluded in Paragraph **B.** Exclusions in Section **I**; or

**b.** Limited in Paragraph **4.** Limitations in Section **I**.

**4. Limitations**

**a.** We will not pay for loss of or damage to:

  **(1)** Steam boilers, steam pipes, steam engines or steam turbines caused by or resulting from any condition or event inside such equipment. But we will pay for loss of or damage to such equipment caused by or resulting from an explosion of gases or fuel within the furnace of any fired vessel or within the flues or passages through which the gases of combustion pass.

  **(2)** Hot water boilers or other water heating equipment caused by or resulting from any condition or event inside such boilers or equipment, other than an explosion.

  **(3)** Property that is missing, where the only evidence of the loss or damage is a shortage disclosed on taking inventory, or other instances where there is no physical evidence to show what happened to the property. This limitation does not apply to the Optional Coverage for Money and Securities.

  **(4)** Property that has been transferred to a person or to a place outside the described premises on the basis of unauthorized instructions.

  **(5)** The interior of any building or structure caused by or resulting from rain, snow, sleet, ice, sand or dust, whether driven by wind or not, unless:

    **(a)** The building or structure first sustains damage by a Covered Cause of Loss to its roof or walls through which the rain, snow, sleet, ice, sand or dust enters; or

    **(b)** The loss or damage is caused by or results from thawing of snow, sleet or ice on the building or structure.

**b.** We will not pay for loss of or damage to fragile articles such as glassware, statuary, marble, chinaware and porcelain, if broken, unless caused by the "specified causes of loss" or building glass breakage. This restriction does not apply to:

  **(1)** Glass that is part of the exterior or interior of a building or structure;

**(2)** Containers of property held for sale; or

**(3)** Photographic or scientific instrument lenses.

**c.** For loss or damage by theft, the following types of property are covered only up to the limits shown:

**(1)** $2,500 for furs, fur garments and garments trimmed with fur.

**(2)** $2,500 for jewelry, watches, watch movements, jewels, pearls, precious and semi-precious stones, bullion, gold, silver, platinum and other precious alloys or metals. This limit does not apply to jewelry and watches worth $100 or less per item.

**(3)** $2,500 for patterns, dies, molds and forms.

**5. Additional Coverages**

**a. Debris Removal**

**(1)** Subject to Paragraphs **(3)** and **(4),** we will pay your expense to remove debris of Covered Property caused by or resulting from a Covered Cause of Loss that occurs during the policy period. The expenses will be paid only if they are reported to us in writing within 180 days of the date of direct physical loss or damage.

**(2)** Debris Removal does not apply to costs to:

**(a)** Extract "pollutants" from land or water; or

**(b)** Remove, restore or replace polluted land or water.

**(3)** Subject to the exceptions in Paragraph **(4),** the following provisions apply:

**(a)** The most that we will pay for the total of direct physical loss or damage plus debris removal expense is the Limit of Insurance applicable to the Covered Property that has sustained loss or damage.

**(b)** Subject to Paragraph **(a)** above, the amount we will pay for debris removal expense is limited to 25% of the sum of the deductible plus the amount that we pay for direct physical loss or damage to the Covered Property that has sustained loss or damage.

**(4)** We will pay up to an additional $10,000 for debris removal expense, for each location, in any one occurrence of physical loss or damage to Covered Property, if one or both of the following circumstances apply:

**(a)** The total of the actual debris removal expense plus the amount we pay for direct physical loss or damage exceeds the Limit of Insurance on the Covered Property that has sustained loss or damage.

**(b)** The actual debris removal expense exceeds 25% of the sum of the deductible plus the amount that we pay for direct physical loss or damage to the Covered Property that has sustained loss or damage.

Therefore, if Paragraphs **(4)(a)** and/or **(4)(b)** apply, our total payment for direct physical loss or damage and debris removal expense may reach but will never exceed the Limit of Insurance on the Covered Property that has sustained loss or damage, plus $10,000.

**(5) Examples**

**Example #1**

| | |
|---|---|
| Limit of insurance | $90,000 |
| Amount of Deductible | $    500 |
| Amount of Loss | $50,000 |
| Amount of Loss Payable | $49,500 |
| | ($50,000 - $500) |
| Debris Removal Expense | $10,000 |
| Debris Removal Expense | |
| Payable | $10,000 |
| ($10,000 is 20% of $50,000) | |

The debris removal expense is less than 25% of the sum of the loss payable plus the deductible. The sum of the loss payable and the debris removal expense ($49,500 +$10,000 = $59,500) is less than the Limit of Insurance. Therefore the full amount of debris removal expense is payable in accordance with the terms of Paragraph **(3).**

**Example #2**

| | |
|---|---|
| Limit of Insurance | $ 90,000 |
| Amount of Deductible | $    500 |
| Amount of Loss | $ 80,000 |
| Amount of Loss Payable | $ 79,500 |
| ($80,000 - $500) | |
| Debris Removal Expense | $ 30,000 |
| Debris Removal Expense Payable | |
| Basic Amount | $ 10,500 |
| Additional Amount | $ 10,000 |

The basic amount payable for debris removal expense under the terms of Paragraph **(3)** is calculated as follows: $80,000 ($79,500 + $500) x .25 = $20,000; capped at $10,500). The cap applies because the sum of the loss payable ($79,500) and the basic amount payable for debris removal expense ($10,500) cannot exceed the Limit of Insurance ($90,000).

The additional amount payable for debris removal expense is provided in accordance with the terms of Paragraph **(4),** because the debris removal expense ($30,000) exceeds 25% of the loss payable plus the deductible ($30,000 is 37.5% of $80,000), and because the sum of the loss payable and debris re-moval expense ($79,500 + $30,000 = $109,500) would exceed the Limit of Insurance ($90,000). The additional amount of covered debris removal expense is $10,000, the maximum payable under Paragraph **(4).** Thus the total payable for debris removal expense in this example is $20,500; $9,500 of the debris removal expense is not covered.

**b. Preservation Of Property**

If it is necessary to move Covered Property from the described premises to preserve it from loss or damage by a Covered Cause of Loss, we will pay for any direct physical loss of or damage to that property:

**(1)** While it is being moved or while tempo-rarily stored at another location; and

**(2)** Only if the loss or damage occurs within 30 days after the property is first moved.

**c. Fire Department Service Charge**

When the fire department is called to save or protect Covered Property from a Covered Cause of Loss, we will pay up to $2,500, unless a different limit is shown in the Declarations, for your liability for fire department service charges:

**(1)** Assumed by contract or agreement prior to loss; or

**(2)** Required by local ordinance.

**d. Collapse**

**(1)** With respect to buildings:

**(a)** Collapse means an abrupt falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its intended purpose;

**(b)** A building or any part of a building that is in danger of falling down or caving in is not considered to be in a state of collapse;

**(c)** A part of a building that is standing is not considered to be in a state of collapse even if it has separated from another part of the building; and

**(d)** A building that is standing or any part of a building that is standing is not considered to be in a state of collapse even if it shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

**(2)** We will pay for direct physical loss or damage to Covered Property, caused by collapse of a building or any part of a building that is insured under this policy or that contains Covered Property in-sured under this policy, if the collapse is caused by one or more of the following:

**(a)** The "specified causes of loss" or breakage of building glass, all only as insured against in this policy;

**(b)** Decay that is hidden from view, unless the presence of such decay is known to an insured prior to collapse;

**(c)** Insect or vermin damage that is hidden from view, unless the pres-ence of such damage is known to an insured prior to collapse;

**(d)** Weight of people or personal property;

**(e)** Weight of rain that collects on a roof; or

**(f)** Use of defective material or methods in construction, remodeling or renovation if the collapse occurs during the course of the construction, remodeling or renovation. However, if the collapse occurs after construction, remodeling or renovation is complete and is caused in part by a cause of loss listed in Paragraphs **(a)** through **(e),** we will pay for the loss or damage even if use of defective material or methods in construction, remodeling or renovation, contributes to the collapse.

The criteria set forth in Paragraphs **(1)(a)** through **(1)(d)** do not limit the coverage otherwise provided under this Additional Coverage for the causes of loss listed in Paragraphs **(2)(a), (2)(d)** and **(2)(e).**

**(3)** With respect to the following property:

**(a)** Awnings;

**(b)** Gutters and downspouts;

**(c)** Yard fixtures;

**(d)** Outdoor swimming pools;

**(e)** Piers, wharves and docks;

**(f)** Beach or diving platforms or appurtenances;

**(g)** Retaining walls; and

**(h)** Walks, roadways and other paved surfaces;

if the collapse is caused by a cause of loss listed in Paragraphs **(2)(b)** through **(2)(f),** we will pay for loss or damage to that property only if such loss or damage is a direct result of the collapse of a building insured under this policy and the property is Covered Property under this policy.

**(4)** If personal property abruptly falls down or caves in and such collapse is not the result of collapse of a building, we will pay for loss or damage to Covered Property caused by such collapse of personal property only if:

**(a)** The collapse was caused by a cause of loss listed in Paragraphs **(2)(a)** through **(2)(f)** of this Additional Coverage;

**(b)** The personal property which collapses is inside a building; and

**(c)** The property which collapses is not of a kind listed in Paragraph **(3)** above, regardless of whether that kind of property is considered to be personal property or real property.

The coverage stated in this Paragraph **(4)** does not apply to personal property if marring and/or scratching is the only damage to that personal property caused by the collapse.

Collapse of personal property does not mean cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

**(5)** This Additional Coverage, Collapse, will not increase the Limits of Insurance provided in this policy.

**e. Water Damage, Other Liquids, Powder Or Molten Material Damage**

If loss or damage caused by or resulting from covered water or other liquid, powder or molten material occurs, we will also pay the cost to tear out and replace any part of the building or structure to repair damage to the system or appliance from which the water or other substance escapes.

We will not pay the cost to repair any defect that caused the loss or damage; but we will pay the cost to repair or replace damaged parts of fire extinguishing equipment if the damage:

**(1)** Results in discharge of any substance from an automatic fire protection system; or

**(2)** Is directly caused by freezing.

**f. Business Income**

**(1) Business Income**

**(a)** We will pay for the actual loss of Business Income you sustain due to the necessary suspension of your "operations" during the "period of restoration". The suspension must be caused by direct physical loss of or damage to property at the described premises. The loss or damage must be caused by or result from a Covered Cause of Loss. With respect to loss of or damage to personal property in the open or personal property in a vehicle, the described premises include the area within 100 feet of the site at which the described premises are located.

With respect to the requirements set forth in the preceding paragraph, if you occupy only part of the site at which the described premises are located, your premises means:

**(i)** The portion of the building which you rent, lease or occupy; and

**(ii)** Any area within the building or on the site at which the described premises are located, if that area services, or is used to gain access to, the described premises.

**(b)** We will only pay for loss of Business Income that you sustain during the "period of restoration" and that occurs within 12 consecutive months after the date of direct physical loss or damage. We will only pay for ordinary payroll expenses for 60 days following the date of direct physical loss or damage, unless a greater number of days is shown in the Declarations.

**(c)** Business Income means the:

**(i)** Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred if no physical loss or damage had occurred, but not including any Net Income that would likely have been earned as a result of an increase in the volume of business due to favorable business conditions caused by the impact of the Covered Cause of Loss on customers or on other businesses; and

**(ii)** Continuing normal operating expenses incurred, including payroll.

**(d)** Ordinary payroll expenses:

**(i)** Mean payroll expenses for all your employees except:

**i.** Officers;

**ii.** Executives;

**iii.** Department Managers;

**iv.** Employees under contract; and

**v.** Additional Exemptions shown in the Declarations as:

Job Classifications; or

Employees.

**(ii)** Include:

**i.** Payroll;

**ii.** Employee benefits, if directly related to payroll;

**iii.** FICA payments you pay;

**iv.** Union dues you pay; and

**v.** Workers' compensation premiums.

**(2) Extended Business Income**

**(a)** If the necessary suspension of your "operations" produces a Business Income loss payable under this policy, we will pay for the actual loss of Business Income you incur during the period that:

**(i)** Begins on the date property except finished stock is actually repaired, rebuilt or replaced and "operations" are resumed; and

**(ii)** Ends on the earlier of:

**i.** The date you could restore your "operations", with reasonable speed, to the level which would generate the Business Income amount that would have existed if no direct physical loss or damage had occurred; or

**ii.** 30 consecutive days after the date determined in Paragraph **(a)(i)** above, unless a greater number of consecutive days is shown in the Declarations.

However, Extended Business Income does not apply to loss of Business Income incurred as a result of unfavorable business conditions caused by the impact of the Covered Cause of Loss in the area where the described premises are located.

**(b)** Loss of Business Income must be caused by direct physical loss or damage at the described premises caused by or resulting from any Covered Cause of Loss.

**(3)** With respect to the coverage provided in this Additional Coverage, suspension means:

**(a)** The partial slowdown or complete cessation of your business activities; or

**(b)** That a part or all of the described premises is rendered untenantable, if coverage for Business Income applies.

**(4)** This Additional Coverage is not subject to the Limits of Insurance of Section **I**-Property.

**g. Extra Expense**

**(1)** We will pay necessary Extra Expense you incur during the "period of restoration" that you would not have incurred if there had been no direct physical loss or damage to property at the described premises. The loss or damage must be caused by or result from a Covered Cause of Loss. With respect to loss of or damage to personal property in the open or personal property in a vehicle, the described premises include the area within 100 feet of the site at which the described premises are located.

With respect to the requirements set forth in the preceding paragraph, if you occupy only part of the site at which the described premises are located, your premises means:

**(a)** The portion of the building which you rent, lease or occupy; and

**(b)** Any area within the building or on the site at which the described premises are located, if that area services, or is used to gain access to, the described premises.

**(2)** Extra Expense means expense incurred:

**(a)** To avoid or minimize the suspension of business and to continue "operations":

**(i)** At the described premises; or

**(ii)** At replacement premises or at temporary locations, including re-location expenses, and costs to equip and operate the replacement or temporary locations.

**(b)** To minimize the suspension of business if you cannot continue "operations".

**(c)** To:

**(i)** Repair or replace any property; or

**(ii)** Research, replace or restore the lost information on damaged "valuable papers and records"

to the extent it reduces the amount of loss that otherwise would have been payable under this Additional Coverage or Additional Coverage **f.** Business Income.

**(3)** With respect to the coverage provided in this Additional Coverage, suspension means:

**(a)** The partial slowdown or complete cessation of your business activities; or

**(b)** That a part or all of the described premises is rendered untenantable, if coverage for Business Income applies.

**(4)** We will only pay for Extra Expense that occurs within 12 consecutive months after the date of direct physical loss or damage. This Additional Coverage is not subject to the Limits of Insurance of Section **I** - Property.

**h. Pollutant Clean Up And Removal**

We will pay your expense to extract "pollutants" from land or water at the described premises if the discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused by or results from a Covered Cause of Loss that occurs during the policy period. The expenses will be paid only if they are reported to us in writing within 180 days of the date on which the Covered Cause of Loss occurs.

This Additional Coverage does not apply to costs to test for, monitor or assess the existence, concentration or effects of "pollutants". But we will pay for testing which is performed in the course of extracting the "pollutants" from the land or water.

The most we will pay for each location under this Additional Coverage is $10,000 for the sum of all such expenses arising out of Covered Causes of Loss occurring during each separate 12 month period of this policy.

**i. Civil Authority**

We will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises due to direct physical loss of or damage to property, other than at the described premises, caused by or resulting from any Covered Cause of Loss.

The coverage for Business Income will begin 72 hours after the time of that action and will apply for a period of up to three consecutive weeks after coverage begins.

The coverage for necessary Extra Expense will begin immediately after the time of that action and ends:

**(1)** 3 consecutive weeks after the time of that action; or

**(2)** When your Business Income coverage ends;

whichever is later.

The definitions of Business Income and Extra Expense contained in the Business Income and Extra Expense Additional Coverages also apply to this Civil Authority Additional Coverage. The Civil Authority Additional Coverage is not subject to the Limits of Insurance of Section **I**- Property.

**j. Money Orders And "Counterfeit Money"**

We will pay for loss resulting directly from your having accepted in good faith, in exchange for merchandise, "money" or services:

**(1)** Money orders issued by any post office, express company or bank that are not paid upon presentation; or

**(2)** "Counterfeit money" that is acquired during the regular course of business.

The most we will pay for any loss under this Additional Coverage is $1,000.

**k. Forgery Or Alteration**

**(1)** We will pay for loss resulting directly from forgery or alteration of, any check, draft, promissory note, bill of exchange or similar written promise of payment in "money", that you or your agent has issued, or that was issued by someone who impersonates you or your agent.

**(2)** If you are sued for refusing to pay the check, draft, promissory note, bill of exchange or similar written promise of payment in "money", on the basis that it has been forged or altered, and you have our written consent to defend against the suit, we will pay for any reasonable legal expenses that you incur in that defense.

**(3)** For the purpose of this coverage, check includes a substitute check as defined in the Check Clearing for the 21st Century Act, and will be treated the same as the original it replaced.

**(4)** The most we will pay for any loss, including legal expenses, under this Additional Coverage is $2,500, unless a higher Limit of Insurance is shown in the Declarations.

**l. Increased Cost Of Construction**

**(1)** This Additional Coverage applies only to buildings insured on a replacement cost basis.

**(2)** In the event of damage by a Covered Cause of Loss to a building that is Covered Property, we will pay the increased costs incurred to comply with enforcement of an ordinance or law in the course of repair, rebuilding or replacement of damaged parts of that property, subject to the limitations stated in Paragraphs **(3)** through **(9)** of this Additional Coverage.

**(3)** The ordinance or law referred to in Paragraph **(2)** of this Additional Coverage is an ordinance or law that regulates the construction or repair of buildings or establishes zoning or land use requirements at the described premises, and is in force at the time of loss.

**(4)** Under this Additional Coverage, we will not pay any costs due to an ordinance or law that:

**(a)** You were required to comply with before the loss, even when the building was undamaged; and

**(b)** You failed to comply with.

**(5)** Under this Additional Coverage, we will not pay for:

**(a)** The enforcement of any ordinance or law which requires demolition, repair, replacement, reconstruction, remodeling or remediation of property due to contamination by "pollutants" or due to the presence, growth, proliferation, spread or any activity of "fungi", wet or dry rot or bacteria; or

**(b)** Any costs associated with the enforcement of an ordinance or law which requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to or assess the effects of "pollutants", "fungi", wet or dry rot or bacteria.

**(6)** The most we will pay under this Additional Coverage, for each described building insured under Section **I** - Property, is $10,000. If a damaged building(s) is covered under a blanket Limit of Insurance which applies to more than one building or item of property, then the most we will pay under this Additional Coverage, for each damaged building, is $10,000.

The amount payable under this Additional Coverage is additional insurance.

**(7)** With respect to this Additional Coverage:

**(a)** We will not pay for the Increased Cost of Construction:

**(i)** Until the property is actually repaired or replaced, at the same or another premises; and

**(ii)** Unless the repairs or replacement are made as soon as reasonably possible after the loss or damage, not to exceed two years. We may extend this period in writing during the two years.

**(b)** If the building is repaired or replaced at the same premises, or if you elect to rebuild at another premises, the most we will pay for the Increased Cost of Construction is the increased cost of construction at the same premises.

**(c)** If the ordinance or law requires relocation to another premises, the most we will pay for the Increased Cost of Construction is the increased cost of construction at the new premises.

**(8)** This Additional Coverage is not subject to the terms of the Ordinance Or Law Exclusion, to the extent that such Exclusion would conflict with the provisions of this Additional Coverage.

**(9)** The costs addressed in the Loss Payment Property Loss Condition in Section **I** - Property do not include the increased cost attributable to enforcement of an ordinance or law. The amount payable under this Additional Coverage, as stated in Paragraph **(6)** of this Additional Coverage, is not subject to such limitation.

**m. Business Income From Dependent Properties**

**(1)** We will pay for the actual loss of Business Income you sustain due to physical loss or damage at the premises of a dependent property caused by or resulting from any Covered Cause of Loss.

However, this Additional Coverage does not apply when the only loss to dependent property is loss or damage to "electronic data", including destruction or corruption of "electronic data". If the dependent property sustains loss or damage to "electronic data" and other property, coverage under this Additional Coverage will not continue once the other property is repaired, rebuilt or replaced.

The most we will pay under this Additional Coverage is $5,000 unless a higher Limit of Insurance is indicated in the Declarations.

**(2)** We will reduce the amount of your Business Income loss, other than Extra Expense, to the extent you can resume "operations", in whole or in part, by using any other available:

**(a)** Source of materials; or

**(b)** Outlet for your products.

**(3)** If you do not resume "operations", or do not resume "operations" as quickly as possible, we will pay based on the length of time it would have taken to resume "operations" as quickly as possible.

**(4)** Dependent property means property owned by others whom you depend on to:

  **(a)** Deliver materials or services to you, or to others for your account. But services does not mean water, communication or power supply services;

  **(b)** Accept your products or services;

  **(c)** Manufacture your products for delivery to your customers under contract for sale; or

  **(d)** Attract customers to your business.

  The dependent property must be located in the coverage territory of this policy.

**(5)** The coverage period for Business Income under this Additional Coverage:

  **(a)** Begins 72 hours after the time of direct physical loss or damage caused by or resulting from any Covered Cause of Loss at the premises of the dependent property; and

  **(b)** Ends on the date when the property at the premises of the dependent property should be repaired, rebuilt or replaced with reasonable speed and similar quality.

**(6)** The Business Income coverage period, as stated in Paragraph **(5)**, does not include any increased period required due to the enforcement of any ordinance or law that:

  **(a)** Regulates the construction, use or repair, or requires the tearing down of any property; or

  **(b)** Requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants".

  The expiration date of this policy will not reduce the Business Income coverage period.

**(7)** The definition of Business Income contained in the Business Income Additional Coverage also applies to this Business Income From Dependent Properties Additional Coverage.

**n. Glass Expenses**

**(1)** We will pay for expenses incurred to put up temporary plates or board up openings if repair or replacement of damaged glass is delayed.

**(2)** We will pay for expenses incurred to remove or replace obstructions when repairing or replacing glass that is part of a building. This does not include removing or replacing window displays.

**o. Fire Extinguisher Systems Recharge Expense**

**(1)** We will pay:

  **(a)** The cost of recharging or replacing, whichever is less, your fire extinguishers and fire extinguishing systems (including hydrostatic testing if needed) if they are discharged on or within 100 feet of the described premises; and

  **(b)** For loss or damage to Covered Property if such loss or damage is the result of an accidental discharge of chemicals from a fire extinguisher or a fire extinguishing system.

**(2)** No coverage will apply if the fire extinguishing system is discharged during installation or testing.

**(3)** The most we will pay under this Additional Coverage is $5,000 in any one occurrence.

**p. Electronic Data**

**(1)** Subject to the provisions of this Additional Coverage, we will pay for the cost to replace or restore "electronic data" which has been destroyed or corrupted by a Covered Cause of Loss. To the extent that "electronic data" is not replaced or restored, the loss will be valued at the cost of replacement of the media on which the "electronic data" was stored, with blank media of substantially identical type.

**(2)** The Covered Causes of Loss applicable to Business Personal Property include a virus, harmful code or similar instruction introduced into or enacted on a computer system (including "electronic data") or a network to which it is connected, designed to damage or destroy any part of the system or disrupt its normal operation. But there is no coverage for loss or damage caused by or resulting from manipulation of a computer system (including "electronic data") by any employee, including a temporary or leased employee, or by an entity retained by you, or for you, to inspect, design, install, modify, maintain, repair or replace that system.

**(3)** The most we will pay under this Additional Coverage - Electronic Data for all loss or damage sustained in any one policy year, regardless of the number of occurrences of loss or damage or the number of premises, locations or computer systems involved, is $10,000, unless a higher Limit of Insurance is shown in the Declarations. If loss payment on the first occurrence does not exhaust this amount, the balance is available for subsequent loss or damage sustained in, but not after, that policy year. With respect to an occurrence which begins in one policy year and continues or results in additional loss or damage in a subsequent policy year(s), all loss or damage is deemed to be sustained in the policy year in which the occurrence began.

**q. Interruption Of Computer Operations**

**(1)** Subject to all provisions of this Additional Coverage, you may extend the insurance that applies to Business Income and Extra Expense to apply to a suspension of "operations" caused by an interruption in computer operations due to destruction or corruption of "electronic data" due to a Covered Cause of Loss.

**(2)** With respect to the coverage provided under this Additional Coverage, the Covered Causes of Loss are subject to the following:

**(a)** Coverage under this Additional Coverage - Interruption Of Computer Operations is limited to the "specified causes of loss" and Collapse.

**(b)** If the Businessowners Coverage Form is endorsed to add a Covered Cause of Loss, the additional Covered Cause of Loss does not apply to the coverage provided under this Additional Coverage.

**(c)** The Covered Causes of Loss include a virus, harmful code or similar instruction introduced into or enacted on a computer system (including "electronic data") or a network to which it is connected, designed to damage or destroy any part of the system or disrupt its normal operation. But there is no coverage for an interruption related to manipulation of a computer system (including "electronic data") by any employee, including a temporary or leased employee, or by an entity retained by you, or for you, to inspect, design, install, modify, maintain, repair or replace that system.

**(3)** The most we will pay under this Additional Coverage - Interruption Of Computer Operations for all loss sustained and expense incurred in any one policy year, regardless of the number of interruptions or the number of premises, locations or computer systems involved, is $10,000 unless a higher Limit of Insurance is shown in the Declarations. If loss payment relating to the first interruption does not exhaust this amount, then the balance is available for loss or expense sustained or incurred as a result of subsequent interruptions in that policy year. A balance remaining at the end of a policy year does not increase the amount of insurance in the next policy year. With respect to any interruption which begins in one policy year and continues or results in additional loss or expense in a subsequent policy year(s), all loss and expense is deemed to be sustained or incurred in the policy year in which the interruption began.

**(4)** This Additional Coverage - Interruption Of Computer Operations does not apply to loss sustained or expense incurred after the end of the "period of restoration", even if the amount of insurance stated in **(3)** above has not been exhausted.

**(5)** Coverage for Business Income does not apply when a suspension of "operations" is caused by destruction or corruption of "electronic data", or any loss or damage to "electronic data", except as provided under Paragraphs **(1)** through **(4)** of this Additional Coverage.

**(6)** Coverage for Extra Expense does not apply when action is taken to avoid or minimize a suspension of "operations" caused by destruction or corruption of "electronic data", or any loss or damage to "electronic data", except as provided under Paragraphs **(1)** through **(4)** of this Additional Coverage.

**r. Limited Coverage For "Fungi", Wet Rot, Dry Rot And Bacteria**

**(1)** The coverage described in Paragraphs **r.(2)** and **r.(6)** only applies when the "fungi", wet or dry rot or bacteria are the result of a "specified cause of loss" other than fire or lightning that occurs during the policy period and only if all reasonable means were used to save and preserve the property from further damage at the time of and after that occurrence.

**(2)** We will pay for loss or damage by "fungi", wet or dry rot or bacteria. As used in this Limited Coverage, the term loss or damage means:

**(a)** Direct physical loss or damage to Covered Property caused by "fungi", wet or dry rot or bacteria, including the cost of removal of the "fungi", wet or dry rot or bacteria;

**(b)** The cost to tear out and replace any part of the building or other property as needed to gain access to the "fungi", wet or dry rot or bacteria; and

**(c)** The cost of testing performed after removal, repair, replacement or restoration of the damaged property is completed, provided there is a reason to believe that "fungi", wet or dry rot or bacteria are present.

**(3)** The coverage described under this Limited Coverage is limited to $15,000. Regardless of the number of claims, this limit is the most we will pay for the total of all loss or damage arising out of all occurrences of "specified causes of loss" (other than fire or lightning) which take place in a 12-month period (starting with the beginning of the present annual policy period). With respect to a particular occurrence of loss which results in "fungi", wet or dry rot or bacteria, we will not pay more than the total of $15,000 even if the "fungi", wet or dry rot or bacteria continues to be present or active, or recurs, in a later policy period.

**(4)** The coverage provided under this Limited Coverage does not increase the applicable Limit of Insurance on any Covered Property. If a particular occurrence results in loss or damage by "fungi", wet or dry rot or bacteria, and other loss or damage, we will not pay more, for the total of all loss or damage, than the applicable Limit of Insurance on the affected Covered Property.

If there is covered loss or damage to Covered Property, not caused by "fungi", wet or dry rot or bacteria, loss payment will not be limited by the terms of this Limited Coverage, except to the extent that "fungi", wet or dry rot or bacteria causes an increase in the loss. Any such increase in the loss will be subject to the terms of this Limited Coverage.

**(5)** The terms of this Limited Coverage do not increase or reduce the coverage provided under the Water Damage, Other Liquids, Powder Or Molten Material Damage or Collapse Additional Coverages.

**(6)** The following applies only if Business Income and/or Extra Expense Coverage applies to the described premises and only if the suspension of "operations" satisfies all the terms and conditions of the applicable Business Income and/or Extra Expense Additional Coverage.

**(a)** If the loss which resulted in "fungi", wet or dry rot or bacteria does not in itself necessitate a suspension of "operations", but such suspension is necessary due to loss or damage to property caused by "fungi", wet or dry rot or bacteria, then our payment under the Business Income and/or Extra Expense is limited to the amount of loss and/or expense sustained in a period of not more than 30 days. The days need not be consecutive.

**(b)** If a covered suspension of "operations" was caused by loss or damage other than "fungi", wet or dry rot or bacteria, but remediation of "fungi", wet or dry rot or bacteria prolongs the "period of restoration", we will pay for loss and/or expense sustained during the delay (regardless of when such a delay occurs during the "period of restoration"), but such coverage is limited to 30 days. The days need not be consecutive.

**6. Coverage Extensions**

In addition to the Limits of Insurance of Section **I** - Property, you may extend the insurance provided by this policy as provided below.

Except as otherwise provided, the following Extensions apply to property located in or on the building described in the Declarations or in the open (or in a vehicle) within 100 feet of the described premises, unless a higher Limit of Insurance is shown in the Declarations.

**a. Newly Acquired Or Constructed Property**

**(1) Buildings**

If this policy covers Buildings, you may extend that insurance to apply to:

**(a)** Your new buildings while being built on the described premises; and

**(b)** Buildings you acquire at premises other than the one described, intended for:

**(i)** Similar use as the building described in the Declarations; or

**(ii)** Use as a warehouse.

The most we will pay for loss or damage under this Extension is $250,000 at each building.

**(2) Business Personal Property**

If this policy covers Business Personal Property, you may extend that insurance to apply to:

**(a)** Business Personal Property, including such property that you newly acquire, at any location you acquire;

**(b)** Business Personal Property, including such property that you newly acquire, located at your newly constructed or acquired buildings at the location described in the Declarations; or

**(c)** Business Personal Property that you newly acquire, located at the described premises.

This Extension does not apply to personal property that you temporarily acquire in the course of installing or performing work on such property or your wholesale activities.

The most we will pay for loss or damage under this Extension is $100,000 at each building.

**(3) Period Of Coverage**

With respect to insurance on or at each newly acquired or constructed property, coverage will end when any of the following first occurs:

**(a)** This policy expires;

**(b)** 30 days expire after you acquire the property or begin construction of that part of the building that would qualify as covered property; or

**(c)** You report values to us.

We will charge you additional premium for values reported from the date you acquire the property or begin construction of that part of the building that would qualify as covered property.

**b. Personal Property Off Premises**

You may extend the insurance provided by this policy to apply to your Covered Property, other than "money" and "securities", "valuable papers and records" or accounts receivable, while it is in the course of transit or at a premises you do not own, lease or operate. The most we will pay for loss or damage under this Extension is $10,000.

**c. Outdoor Property**

You may extend the insurance provided by this policy to apply to your outdoor fences, radio and television antennas (including satellite dishes), signs (other than signs attached to buildings), trees, shrubs and plants, including debris removal expense. Loss or damage must be caused by or result from any of the following causes of loss:

**(1)** Fire;

**(2)** Lightning;

**(3)** Explosion;

**(4)** Riot or Civil Commotion; or

**(5)** Aircraft.

The most we will pay for loss or damage under this Extension is $2,500, but not more than $500 for any one tree, shrub or plant.

**d. Personal Effects**

You may extend the insurance that applies to Business Personal Property to apply to personal effects owned by you, your officers, your partners or "members", your "managers" or your employees. This extension does not apply to:

**(1)** Tools or equipment used in your business; or

**(2)** Loss or damage by theft.

The most we will pay for loss or damage under this Extension is $2,500 at each described premises.

**e. Valuable Papers And Records**

**(1)** You may extend the insurance that applies to Business Personal Property to apply to direct physical loss or damage to "valuable papers and records" that you own, or that are in your care, custody or control caused by or resulting from a Covered Cause of Loss. This Coverage Extension includes the cost to research, replace or restore the lost information on "valuable papers and records" for which duplicates do not exist.

**(2)** This Coverage Extension does not apply to:

**(a)** Property held as samples or for delivery after sale; and

**(b)** Property in storage away from the premises shown in the Declarations.

**(3)** The most we will pay under this Coverage Extension for loss or damage to "valuable papers and records" in any one occurrence at the described premises is $10,000, unless a higher Limit of Insurance for "valuable papers and records" is shown in the Declarations.

For "valuable papers and records" not at the described premises, the most we will pay is $5,000.

**(4)** Loss or damage to "valuable papers and records" will be valued at the cost of restoration or replacement of the lost or damaged information. To the extent that the contents of the "valuable papers and records" are not restored, the "valuable papers and records" will be valued at the cost of replacement with blank materials of substantially identical type.

**(5)** Paragraph **B.** Exclusions in Section **I-**Property does not apply to this Coverage Extension except for:

**(a)** Paragraph **B.1.c.,** Governmental Action;

**(b)** Paragraph **B.1.d.,** Nuclear Hazard;

**(c)** Paragraph **B.1.f.,** War And Military Action;

**(d)** Paragraph **B.2.f.,** Dishonesty;

**(e)** Paragraph **B.2.g.,** False Pretense;

**(f)** Paragraph **B.2.m.(2),** Errors Or Omissions; and

**(g)** Paragraph **B.3.**

**f. Accounts Receivable**

**(1)** You may extend the insurance that applies to Business Personal Property to apply to accounts receivable. We will pay:

**(a)** All amounts due from your customers that you are unable to collect;

**(b)** Interest charges on any loan required to offset amounts you are unable to collect pending our payment of these amounts;

**(c)** Collection expenses in excess of your normal collection expenses that are made necessary by loss or damage; and

**(d)** Other reasonable expenses that you incur to re-establish your records of accounts receivable;

that result from direct physical loss or damage by any Covered Cause of Loss to your records of accounts receivable.

**(2)** The most we will pay under this Coverage Extension for loss or damage in any one occurrence at the described premises is $10,000, unless a higher Limit of Insurance for accounts receivable is shown in the Declarations.

For accounts receivable not at the described premises, the most we will pay is $5,000.

**(3)** Paragraph **B.** Exclusions in Section **I-**Property does not apply to this Coverage Extension except for:

**(a)** Paragraph **B.1.c.,** Governmental Action;

    **(b)** Paragraph **B.1.d.,** Nuclear Hazard;

    **(c)** Paragraph **B.1.f.,** War And Military Action;

    **(d)** Paragraph **B.2.f.,** Dishonesty;

    **(e)** Paragraph **B.2.g.,** False Pretense;

    **(f)** Paragraph **B.3.;** and

    **(g)** Paragraph **B.5.,** Accounts Receivable Exclusion.

## B. Exclusions

**1.** We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss. These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area.

    **a. Ordinance Or Law**

    **(1)** The enforcement of any ordinance or law:

        **(a)** Regulating the construction, use or repair of any property; or

        **(b)** Requiring the tearing down of any property, including the cost of removing its debris.

    **(2)** This exclusion, Ordinance Or Law, applies whether the loss results from:

        **(a)** An ordinance or law that is enforced even if the property has not been damaged; or

        **(b)** The increased costs incurred to comply with an ordinance or law in the course of construction, repair, renovation, remodeling or demolition of property or removal of its debris, following a physical loss to that property.

    **b. Earth Movement**

    **(1)** Earthquake, including any earth sinking, rising or shifting related to such event;

    **(2)** Landslide, including any earth sinking, rising or shifting related to such event;

    **(3)** Mine subsidence, meaning subsidence of a man-made mine, whether or not mining activity has ceased;

    **(4)** Earth sinking (other than sinkhole collapse), rising or shifting including soil conditions which cause settling, cracking or other disarrangement of foundations or other parts of realty. Soil conditions include contraction, expansion, freezing, thawing, erosion, improperly compacted soil and the action of water under the ground surface.

But if Earth Movement, as described in Paragraphs **(1)** through **(4)** above, results in fire or explosion, we will pay for the loss or damage caused by that fire or explosion.

    **(5)** Volcanic eruption, explosion or effusion. But if volcanic eruption, explosion or effusion results in fire, building glass breakage or volcanic action, we will pay for the loss or damage caused by that fire, building glass breakage or volcanic action.

Volcanic action means direct loss or damage resulting from the eruption of a volcano when the loss or damage is caused by:

    **(a)** Airborne volcanic blast or airborne shock waves;

    **(b)** Ash, dust or particulate matter; or

    **(c)** Lava flow.

All volcanic eruptions that occur within any 168-hour period will constitute a single occurrence.

Volcanic action does not include the cost to remove ash, dust or particulate matter that does not cause direct physical loss of or damage to Covered Property.

    **c. Governmental Action**

Seizure or destruction of property by order of governmental authority.

But we will pay for loss or damage caused by or resulting from acts of destruction ordered by governmental authority and taken at the time of a fire to prevent its spread, if the fire would be covered under this policy.

    **d. Nuclear Hazard**

Nuclear reaction or radiation, or radioactive contamination, however caused.

But if nuclear reaction or radiation, or radioactive contamination, results in fire, we will pay for the loss or damage caused by that fire.

**e. Power Failure**

The failure of power or other utility service supplied to the described premises, however caused, if the failure occurs away from the described premises. Failure includes lack of sufficient capacity and reduction in supply.

But if the failure of power or other utility service results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

This exclusion does not apply to loss or damage to "computer(s)" and "electronic data".

**f. War And Military Action**

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**g. Water**

**(1)** Flood, surface water, waves, tides, tidal waves, overflow of any body of water, or their spray, all whether driven by wind or not;

**(2)** Mudslide or mudflow;

**(3)** Water that backs up or overflows from a sewer, drain or sump; or

**(4)** Water under the ground surface pressing on, or flowing or seeping through:

**(a)** Foundations, walls, floors or paved surfaces;

**(b)** Basements, whether paved or not; or

**(c)** Doors, windows or other openings.

But if Water, as described in Paragraphs **(1)** through **(4),** results in fire, explosion or sprinkler leakage, we will pay for the loss or damage caused by that fire, explosion or sprinkler leakage.

**h. Certain Computer-Related Losses**

**(1)** The failure, malfunction or inadequacy of:

**(a)** Any of the following, whether belonging to any insured or to others:

**(i)** "Computer" hardware, including microprocessors or other electronic data processing equipment as may be described elsewhere in this policy;

**(ii)** "Computer" application software or other "electronic media and records" as may be described elsewhere in this policy;

**(iii)** "Computer" operating systems and related software;

**(iv)** "Computer" networks;

**(v)** Microprocessors ("computer" chips) not part of any "computer" system; or

**(vi)** Any other computerized or electronic equipment or components; or

**(b)** Any other products, and any services, data or functions that directly or indirectly use or rely upon, in any manner, any of the items listed in Paragraph **(a)** above;

due to the inability to correctly recognize, distinguish, interpret or accept one or more dates or times. An example is the inability of computer software to recognize the year 2000.

**(2)** Any advice, consultation, design, evaluation, inspection, installation, maintenance, repair, replacement or supervision provided or done by you or for you to determine, rectify or test for, any potential or actual problems described in Paragraph **(1)** above.

However, if excluded loss or damage, as described in Paragraph **(1)** above results in a "specified cause of loss" under Section **I −** Property, we will pay only for the loss or damage caused by such "specified cause of loss".

We will not pay for repair, replacement or modification of any items in Paragraph **(1)(a)** or **(1)(b)** to correct any deficiencies or change any features.

**i. "Fungi", Wet Rot, Dry Rot And Bacteria**

Presence, growth, proliferation, spread or any activity of "fungi", wet or dry rot or bacteria.

But if "fungi", wet or dry rot or bacteria result in a "specified cause of loss", we will pay for the loss or damage caused by that "specified cause of loss".

This exclusion does not apply:

**(1)** When "fungi", wet or dry rot or bacteria result from fire or lightning; or

**(2)** To the extent that coverage is provided in the Additional Coverage - Limited Coverage For "Fungi", Wet Rot, Dry Rot And Bacteria (contained in the Limited Fungi or Bacteria Coverage) if any, with respect to loss or damage by a cause of loss other than fire or lightning.

**2.** We will not pay for loss or damage caused by or resulting from any of the following:

**a. Electrical Apparatus**

Artificially generated electrical current, including electric arcing, that disturbs electrical devices, appliances or wires.

But if artificially generated electrical current results in fire, we will pay for the loss or damage caused by fire.

We will pay for loss or damage to "computer(s)" due to artificially generated electrical current if such loss or damage is caused by or results from:

**(1)** An occurrence that took place within 100 feet of the described premises; or

**(2)** Interruption of electric power supply, power surge, blackout or brownout if the cause of such occurrence took place within 100 feet of the described premises.

**b. Consequential Losses**

Delay, loss of use or loss of market.

**c. Smoke, Vapor, Gas**

Smoke, vapor or gas from agricultural smudging or industrial operations.

**d. Steam Apparatus**

Explosion of steam boilers, steam pipes, steam engines or steam turbines owned or leased by you, or operated under your control. But if explosion of steam boilers, steam pipes, steam engines or steam turbines results in fire or combustion explosion, we will pay for the loss or damage caused by that fire or combustion explosion. We will also pay for loss or damage caused by or resulting from the explosion of gases or fuel within the furnace of any fired vessel or within the flues or passages through which the gases of combustion pass.

**e. Frozen Plumbing**

Water, other liquids, powder or molten material that leaks or flows from plumbing, heating, air conditioning or other equipment (except fire protective systems) caused by or resulting from freezing, unless:

**(1)** You do your best to maintain heat in the building or structure; or

**(2)** You drain the equipment and shut off the supply if the heat is not maintained.

**f. Dishonesty**

Dishonest or criminal acts by you, anyone else with an interest in the property, or any of your or their partners, "members", officers, "managers", employees, directors, trustees, authorized representatives or anyone to whom you entrust the property for any purpose:

**(1)** Acting alone or in collusion with others; or

**(2)** Whether or not occurring during the hours of employment.

This exclusion does not apply to acts of destruction by your employees; but theft by employees is not covered.

With respect to accounts receivable and "valuable papers and records", this exclusion does not apply to carriers for hire.

This exclusion does not apply to coverage that is provided under the Employee Dishonesty Optional Coverage.

**g. False Pretense**

Voluntary parting with any property by you or anyone else to whom you have entrusted the property if induced to do so by any fraudulent scheme, trick, device or false pretense.

**h. Exposed Property**

Rain, snow, ice or sleet to personal property in the open.

**i. Collapse**

Collapse, except as provided in the Additional Coverage for Collapse. But if collapse results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

**j. Pollution**

We will not pay for loss or damage caused by or resulting from the discharge, dispersal, seepage, migration, release or escape of "pollutants" unless the discharge, dispersal, seepage, migration, release or escape is itself caused by any of the "specified causes of loss". But if the discharge, dispersal, seepage, migration, release or escape of "pollutants" results in a "specified cause of loss", we will pay for the loss or damage caused by that "specified cause of loss".

**k. Neglect**

Neglect of an insured to use all reasonable means to save and preserve property from further damage at and after the time of loss.

**l. Other Types Of Loss**

**(1)** Wear and tear;

**(2)** Rust or other corrosion, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself;

**(3)** Smog;

**(4)** Settling, cracking, shrinking or expansion;

**(5)** Nesting or infestation, or discharge or release of waste products or secretions, by insects, birds, rodents or other animals;

**(6)** Mechanical breakdown, including rupture or bursting caused by centrifugal force.

This exclusion does not apply with respect to the breakdown of "computer(s)";

**(7)** The following causes of loss to personal property:

**(a)** Dampness or dryness of atmosphere;

**(b)** Changes in or extremes of temperature; or

**(c)** Marring or scratching.

But if an excluded cause of loss that is listed in Paragraphs **(1)** through **(7)** above results in a "specified cause of loss" or building glass breakage, we will pay for the loss or damage caused by that "specified cause of loss" or building glass breakage.

**m. Errors Or Omissions**

Errors or omissions in:

**(1)** Programming, processing or storing data, as described under "electronic data" or in any "computer" operations; or

**(2)** Processing or copying "valuable papers and records".

However, we will pay for direct physical loss or damage caused by resulting fire or explosion if these causes of loss would be covered by this coverage form.

**n. Installation, Testing, Repair**

Errors or deficiency in design, installation, testing, maintenance, modification or repair of your "computer" system including "electronic data".

However, we will pay for direct physical loss or damage caused by resulting fire or explosion if these causes of loss would be covered by this coverage form.

**o. Electrical Disturbance**

Electrical or magnetic injury, disturbance or erasure of "electronic data", except as provided for under the Additional Coverages of Section **I** - Property.

However, we will pay for direct loss or damage caused by lightning.

**p. Continuous Or Repeated Seepage Or Leakage Of Water**

Continuous or repeated seepage or leakage of water, or the presence or condensation of humidity, moisture or vapor, that occurs over a period of 14 days or more.

ISO Properties, Inc., 2004

**3.** We will not pay for loss or damage caused by or resulting from any of the following Paragraphs **a.** through **c.** But if an excluded cause of loss that is listed in Paragraphs **a.** through **c.** results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

   **a. Weather Conditions**

      Weather conditions. But this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in Paragraph **B.1.** above to produce the loss or damage.

   **b. Acts Or Decisions**

      Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body.

   **c. Negligent Work**

      Faulty, inadequate or defective:

      **(1)** Planning, zoning, development, surveying, siting;

      **(2)** Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

      **(3)** Materials used in repair, construction, renovation or remodeling; or

      **(4)** Maintenance;

      of part or all of any property on or off the described premises.

**4. Business Income And Extra Expense Exclusions**

   **a.** We will not pay for:

      **(1)** Any Extra Expense, or increase of Business Income loss, caused by or resulting from:

        **(a)** Delay in rebuilding, repairing or re-placing the property or resuming "operations", due to interference at the location of the rebuilding, repair or replacement by strikers or other persons; or

        **(b)** Suspension, lapse or cancellation of any license, lease or contract. But if the suspension, lapse or cancellation is directly caused by the suspension of "operations", we will cover such loss that affects your Business Income during the "period of restoration".

      **(2)** Any other consequential loss.

   **b.** With respect to this exclusion, suspension means:

      **(1)** The partial slowdown or complete cessation of your business activities; and

      **(2)** That a part or all of the described premises is rendered untenantable, if coverage for Business Income applies.

**5. Accounts Receivable Exclusion**

   The following additional exclusion applies to the Accounts Receivable Coverage Extension:

   We will not pay for:

   **a.** Loss or damage caused by or resulting from alteration, falsification, concealment or destruction of records of accounts receivable done to conceal the wrongful giving, taking or withholding of "money", "securities" or other property.

      This exclusion applies only to the extent of the wrongful giving, taking or withholding.

   **b.** Loss or damage caused by or resulting from bookkeeping, accounting or billing errors or omissions.

   **c.** Any loss or damage that requires any audit of records or any inventory computation to prove its factual existence.

**C. Limits Of Insurance**

  **1.** The most we will pay for loss or damage in any one occurrence is the applicable Limit of Insurance of Section **I** - Property shown in the Declarations.

  **2.** The most we will pay for loss of or damage to outdoor signs attached to buildings is $1,000 per sign in any one occurrence.

  **3.** The limits applicable to the Coverage Extensions and the Fire Department Service Charge and Pollutant Clean Up and Removal Additional Coverages are in addition to the Limits of Insurance of Section **I** - Property.

  **4. Building Limit - Automatic Increase**

   **a.** The Limit of Insurance for Buildings will automatically increase by the annual percentage shown in the Declarations.

   **b.** The amount of increase will be:

      **(1)** The Building limit that applied on the most recent of the policy inception date, the policy anniversary date, or any other policy change amending the Building limit, times

      **(2)** The percentage of annual increase shown in the Declarations, expressed as a decimal (example: 8% is .08), times

**(3)** The number of days since the beginning of the current policy year, or the effective date of the most recent policy change amending the Building limit, divided by 365.

**Example:**

If: The applicable Building limit is $100,000. The annual percentage increase is 8%. The number of days since the beginning of the policy year (or last policy change) is 146.

The amount of increase is

$100,000 X .08 X 146 / 365 = $3,200.

**5. Business Personal Property Limit - Seasonal Increase**

**a.** The Limit of Insurance for Business Personal Property will automatically increase by 25% to provide for seasonal variations.

**b.** This increase will apply only if the Limit of Insurance shown for Business Personal Property in the Declarations is at least 100% of your average monthly values during the lesser of:

**(1)** The 12 months immediately preceding the date the loss or damage occurs; or

**(2)** The period of time you have been in business as of the date the loss or damage occurs.

**D. Deductibles**

**1.** We will not pay for loss or damage in any one occurrence until the amount of loss or damage exceeds the Deductible shown in the Declarations. We will then pay the amount of loss or damage in excess of the Deductible up to the applicable Limit of Insurance of Section **I** – Property.

**2.** Regardless of the amount of the Deductible, the most we will deduct from any loss or damage for Glass and under all of the following Optional Coverages in any one occurrence is the Optional Coverage/Glass Deductible shown in the Declarations:

**a.** Money and Securities;

**b.** Employee Dishonesty; and

**c.** Outdoor Signs.

But this Optional Coverage/Glass Deductible will not increase the Deductible shown in the Declarations. This Deductible will be used to satisfy the requirements of the Deductible in the Declarations.

**3.** No deductible applies to the following Additional Coverages:

**a .** Fire Department Service Charge;

**b.** Business Income;

**c.** Extra Expense;

**d.** Civil Authority; and

**e.** Fire Extinguisher Systems Recharge Expense.

**E. Property Loss Conditions**

**1. Abandonment**

There can be no abandonment of any property to us.

**2. Appraisal**

If we and you disagree on the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

**a.** Pay its chosen appraiser; and

**b.** Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our right to deny the claim.

**3. Duties In The Event Of Loss Or Damage**

**a.** You must see that the following are done in the event of loss or damage to Covered Property:

**(1)** Notify the police if a law may have been broken.

**(2)** Give us prompt notice of the loss or damage. Include a description of the property involved.

**(3)** As soon as possible, give us a description of how, when and where the loss or damage occurred.

**(4)** Take all reasonable steps to protect the Covered Property from further damage, and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim. This will not increase the Limits of Insurance of Section **I** - Property. However, we will not pay for any subsequent loss or damage resulting from a cause of loss that is not a Covered Cause of Loss. Also, if feasible, set the damaged property aside and in the best possible order for examination.

**(5)** At our request, give us complete inventories of the damaged and undamaged property. Include quantities, costs, values and amount of loss claimed.

**(6)** As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records.

Also permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.

**(7)** Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

**(8)** Cooperate with us in the investigation or settlement of the claim.

**(9)** Resume all or part of your "operations" as quickly as possible.

**b.** We may examine any insured under oath, while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this insurance or the claim, including an insured's books and records. In the event of an examination, an insured's answers must be signed.

**4. Legal Action Against Us**

No one may bring a legal action against us under this insurance unless:

**a.** There has been full compliance with all of the terms of this insurance; and

**b.** The action is brought within 2 years after the date on which the direct physical loss or damage occurred.

**5. Loss Payment**

In the event of loss or damage covered by this policy:

**a.** At our option, we will either:

**(1)** Pay the value of lost or damaged property;

**(2)** Pay the cost of repairing or replacing the lost or damaged property;

**(3)** Take all or any part of the property at an agreed or appraised value; or

**(4)** Repair, rebuild or replace the property with other property of like kind and quality, subject to Paragraph **d.(1)(e)** below.

**b.** We will give notice of our intentions within 30 days after we receive the sworn proof of loss.

**c.** We will not pay you more than your financial interest in the Covered Property.

**d.** Except as provided in Paragraphs **(2)** through **(7)** below, we will determine the value of Covered Property as follows:

**(1)** At replacement cost without deduction for depreciation, subject to the following:

**(a)** If, at the time of loss, the Limit of Insurance on the lost or damaged property is 80% or more of the full replacement cost of the property immediately before the loss, we will pay the cost to repair or replace, after application of the deductible and without deduction for depreciation, but not more than the least of the following amounts:

**(i)** The Limit of Insurance under Section **I** - Property that applies to the lost or damaged property;

**(ii)** The cost to replace, on the same premises, the lost or damaged property with other property:

**i.** Of comparable material and quality; and

**ii.** Used for the same purpose; or

**(iii)** The amount that you actually spend that is necessary to repair or replace the lost or damaged property.

If a building is rebuilt at a new premises, the cost is limited to the cost which would have been incurred had the building been built at the original premises.

**(b)** If, at the time of loss, the Limit of Insurance applicable to the lost or damaged property is less than 80% of the full replacement cost of the property immediately before the loss, we will pay the greater of the following amounts, but not more than the Limit of Insurance that applies to the property:

  **(i)** The actual cash value of the lost or damaged property; or

  **(ii)** A proportion of the cost to repair or replace the lost or damaged property, after application of the deductible and without deduction for depreciation. This proportion will equal the ratio of the applicable Limit of Insurance to 80% of the cost of repair or replacement.

**(c)** You may make a claim for loss or damage covered by this insurance on an actual cash value basis instead of on a replacement cost basis. In the event you elect to have loss or damage settled on an actual cash value basis, you may still make a claim on a replacement cost basis if you notify us of your intent to do so within 180 days after the loss or damage.

**(d)** We will not pay on a replacement cost basis for any loss or damage:

  **(i)** Until the lost or damaged property is actually repaired or replaced; and

  **(ii)** Unless the repairs or replacement are made as soon as reasonably possible after the loss or damage.

  However, if the cost to repair or replace the damaged building property is $2,500 or less, we will settle the loss according to the provisions of Paragraphs **d.(1)(a)** and **d.(1)(b)** above whether or not the actual repair or replacement is complete.

**(e)** The cost to repair, rebuild or replace does not include the increased cost attributable to enforcement of any ordinance or law regulating the construction, use or repair of any property.

**(2)** If the "Actual Cash Value - Buildings" option applies, as shown in the Declarations, Paragraph **(1)** above does not apply to Buildings. Instead, we will determine the value of Buildings at actual cash value.

**(3)** The following property at actual cash value:

  **(a)** Used or second-hand merchandise held in storage or for sale;

  **(b)** Property of others. However, if an item(s) of personal property of others is subject to a written contract which governs your liability for loss or damage to that item(s), then valuation of that item(s) will be based on the amount for which you are liable under such contract, but not to exceed the lesser of the replacement cost of the property or the applicable Limit of Insurance;

  **(c)** Household contents, except personal property in apartments or rooms furnished by you as landlord;

  **(d)** Manuscripts; and

  **(e)** Works of art, antiques or rare articles, including etchings, pictures, statuary, marble, bronzes, porcelain and bric-a-brac.

**(4)** Glass at the cost of replacement with safety glazing material if required by law.

**(5)** Tenants' Improvements and Betterments at:

  **(a)** Replacement cost if you make repairs promptly.

  **(b)** A proportion of your original cost if you do not make repairs promptly. We will determine the proportionate value as follows:

    **(i)** Multiply the original cost by the number of days from the loss or damage to the expiration of the lease; and

    **(ii)** Divide the amount determined in **(i)** above by the number of days from the installation of improvements to the expiration of the lease.

  If your lease contains a renewal option, the expiration of the renewal option period will replace the expiration of the lease in this procedure.

**(c)** Nothing if others pay for repairs or replacement.

**(6)** Applicable only to the Optional Coverages:

**(a)** "Money" at its face value; and

**(b)** "Securities" at their value at the close of business on the day the loss is discovered.

**(7)** Applicable only to Accounts Receivable:

**(a)** If you cannot accurately establish the amount of accounts receivable outstanding as of the time of loss or damage:

**(i)** We will determine the total of the average monthly amounts of accounts receivable for the 12 months immediately preceding the month in which the loss or damage occurs; and

**(ii)** We will adjust that total for any normal fluctuations in the amount of accounts receivable for the month in which the loss or damage occurred or for any demonstrated variance from the average for that month.

**(b)** The following will be deducted from the total amount of accounts receivable, however that amount is established:

**(i)** The amount of the accounts for which there is no loss or damage;

**(ii)** The amount of the accounts that you are able to re-establish or collect;

**(iii)** An amount to allow for probable bad debts that you are normally unable to collect; and

**(iv)** All unearned interest and service charges.

**e.** Our payment for loss of or damage to personal property of others will only be for the account of the owners of the property. We may adjust losses with the owners of lost or damaged property if other than you. If we pay the owners, such payments will satisfy your claims against us for the owners' property. We will not pay the owners more than their financial interest in the Covered Property.

**f.** We may elect to defend you against suits arising from claims of owners of property. We will do this at our expense.

**g.** We will pay for covered loss or damage within 30 days after we receive the sworn proof of loss, provided you have complied with all of the terms of this policy, and

**(1)** We have reached agreement with you on the amount of loss; or

**(2)** An appraisal award has been made.

**6. Recovered Property**

If either you or we recover any property after loss settlement, that party must give the other prompt notice. At your option, you may retain the property. But then you must return to us the amount we paid to you for the property. We will pay recovery expenses and the expenses to repair the recovered property, subject to the Limits of Insurance of Section **I** - Property.

**7. Resumption Of Operations**

We will reduce the amount of your:

**a.** Business Income loss, other than Extra Expense, to the extent you can resume your "operations", in whole or in part, by using damaged or undamaged property (including merchandise or stock) at the described premises or elsewhere.

**b.** Extra Expense loss to the extent you can return "operations" to normal and discontinue such Extra Expense.

**8. Vacancy**

**a. Description Of Terms**

**(1)** As used in this Vacancy Condition, the term building and the term vacant have the meanings set forth in Paragraphs **(a)** and **(b)** below:

**(a)** When this policy is issued to a tenant, and with respect to that tenant's interest in Covered Property, building means the unit or suite rented or leased to the tenant. Such building is vacant when it does not contain enough business personal property to conduct customary operations.

**(b)** When this policy is issued to the owner or general lessee of a building, building means the entire building. Such building is vacant unless at least 31% of its total square footage is:

**(i)** Rented to a lessee or sub-lessee and used by the lessee or sub-lessee to conduct its customary operations; and/or

**(ii)** Used by the building owner to conduct customary operations.

**(2)** Buildings under construction or renovation are not considered vacant.

**b. Vacancy Provisions**

If the building where loss or damage occurs has been vacant for more than 60 consecutive days before that loss or damage occurs:

**(1)** We will not pay for any loss or damage caused by any of the following even if they are Covered Causes of Loss:

**(a)** Vandalism;

**(b)** Sprinkler leakage, unless you have protected the system against freezing;

**(c)** Building glass breakage;

**(d)** Water damage;

**(e)** Theft; or

**(f)** Attempted theft.

**(2)** With respect to Covered Causes of Loss other than those listed in Paragraphs **(1)(a)** through **(1)(f)** above, we will reduce the amount we would otherwise pay for the loss or damage by 15%.

**F. Property General Conditions**

**1. Control Of Property**

Any act or neglect of any person other than you beyond your direction or control will not affect this insurance.

The breach of any condition of this Coverage Form at any one or more locations will not affect coverage at any location where, at the time of loss or damage, the breach of condition does not exist.

**2. Mortgageholders**

**a.** The term "mortgageholder" includes trustee.

**b.** We will pay for covered loss of or damage to buildings or structures to each mortgageholder shown in the Declarations in their order of precedence, as interests may appear.

**c.** The mortgageholder has the right to receive loss payment even if the mortgageholder has started foreclosure or similar action on the building or structure.

**d.** If we deny your claim because of your acts or because you have failed to comply with the terms of this policy, the mortgageholder will still have the right to receive loss payment if the mortgageholder:

**(1)** Pays any premium due under this policy at our request if you have failed to do so;

**(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and

**(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the mortgageholder.

All of the terms of this policy will then apply directly to the mortgageholder.

**e.** If we pay the mortgageholder for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this policy:

**(1)** The mortgageholder's rights under the mortgage will be transferred to us to the extent of the amount we pay; and

**(2)** The mortgageholder's right to recover the full amount of the mortgageholder's claim will not be impaired.

At our option, we may pay to the mortgageholder the whole principal on the mortgage plus any accrued interest. In this event, your mortgage and note will be transferred to us and you will pay your remaining mortgage debt to us.

**f.** If we cancel this policy, we will give written notice to the mortgageholder at least:

**(1)** 10 days before the effective date of cancellation if we cancel for your non-payment of premium; or

**(2)** 30 days before the effective date of cancellation if we cancel for any other reason.

**g.** If we elect not to renew this policy, we will give written notice to the mortgageholder at least 10 days before the expiration date of this policy.

**3. No Benefit To Bailee**

No person or organization, other than you, having custody of Covered Property will benefit from this insurance.

**4. Policy Period, Coverage Territory**

Under Section **I** - Property:

**a.** We cover loss or damage commencing:

**(1)** During the policy period shown in the Declarations; and

**(2)** Within the coverage territory or, with respect to property in transit, while it is between points in the coverage territory.

**b.** The coverage territory is:

**(1)** The United States of America (including its territories and possessions);

    (2) Puerto Rico; and

    (3) Canada.

## G. Optional Coverages

If shown as applicable in the Declarations, the following Optional Coverages also apply. These coverages are subject to the terms and conditions applicable to property coverage in this policy, except as provided below.

**1. Outdoor Signs**

  **a.** We will pay for direct physical loss of or damage to all outdoor signs at the described premises:

    (1) Owned by you; or

    (2) Owned by others but in your care, custody or control.

  **b.** Paragraph **A.3.,** Covered Causes Of Loss, and Paragraph **B.,** Exclusions in Section **I** - Property, do not apply to this Optional Coverage, except for:

    (1) Paragraph **B.1.c.,** Governmental Action;

    (2) Paragraph **B.1.d.,** Nuclear Hazard; and

    (3) Paragraph **B.1.f.,** War And Military Action.

  **c.** We will not pay for loss or damage caused by or resulting from:

    (1) Wear and tear;

    (2) Hidden or latent defect;

    (3) Rust;

    (4) Corrosion; or

    (5) Mechanical breakdown.

  **d.** The most we will pay for loss or damage in any one occurrence is the Limit of Insurance for Outdoor Signs shown in the Declarations.

  **e.** The provisions of this Optional Coverage supersede all other references to outdoor signs in this policy.

**2. Money And Securities**

  **a.** We will pay for loss of "money" and "securities" used in your business while at a bank or savings institution, within your living quarters or the living quarters of your partners or any employee having use and custody of the property, at the described premises, or in transit between any of these places, resulting directly from:

    (1) Theft, meaning any act of stealing;

    (2) Disappearance; or

    (3) Destruction.

  **b.** In addition to the Limitations and Exclusions applicable to Section **I** - Property, we will not pay for loss:

    (1) Resulting from accounting or arithmetical errors or omissions;

    (2) Due to the giving or surrendering of property in any exchange or purchase; or

    (3) Of property contained in any "money"-operated device unless the amount of "money" deposited in it is recorded by a continuous recording instrument in the device.

  **c.** The most we will pay for loss in any one occurrence is:

    (1) The limit shown in the Declarations for Inside the Premises for "money" and "securities" while:

      (a) In or on the described premises; or

      (b) Within a bank or savings institution; and

    (2) The limit shown in the Declarations for Outside the Premises for "money" and "securities" while anywhere else.

  **d.** All loss:

    (1) Caused by one or more persons; or

    (2) Involving a single act or series of related acts;

  is considered one occurrence.

  **e.** You must keep records of all "money" and "securities" so we can verify the amount of any loss or damage.

**3. Employee Dishonesty**

  **a.** We will pay for direct loss of or damage to Business Personal Property and "money" and "securities" resulting from dishonest acts committed by any of your employees acting alone or in collusion with other persons (except you or your partner) with the manifest intent to:

    (1) Cause you to sustain loss or damage; and also

    (2) Obtain financial benefit (other than salaries, commissions, fees, bonuses, promotions, awards, profit sharing, pensions or other employee benefits earned in the normal course of employment) for:

      (a) Any employee; or

      (b) Any other person or organization.

**b.** We will not pay for loss or damage:

**(1)** Resulting from any dishonest or criminal act that you or any of your partners or "members" commit whether acting alone or in collusion with other persons.

**(2)** Resulting from any dishonest act committed by any of your employees (except as provided in Paragraph **a.**), "managers" or directors:

**(a)** Whether acting alone or in collusion with other persons; or

**(b)** While performing services for you or otherwise.

**(3)** The only proof of which as to its existence or amount is:

**(a)** An inventory computation; or

**(b)** A profit and loss computation.

**c.** The most we will pay for loss or damage in any one occurrence is the Limit of Insurance for Employee Dishonesty shown in the Declarations.

**d.** All loss or damage:

**(1)** Caused by one or more persons; or

**(2)** Involving a single act or series of acts;

is considered one occurrence.

**e.** If any loss is covered:

**(1)** Partly by this insurance; and

**(2)** Partly by any prior cancelled or terminated insurance that we or any affiliate had issued to you or any predecessor in interest;

the most we will pay is the larger of the amount recoverable under this insurance or the prior insurance.

We will pay only for loss or damage you sustain through acts committed or events occurring during the Policy Period. Regardless of the number of years this policy remains in force or the number of premiums paid, no Limit of Insurance cumulates from year to year or period to period.

**f.** This Optional Coverage is cancelled as to any employee immediately upon discovery by:

**(1)** You; or

**(2)** Any of your partners, "members", "managers", officers or directors not in collusion with the employee;

of any dishonest act committed by that employee before or after being hired by you.

**g.** We will pay only for covered loss or damage sustained during the policy period and discovered no later than one year from the end of the policy period.

**h.** If you (or any predecessor in interest) sustained loss or damage during the policy period of any prior insurance that you could have recovered under that insurance except that the time within which to discover loss or damage had expired, we will pay for it under this Optional Coverage, provided:

**(1)** This Optional Coverage became effective at the time of cancellation or termination of the prior insurance; and

**(2)** The loss or damage would have been covered by this Optional Coverage had it been in effect when the acts or events causing the loss or damage were committed or occurred.

**i.** The insurance under Paragraph **h.** above is part of, not in addition to, the Limit of Insurance applying to this Optional Coverage and is limited to the lesser of the amount recoverable under:

**(1)** This Optional Coverage as of its effective date; or

**(2)** The prior insurance had it remained in effect.

**j.** With respect to the Employee Dishonesty Optional Coverage in Paragraph **G.3.,** employee means:

**(1)** Any natural person:

**(a)** While in your service or for 30 days after termination of service;

**(b)** Who you compensate directly by salary, wages or commissions; and

**(c)** Who you have the right to direct and control while performing services for you;

**(2)** Any natural person who is furnished temporarily to you:

**(a)** To substitute for a permanent employee as defined in Paragraph **(1)** above, who is on leave; or

**(b)** To meet seasonal or short-term work load conditions;

**(3)** Any natural person who is leased to you under a written agreement between you and a labor leasing firm, to perform duties related to the conduct of your business, but does not mean a temporary employee as defined in Paragraph **(2)** above;

**(4)** Any natural person who is a former employee, director, partner, member, manager, representative or trustee retained as a consultant while performing services for you; or

**(5)** Any natural person who is a guest student or intern pursuing studies or duties, excluding, however, any such person while having care and custody of property outside any building you occupy in conducting your business.

But employee does not mean:

**(1)** Any agent, broker, factor, commission merchant, consignee, independent contractor or representative of the same general character; or

**(2)** Any "manager", director or trustee except while performing acts coming within the usual duties of an employee.

**4. Mechanical Breakdown**

**a.** We will pay for direct damage to Covered Property caused by an Accident to an Object. The Object must be:

**(1)** Owned by you or in your care, custody or control; and

**(2)** At the described premises.

**b.** Accident means a sudden and accidental breakdown of the Object or a part of the Object. At the time the breakdown occurs, it must manifest itself by physical damage to the Object that necessitates repair or replacement.

**c.** None of the following is an Accident:

**(1)** Depletion, deterioration, corrosion or erosion;

**(2)** Wear and tear;

**(3)** Leakage at any valve, fitting, shaft seal, gland packing, joint or connection;

**(4)** Breakdown of any vacuum tube, gas tube or brush;

**(5)** Breakdown of any "computer", including "computer(s)" used to operate production type machinery or equipment;

**(6)** Breakdown of any structure or foundation supporting the Object or any of its parts;

**(7)** The functioning of any safety or protective device; or

**(8)** The explosion of gases or fuel within the furnace of any Object or within the flues or passages through which the gases of combustion pass.

**d.** Object means any of the following equipment:

**(1)** Boiler and Pressure Vessels:

**(a)** Steam heating boilers and condensate return tanks used with them;

**(b)** Hot water heating boilers and expansion tanks used with them;

**(c)** Hot water supply boilers;

**(d)** Other fired or unfired vessels used for maintenance or service of the described premises but not used for processing or manufacturing;

**(e)** Steam boiler piping, valves, fittings, traps and separators, but only if they:

**(i)** Are on your premises or between parts of your premises;

**(ii)** Contain steam or condensate of steam; and

**(iii)** Are not part of any other vessel or apparatus;

**(f)** Feed water piping between any steam boiler and a feed pump or injector.

**(2)** Air Conditioning Units - Any air conditioning unit that has a capacity of 60,000 Btu or more, including:

**(a)** Inductors, convectors and coils that make use of a refrigerant and form part of a cooling, humidity control or space heating system;

**(b)** Interconnecting piping, valves and fittings containing only a refrigerant, water, brine or other solution;

**(c)** Vessels heated directly or indirectly that:

**(i)** Form part of an absorption type system; and

**(ii)** Function as a generator, regenerator or concentrator;

**(d)** Compressors, pumps, fans and blowers used solely with the system together with their driving electric motors; and

**(e)** Control equipment used solely with the system.

**e.** Object does not mean:

**(1)** As Boiler and Pressure Vessels:

**(a)** Equipment that is not under internal vacuum or internal pressure other than weight of contents;

**(b)** Boiler settings;

**(c)** Insulating or refractory material; or

**(d)** Electrical, reciprocating or rotating apparatus within or forming a part of the boiler or vessel.

**(2)** As Air Conditioning Units, any:

**(a)** Vessel, cooling tower, reservoir or other source of cooling water for a condenser or compressor, or any water piping leading to or from that source; or

**(b)** Wiring or piping leading to or from the unit.

**f.** We will not pay for an Accident to any Object while being tested.

**g. Suspension**

Whenever an Object is found to be in, or exposed to, a dangerous condition, any of our representatives may immediately suspend the insurance against loss from an Accident to that Object. This can be done by delivering or mailing a written notice of suspension to:

**(1)** Your last known address; or

**(2)** The address where the Object is located.

If we suspend your insurance, you will get a pro rata refund of premium. But the suspension will be effective even if we have not yet made or offered a refund.

**H. Property Definitions**

**1.** "Computer" means:

**a.** Programmable electronic equipment that is used to store, retrieve and process data; and

**b.** Associated peripheral equipment that provides communication, including input and output functions such as printing and auxiliary functions such as data transmission.

"Computer" does not include those used to operate production type machinery or equipment.

**2.** "Counterfeit money" means an imitation of "money" that is intended to deceive and to be taken as genuine.

**3.** "Electronic data" means information, facts or computer programs stored as or on, created or used on, or transmitted to or from computer software (including systems and applications software), on hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other repositories of computer software which are used with electronically controlled equipment. The term computer programs, referred to in the foregoing description of electronic data, means a set of related electronic instructions which direct the operations and functions of a "computer" or device connected to it, which enable the "computer" or device to receive, process, store, retrieve or send data.

**4.** "Fungi" means any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents or by-products produced or released by fungi.

**5.** "Manager" means a person serving in a directorial capacity for a limited liability company.

**6.** "Member" means an owner of a limited liability company represented by its membership interest, who also may serve as a "manager".

**7.** "Money" means:

**a.** Currency, coins and bank notes in current use and having a face value; and

**b.** Travelers checks, register checks and money orders held for sale to the public.

**8.** "Operations" means your business activities occurring at the described premises.

**9.** "Period of restoration":

**a.** Means the period of time that:

**(1)** Begins:

**(a)** 72 hours after the time of direct physical loss or damage for Business Income Coverage; or

**(b)** Immediately after the time of direct physical loss or damage for Extra Expense Coverage;

caused by or resulting from any Covered Cause of Loss at the described premises; and

**(2)** Ends on the earlier of:

**(a)** The date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality; or

      **(b)** The date when business is resumed at a new permanent location.

**b.** Does not include any increased period required due to the enforcement of any ordinance or law that:

      **(1)** Regulates the construction, use or repair, or requires the tearing down of any property; or

      **(2)** Requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to or assess the effects of "pollutants".

The expiration date of this policy will not cut short the "period of restoration".

**10.** "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**11.** "Securities" means negotiable and non-negotiable instruments or contracts representing either "money" or other property and includes:

**a.** Tokens, tickets, revenue and other stamps (whether represented by actual stamps or unused value in a meter) in current use; and

**b.** Evidences of debt issued in connection with credit or charge cards, which cards are not issued by you;

but does not include "money".

**12.** "Specified causes of loss" means the following:

Fire; lightning; explosion; windstorm or hail; smoke; aircraft or vehicles; riot or civil commotion; vandalism; leakage from fire extinguishing equipment; sinkhole collapse; volcanic action; falling objects; weight of snow, ice or sleet; water damage.

**a.** Sinkhole collapse means the sudden sinking or collapse of land into underground empty spaces created by the action of water on limestone or dolomite. This cause of loss does not include:

      **(1)** The cost of filling sinkholes; or

      **(2)** Sinking or collapse of land into man-made underground cavities.

**b.** Falling objects does not include loss of or damage to:

      **(1)** Personal property in the open; or

      **(2)** The interior of a building or structure, or property inside a building or structure, unless the roof or an outside wall of the building or structure is first damaged by a falling object.

**c.** Water damage means accidental discharge or leakage of water or steam as the direct result of the breaking apart or cracking of any part of a system or appliance (other than a sump system including its related equipment and parts) containing water or steam.

**13.** "Stock" means merchandise held in storage or for sale, raw materials and in-process or finished goods, including supplies used in their packing or shipping.

**14.** "Valuable papers and records" means inscribed, printed or written:

      **a.** Documents;

      **b.** Manuscripts; and

      **c.** Records;

including abstracts, books, deeds, drawings, films, maps or mortgages.

But "valuable papers and records" does not mean "money" or "securities".

**SECTION II - LIABILITY**

**A. Coverages**

   **1. Business Liability**

      **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury", "property damage" or "personal and advertising injury", to which this insurance does not apply. We may at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

      **(1)** The amount we will pay for damages is limited as described in Paragraph **D.-** Liability And Medical Expenses Limits Of Insurance in Section **II** - Liability; and

      **(2)** Our right and duty to defend end when we have used up the applicable Limit of Insurance in the payment of judgments or settlements or medical expenses.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Paragraph **f.** Coverage Extension - Supplementary Payments.

**b.** This insurance applies:

**(1)** To "bodily injury" and "property damage" only if:

**(a)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

**(b)** The "bodily injury" or "property damage" occurs during the policy period; and

**(c)** Prior to the policy period, no insured listed under Paragraph **C.1.** Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known before the policy period.

**(2)** To "personal and advertising injury" caused by an offense arising out of your business, but only if the offense was committed in the "coverage territory" during the policy period.

**c.** "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **C.1.** Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of "bodily injury" or "property damage" after the end of the policy period.

**d.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **C.1.** Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

**(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

**(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

**(3)** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

**e.** Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

**f.** **Coverage Extension - Supplementary Payments**

**(1)** We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

**(a)** All expenses we incur.

**(b)** Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which Business Liability Coverage for "bodily injury" applies. We do not have to furnish these bonds.

**(c)** The cost of bonds to release attachments, but only for bond amounts within our Limit of Insurance. We do not have to furnish these bonds.

**(d)** All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

**(e)** All costs taxed against the insured in the "suit".

**(f)** Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the Limit of Insurance, we will not pay any prejudgment interest based on that period of time after the offer.

**(g)** All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within our Limit of Insurance.

These payments will not reduce the limit of liability.

**(2)** If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

**(a)** The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

**(b)** This insurance applies to such liability assumed by the insured;

**(c)** The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

**(d)** The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

**(e)** The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

**(f)** The indemnitee:

**(i)** Agrees in writing to:

**i.** Cooperate with us in the investigation, settlement or defense of the "suit";

**ii.** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

**iii.** Notify any other insurer whose coverage is available to the indemnitee; and

**iv.** Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

**(ii)** Provides us with written authorization to:

**i.** Obtain records and other information related to the "suit"; and

**ii.** Conduct and control the defense of the indemnitee in such "suit".

**(3)** So long as the conditions in Paragraph **(2)** are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph **B.1.b.(2)** Exclusions in Section **II** - Liability, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the Limits of Insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when:

**(a)** We have used up the applicable Limit of Insurance in the payment of judgments or settlements; or

**(b)** The conditions set forth above, or the terms of the agreement described in Paragraph **(2)(f)** above are no longer met.

**2. Medical Expenses**

**a.** We will pay medical expenses as described below for "bodily injury" caused by an accident:

**(1)** On premises you own or rent;

**(2)** On ways next to premises you own or rent; or

**(3)** Because of your operations;

provided that:

**(a)** The accident takes place in the "coverage territory" and during the policy period;

**(b)** The expenses are incurred and reported to us within one year of the date of the accident; and

**(c)** The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

**b.** We will make these payments regardless of fault. These payments will not exceed the Limits of Insurance of Section **II** - Liability. We will pay reasonable expenses for:

**(1)** First aid administered at the time of an accident;

**(2)** Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

**(3)** Necessary ambulance, hospital, professional nursing and funeral services.

**B. Exclusions**

**1. Applicable To Business Liability Coverage**

This insurance does not apply to:

**a. Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

**b. Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

**(1)** That the insured would have in the absence of the contract or agreement; or

**(2)** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

**(a)** Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

**(b)** Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

**c. Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

**(1)** Causing or contributing to the intoxication of any person;

**(2)** The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

**(3)** Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

**d. Workers' Compensation And Similar Laws**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

**e. Employer's Liability**

"Bodily injury" to:

**(1)** An "employee" of the insured arising out of and in the course of:

**(a)** Employment by the insured; or

**(b)** Performing duties related to the conduct of the insured's business; or

**(2)** The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **(1)** above.

This exclusion applies:

**(1)** Whether the insured may be liable as an employer or in any other capacity; and

**(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

**f. Pollution**

**(1)** "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

**(a)** At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

**(i)** "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests;

**(ii)** "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

**(iii)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

**(b)** At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

**(c)** Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

**(i)** Any insured; or

**(ii)** Any person or organization for whom you may be legally responsible; or

**(d)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

**(i)** "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

**(ii)** "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

**(iii)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

**(e)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

**(2)** Any loss, cost or expense arising out of any:

**(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(b)** Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement or such claim or "suit" by or on behalf of a governmental authority.

**g. Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by an insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

**(1)** A watercraft while ashore on premises you own or rent;

**(2)** A watercraft you do not own that is:

**(a)** Less than 51 feet long; and

**(b)** Not being used to carry persons or property for a charge;

**(3)** Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

**(4)** Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

**(5)** "Bodily injury" or "property damage" arising out of:

**(a)** The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance or motor vehicle registration law where it is licensed or principally garaged; or

**(b)** The operation of any of the following machinery or equipment:

**(i)** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

**(ii)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

**h. Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

**(1)** The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

**(2)** The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition or stunting activity.

**i. War**

"Bodily injury", "property damage" or "personal and advertising injury", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by government authority in hindering or defending against any of these.

**j.  Professional Services**

"Bodily injury", "property damage" or "personal and advertising injury" caused by the rendering or failure to render any professional service. This includes but is not limited to:

**(1)** Legal, accounting or advertising services;

**(2)** Preparing, approving, or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs or specifications;

**(3)** Supervisory, inspection or engineering services;

**(4)** Medical, surgical, dental, x-ray or nursing services treatment, advice or instruction;

**(5)** Any health or therapeutic service treatment, advice or instruction;

**(6)** Any service, treatment, advice or instruction for the purpose of appearance or skin enhancement, hair removal or replacement or personal grooming;

**(7)** Optometry or optical or hearing aid services including the prescribing, preparation, fitting, demonstration or distribution of ophthalmic lenses and similar products or hearing aid devices;

**(8)** Body piercing services; and

**(9)** Services in the practice of pharmacy.

**k.  Damage To Property**

"Property damage" to:

**(1)** Property you own, rent or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

**(2)** Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

**(3)** Property loaned to you;

**(4)** Personal property in the care, custody or control of the insured;

**(5)** That particular part of real property on which you or any contractor or subcontractor working directly or indirectly on your behalf is performing operations, if the "property damage" arises out of those operations; or

**(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs **(1)**, **(3)** and **(4)** of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of 7 or fewer consecutive days. A separate Limit of Insurance applies to Damage To Premises Rented To You as described in Paragraph **D.** Liability And Medical Expenses Limit Of Insurance in Section **II** - Liability.

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs **(3)**, **(4)**, **(5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**l.  Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**m.  Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**n.  Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**o. Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

**(1)** "Your product";

**(2)** "Your work"; or

**(3)** "Impaired property";

if such product, work or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**p. Personal And Advertising Injury**

"Personal and advertising injury":

**(1)** Caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury";

**(2)** Arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity;

**(3)** Arising out of oral or written publication of material whose first publication took place before the beginning of the policy period;

**(4)** For which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement;

**(5)** Arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement";

**(6)** Arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement";

**(7)** Arising out of the wrong description of the price of goods, products or services stated in your "advertisement";

**(8)** Committed by an insured whose business is:

    **(a)** Advertising, broadcasting, publishing or telecasting;

    **(b)** Designing or determining content of web-sites for others; or

    **(c)** An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs **14.a.**, **b.** and **c.** of "personal and advertising injury" under Paragraph **F.** Liability And Medical Expenses Definitions.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, by itself, is not considered the business of advertising, broadcasting, publishing or telecasting.

**(9)** Arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time;

**(10)** With respect to any loss, cost or expense arising out of any:

    **(a)** Request, demand or order that any insured or others test for, monitor, clean-up, remove, contain, treat, detoxify or neutralize or in any way respond to, or assess the effects of, "pollutants"; or

    **(b)** Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing or in any way responding to, or assessing the effects of, "pollutants".

**(11)** Arising out of an electronic chatroom or bulletin board the insured hosts, owns or over which the insured exercises control;

**(12)** Arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights.

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

**(13)** Arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatags, or any other similar tactics to mislead another's potential customers.

**q. Electronic Data**

Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**r. Criminal Acts**

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

**s. Distribution Of Material In Violation Of Statutes**

"Bodily injury", "property damage", or "personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law; or

**(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

**(3)** Any statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information.

Exclusions **c., d., e., f., g., h., i., k., l., m., n.** and **o.** in Section **II** - Liability do not apply to damage by fire to premises while rented to you, or temporarily occupied by you with permission of the owner. A separate Damage To Premises Rented To You Limit of Insurance applies to this coverage as described in Paragraph **D.** Liability And Medical Expenses Limits of Insurance in Section **II** - Liability.

**2. Applicable To Medical Expenses Coverage**

We will not pay expenses for "bodily injury":

**a.** To any insured, except "volunteer workers".

**b.** To a person hired to do work for or on behalf of any insured or a tenant of any insured.

**c.** To a person injured on that part of premises you own or rent that the person normally occupies.

**d.** To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

**e.** To a person injured while practicing, instructing or participating in any physical exercises or games, sports or athletic contests.

**f.** Included within the "products-completed operations hazard".

**g.** Excluded under Business Liability Coverage.

**3. Applicable To Both Business Liability Coverage And Medical Expenses Coverage - Nuclear Energy Liability Exclusion**

This insurance does not apply:

**a.** Under Business Liability Coverage, to "bodily injury" or "property damage":

**(1)** With respect to which an insured under the policy is also an insured under a nuclear energy liability policy issued by the Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

**(2)** Resulting from the "hazardous properties" of "nuclear material" and with respect to which:

**(a)** Any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof; or

**(b)** The insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

**b.** Under Medical Expenses Coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

**c.** Under Business Liability Coverage, to "bodily injury" or "property damage" resulting from the "hazardous properties" of the "nuclear material"; if:

**(1)** The "nuclear material":

**(a)** Is at any "nuclear facility" owned by, or operated by or on behalf of, an insured; or

**(b)** Has been discharged or dispersed therefrom;

**(2)** The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an insured; or

**(3)** The "bodily injury" or "property damage" arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility"; but if such facility is located within the United States of America, its territories or possessions or Canada, this Exclusion **(3)** applies only to "property damage" to such "nuclear facility" and any property thereat.

**d.** As used in this exclusion:

**(1)** "By-product material" has the meaning given it in the Atomic Energy Act of 1954 or in any law amendatory thereof;

**(2)** "Hazardous properties" include radioac-tive, toxic or explosive properties;

**(3)** "Nuclear facility" means:

**(a)** Any "nuclear reactor";

**(b)** Any equipment or device designed or used for:

**(i)** Separating the isotopes of uranium or plutonium;

**(ii)** Processing or utilizing "spent fuel"; or

**(iii)** Handling, processing or packaging "waste";

**(c)** Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

**(d)** Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

**(4)** "Nuclear material" means "source material", "special nuclear material" or "by-product material";

**(5)** "Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

**(6)** "Property damage" includes all forms of radioactive contamination of property;

**(7)** "Source material" has the meaning given it in the Atomic Energy Act of 1954 or in any law amendatory thereof;

**(8)** "Special nuclear material" has the meaning given it in the Atomic Energy Act of 1954 or in any law amendatory thereof;

**(9)** "Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor";

**(10)** "Waste" means any waste material:

**(a)** Containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content; and

**(b)** Resulting from the operation by any person or organization of any "nuclear facility" included under Paragraphs **(a)** and **(b)** of the definition of "nuclear facility".

**C. Who Is An Insured**

**1.** If you are designated in the Declarations as:

**a.** An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

**b.** A partnership or joint venture, you are an insured. Your members, your partners and their spouses are also insureds, but only with respect to the conduct of your business.

**c.** A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

ISO Properties, Inc., 2004
o

**d.** An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

**2.** Each of the following is also an insured:

**a.** Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

**(1)** "Bodily injury" or "personal and advertising injury":

**(a)** To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), or to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

**(b)** To the spouse, child, parent, brother or sister of that co-"employee" as a consequence of Paragraph **(a)** above;

**(c)** For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraph **(a)** or **(b);** or

**(d)** Arising out of his or her providing or failing to provide professional health care services.

**(2)** "Property damage" to property:

**(a)** Owned, occupied or used by,

**(b)** Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by

you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

**b.** Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

**c.** Any person or organization having proper temporary custody of your property if you die, but only:

**(1)** With respect to liability arising out of the maintenance or use of that property; and

**(2)** Until your legal representative has been appointed.

**d.** Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this policy.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

**D. Liability And Medical Expenses Limits Of Insurance**

**1.** The Limits of Insurance of Section **II** - Liability shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

**a.** Insureds;

**b.** Claims made or "suits" brought; or

**c.** Persons or organizations making claims or bringing "suits".

**2.** The most we will pay for the sum of all damages because of all:

**a.** "Bodily injury", "property damage" and medical expenses arising out of any one "occurrence"; and

**b.** "Personal and advertising injury" sustained by any one person or organization;

is the Liability and Medical Expenses limit shown in the Declarations. But the most we will pay for all medical expenses because of "bodily injury" sustained by any one person is the Medical Expenses limit shown in the Declarations.

**3.** The most we will pay under Business Liability Coverage for damages because of "property damage" to a premises while rented to you or in the case of fire while rented to you or temporarily occupied by you with permission of the owner is the applicable Damage To Premises Rented To You limit shown for that premises in the Declarations. For a premises temporarily occupied by you, the applicable limit will be the highest Damage To Premises Rented To You limit shown in the Declarations.

**4. Aggregate Limits**

The most we will pay for:

**a.** All "bodily injury" and "property damage" that is included in the "products-completed operations hazard" is twice the Liability and Medical Expenses limit.

**b.** All:

**(1)** "Bodily injury" and "property damage" except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard";

**(2)** Plus medical expenses;

**(3)** Plus all "personal and advertising injury" caused by offenses committed;

is twice the Liability and Medical Expenses limit.

Subject to Paragraph **a.** or **b.** above, whichever applies, the Damage To Premises Rented To You Limit is the most we will pay for damages because of "property damage" to any one premises, while rented to you, or in the case of fire, while rented to you or temporarily occupied by you with permission of the owner.

The Limits of Insurance of Section **II –** Liability apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

**E. Liability And Medical Expenses General Conditions**

**1. Bankruptcy**

Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this policy.

**2. Duties In The Event Of Occurrence, Offense, Claim Or Suit**

**a.** You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

**(1)** How, when and where the "occurrence" or offense took place;

**(2)** The names and addresses of any injured persons and witnesses; and

**(3)** The nature and location of any injury or damage arising out of the "occurrence" or offense.

**b.** If a claim is made or "suit" is brought against any insured, you must:

**(1)** Immediately record the specifics of the claim or "suit" and the date received; and

**(2)** Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

**c.** You and any other involved insured must:

**(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

**(2)** Authorize us to obtain records and other information;

**(3)** Cooperate with us in the investigation, or settlement of the claim or defense against the "suit"; and

**(4)** Assist us, upon our request, in the enforcement of any right against any person or organization that may be liable to the insured because of injury or damage to which this insurance may also apply.

**d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**3. Legal Action Against Us**

No person or organization has a right under this policy:

**a.** To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

**b.** To sue us on this policy unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this policy or that are in excess of the applicable Limit of Insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**4. Separation Of Insureds**

Except with respect to the Limits of Insurance of Section **II** - Liability, and any rights or duties specifically assigned in this policy to the first Named Insured, this insurance applies:

**a.** As if each Named Insured were the only Named Insured; and

**b.** Separately to each insured against whom claim is made or "suit" is brought.

**F. Liability And Medical Expenses Definitions**

**1.** "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

**a.** Notices that are published include material placed on the Internet or on similar electronic means of communication; and

**b.** Regarding web-sites, only that part of a web-site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

**2.** "Auto" means:

**a.** A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

**b.** Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance or motor vehicle registration law where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment".

**3.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

**4.** "Coverage territory" means:

**a.** The United States of America (including its territories and possessions), Puerto Rico and Canada;

**b.** International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in Paragraph **a.** above; or

**c.** All other parts of the world if the injury or damage arises out of:

**(1)** Goods or products made or sold by you in the territory described in Paragraph **a.** above;

**(2)** The activities of a person whose home is in the territory described in Paragraph **a.** above, but is away for a short time on your business; or

**(3)** "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication;

provided the insured's responsibility to pay damages is determined in a "suit" on the merits in the territory described in Paragraph **a.** above or in a settlement we agree to.

**5.** "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

**6.** "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

**7.** "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

**8.** "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

**a.** It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

**b.** You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

**(1)** The repair, replacement, adjustment or removal of "your product" or "your work"; or

**(2)** Your fulfilling the terms of the contract or agreement.

**9.** "Insured contract" means:

**a.** A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

**b.** A sidetrack agreement;

**c.** Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

**d.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

**e.** An elevator maintenance agreement;

**f.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph **f.** does not include that part of any contract or agreement:

**(1)** That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road beds, tunnel, underpass or crossing;

**(2)** That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

  **(a)** Preparing, approving or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs or specifications; or

  **(b)** Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

**(3)** Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in Paragraph **(2)** above and supervisory, inspection or engineering services.

**10.** "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

**11.** "Loading or unloading" means the handling of property:

**a.** After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

**b.** While it is in or on an aircraft, watercraft or "auto"; or

**c.** While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

**12.** "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

**a.** Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

**b.** Vehicles maintained for use solely on or next to premises you own or rent;

**c.** Vehicles that travel on crawler treads;

**d.** Vehicles, whether self-propelled or not, on which are permanently mounted:

  **(1)** Power cranes, shovels, loaders, diggers or drills; or

  **(2)** Road construction or resurfacing equipment such as graders, scrapers or rollers;

**e.** Vehicles not described in Paragraph **a., b., c.** or **d.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

  **(1)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

  **(2)** Cherry pickers and similar devices used to raise or lower workers;

**f.** Vehicles not described in Paragraph **a., b., c.** or **d.** above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

  **(1)** Equipment designed primarily for:

    **(a)** Snow removal;

**(b)** Road maintenance, but not construction or resurfacing; or

**(c)** Street cleaning;

**(2)** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

**(3)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

However, "mobile equipment" does not include land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance or motor vehicle registration law where they are licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

**13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**14.** "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

**a.** False arrest, detention or imprisonment;

**b.** Malicious prosecution;

**c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

**d.** Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

**e.** Oral or written publication, in any manner, of material that violates a person's right of privacy;

**f.** The use of another's advertising idea in your "advertisement"; or

**g.** Infringing upon another's copyright, trade dress or slogan in your "advertisement".

**15.** "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**16.** "Products-completed operations hazard":

**a.** Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

**(1)** Products that are still in your physical possession; or

**(2)** Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

**(a)** When all of the work called for in your contract has been completed.

**(b)** When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

**(c)** When that part of the work done at the job site has been put to its intended use by any other person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

The "bodily injury" or "property damage" must occur away from premises you own or rent, unless your business includes the selling, handling or distribution of "your product" for consumption on premises you own or rent.

**b.** Does not include "bodily injury" or "property damage" arising out of:

**(1)** The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured; or

**(2)** The existence of tools, uninstalled equipment or abandoned or unused materials.

**17.** "Property damage" means:

**a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

**b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**18.** "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage", or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

   **a.** An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

   **b.** Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

**19.** "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

**20.** "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

**21.** "Your product":

   **a.** Means:

      **(1)** Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

         **(a)** You;

         **(b)** Others trading under your name; or

         **(c)** A person or organization whose business or assets you have acquired; and

      **(2)** Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

   **b.** Includes:

      **(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

      **(2)** The providing of or failure to provide warnings or instructions.

   **c.** Does not include vending machines or other property rented to or located for the use of others but not sold.

**22.** "Your work":

   **a.** Means:

      **(1)** Work or operations performed by you or on your behalf; and

      **(2)** Materials, parts or equipment furnished in connection with such work or operations.

   **b.** Includes:

      **(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

      **(2)** The providing of or failure to provide warnings or instructions.

**SECTION III - COMMON POLICY CONDITIONS (APPLICABLE TO SECTION I - PROPERTY AND SECTION II - LIABILITY)**

**A. Cancellation**

   **1.** The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

   **2.** We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

      **a.** 5 days before the effective date of cancellation if any one of the following conditions exists at any building that is Covered Property in this policy;

         **(1)** The building has been vacant or unoccupied 60 or more consecutive days. This does not apply to:

            **(a)** Seasonal unoccupancy; or

            **(b)** Buildings in the course of construction, renovation or addition.

            Buildings with 65% or more of the rental units or floor area vacant or unoccupied are considered unoccupied under this provision.

         **(2)** After damage by a Covered Cause of Loss, permanent repairs to the building:

            **(a)** Have not started, and

            **(b)** Have not been contracted for,

            within 30 days of initial payment of loss.

         **(3)** The building has:

            **(a)** An outstanding order to vacate;

**(b)** An outstanding demolition order; or

**(c)** Been declared unsafe by governmental authority.

**(4)** Fixed and salvageable items have been or are being removed from the building and are not being replaced. This does not apply to such removal that is necessary or incidental to any renovation or remodeling.

**(5)** Failure to:

**(a)** Furnish necessary heat, water, sewer service or electricity for 30 consecutive days or more, except during a period of seasonal unoccupancy; or

**(b)** Pay property taxes that are owing and have been outstanding for more than one year following the date due, except that this provision will not apply where you are in a bona fide dispute with the taxing authority regarding payment of such taxes.

**b.** 10 days before the effective date of cancellation if we cancel for nonpayment of premium.

**c.** 30 days before the effective date of cancellation if we cancel for any other reason.

**3.** We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

**4.** Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

**5.** If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

**6.** If notice is mailed, proof of mailing will be sufficient proof of notice.

**B. Changes**

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

**C. Concealment, Misrepresentation Or Fraud**

This policy is void in any case of fraud by you as it relates to this policy at any time. It is also void if you or any other insured, at any time, intentionally conceal or misrepresent a material fact concerning:

**1.** This policy;

**2.** The Covered Property;

**3.** Your interest in the Covered Property; or

**4.** A claim under this policy.

**D. Examination Of Your Books And Records**

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

**E. Inspections And Surveys**

**1.** We have the right to:

**a.** Make inspections and surveys at any time;

**b.** Give you reports on the conditions we find; and

**c.** Recommend changes.

**2.** We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

**a.** Are safe and healthful; or

**b.** Comply with laws, regulations, codes or standards.

**3.** Paragraphs **1.** and **2.** of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

**4.** Paragraph **2.** of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

**F. Insurance Under Two Or More Coverages**

If two or more of this policy's coverages apply to the same loss or damage, we will not pay more than the actual amount of the loss or damage.

## G. Liberalization

If we adopt any revision that would broaden the coverage under this policy without additional premium within 45 days prior to or during the policy period, the broadened coverage will immediately apply to this policy.

## H. Other Insurance

**1.** If there is other insurance covering the same loss or damage, we will pay only for the amount of covered loss or damage in excess of the amount due from that other insurance, whether you can collect on it or not. But we will not pay more than the applicable Limit of Insurance of Section **I** - Property.

**2.** Business Liability Coverage is excess over:

   **a.** Any other insurance that insures for direct physical loss or damage; or

   **b.** Any other primary insurance available to you covering liability for damages arising out of the premises or operations for which you have been added as an additional insured by attachment of an endorsement.

**3.** When this insurance is excess, we will have no duty under Business Liability Coverage to defend any claim or "suit" that any other insurer has a duty to defend. If no other insurer defends, we will undertake to do so; but we will be entitled to the insured's rights against all those other insurers.

## I. Premiums

**1.** The first Named Insured shown in the Declarations:

   **a.** Is responsible for the payment of all premiums; and

   **b.** Will be the payee for any return premiums we pay.

**2.** The premium shown in the Declarations was computed based on rates in effect at the time the policy was issued. On each renewal, continuation or anniversary of the effective date of this policy, we will compute the premium in accordance with our rates and rules then in effect.

**3.** With our consent, you may continue this policy in force by paying a continuation premium for each successive one-year period. The premium must be:

   **a.** Paid to us prior to the anniversary date; and

   **b.** Determined in accordance with Paragraph **2.** above.

Our forms then in effect will apply. If you do not pay the continuation premium, this policy will expire on the first anniversary date that we have not received the premium.

**4.** Undeclared exposures or change in your business operation, acquisition or use of locations may occur during the policy period that are not shown in the Declarations. If so, we may require an additional premium. That premium will be determined in accordance with our rates and rules then in effect.

## J. Premium Audit

**1.** This policy is subject to audit if a premium designated as an advance premium is shown in the Declarations. We will compute the final premium due when we determine your actual exposures.

**2.** Premium shown in this policy as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

**3.** The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

## K. Transfer Of Rights Of Recovery Against Others To Us

**1.** Applicable to Businessowners Property Coverage:

If any person or organization to or for whom we make payment under this policy has rights to recover damages from another, those rights are transferred to us to the extent of our payment. That person or organization must do everything necessary to secure our rights and must do nothing after loss to impair them. But you may waive your rights against another party in writing:

   **a.** Prior to a loss to your Covered Property.

   **b.** After a loss to your Covered Property only if, at time of loss, that party is one of the following:

     **(1)** Someone insured by this insurance; or

     **(2)** A business firm:

       **(a)** Owned or controlled by you; or

       **(b)** That owns or controls you; or

     **(3)** Your tenant.

You may also accept the usual bills of lading or shipping receipts limiting the liability of carriers.

This will not restrict your insurance.

**2.** Applicable to Businessowners Liability Coverage:

If the insured has rights to recover all or part of any payment we have made under this policy, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them. This condition does not apply to Medical Expenses Coverage.

**L. Transfer Of Your Rights And Duties Under This Policy**

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual Named Insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

**BUSINESSOWNERS**
**BP 01 59 08 08**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# WATER EXCLUSION ENDORSEMENT

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

**A.** The exclusion in Paragraph **B.** replaces the **Water** Exclusion under **Section I - Property.**

**B. Water**

**1.** Flood, surface water, waves (including tidal wave and tsunami), tides, tidal water, overflow of any body of water, or spray from any of these, all whether or not driven by wind (including storm surge);

**2.** Mudslide or mudflow;

**3.** Water that backs up or overflows or is otherwise discharged from a sewer, drain, sump, sump pump or related equipment;

**4.** Water under the ground surface pressing on, or flowing or seeping through:

   **a.** Foundations, walls, floors or paved surfaces;

   **b.** Basements, whether paved or not; or

   **c.** Doors, windows or other openings; or

**5.** Waterborne material carried or otherwise moved by any of the water referred to in Paragraph **1.**, **3.** or **4.**, or material carried or otherwise moved by mudslide or mudflow.

This exclusion applies regardless of whether any of the above, in Paragraphs **1.** through **5.**, is caused by an act of nature or is otherwise caused. An example of a situation to which this exclusion applies is the situation where a dam, levee, seawall or other boundary or containment system fails in whole or in part, for any reason, to contain the water.

But if any of the above, in Paragraphs **1.** through **5.**, results in fire, explosion or sprinkler leakage, we will pay for the loss or damage caused by that fire, explosion or sprinkler leakage.

**BUSINESSOWNERS**
**BP 12 16 07 02**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# VIRGINIA EFFECTIVE TIME CHANGES – REPLACEMENT OF 12 NOON

This endorsement modifies the BUSINESSOWNERS COVERAGE FORM.

To the extent that coverage in this policy replaces coverage in other policies terminating noon standard time on the inception date of this policy, coverage under this policy shall not become effective until such other coverage has terminated.

**BUSINESSOWNERS**

**BP 12 17 07 02**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# VIRGINIA CHANGES - POLICY PERIOD

Coverage under this policy begins at 12:01 A.M. (Standard Time) at the mailing address shown in the Declarations. However, to the extent that this policy replaces coverage in other policies terminating at 12:01 A.M. (Standard Time) on the inception date of this policy at the location of the property involved, coverage under this policy, at each location, becomes effective when such other coverage terminates.

 ISO Properties, Inc., 2001

BUSINESSOWNERS

BP 06 01 01 07

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION OF LOSS DUE TO VIRUS OR BACTERIA

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

**A.** The exclusion set forth in Paragraph **B.** applies to all coverage under **Section I - Property** in all forms and endorsements that comprise this Businessowners Policy, except as provided in Paragraph **C.** This includes but is not limited to forms or endorsements that cover property damage to buildings or personal property and forms or endorsements that cover business income, extra expense or action of civil authority.

**B.** We will not pay for loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease.

**C.** However, the exclusion in Paragraph **B.** does not apply to the following:

   **1.** Loss or damage caused by or resulting from "fungi", wet rot or dry rot. Such loss or damage is addressed in a separate exclusion in this Businessowners Policy; or

   **2.** Coverage otherwise provided under Food Contamination Endorsement **BP 04 31** (if that endorsement is attached to this Businessowners Policy); or

   **3.** Coverage otherwise provided under the Food Contamination Additional Coverage in Restaurants Endorsement **BP 07 78** (if that endorsement is attached to this Businessowners Policy).

**D.** With respect to any loss or damage subject to the exclusion in Paragraph **B.,** such exclusion supersedes any exclusion relating to "pollutants".

**E.** The following provisions in this Businessowners Policy are hereby amended to remove reference to bacteria:

   **1.** Exclusion of "Fungi", Wet Rot, Dry Rot And Bacteria; and

   **2.** Additional Coverage - Limited Coverage For "Fungi", Wet Rot, Dry Rot And Bacteria, including any endorsement increasing the scope or amount of coverage.

**F.** The terms of the exclusion in Paragraph **B.,** or the inapplicability of this exclusion to a particular loss, do not serve to create coverage for any loss that would otherwise be excluded under this Business-owners Policy.

BUSINESSOWNERS
BP 04 17 07 02

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EMPLOYMENT-RELATED PRACTICES EXCLUSION

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

The following exclusion is added to Paragraph **B. Exclusions** in **Section II - Liability:**

This insurance does not apply to:

1. "Bodily injury" or "personal and advertising injury" to:

   a. A person arising out of any:

      (1) Refusal to employ that person;

      (2) Termination of that person's employment; or

      (3) Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

   b. The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" or "personal and advertising injury" to that person at whom any of the employment-related practices described in Paragraphs **(1)**, **(2)** or **(3)** above is directed.

2. This exclusion applies:

   a. Whether the insured may be liable as an employer or in any other capacity; and

   b. To any obligation to share damages with or repay someone else who must pay damages because of the injury.

ISO Properties, Inc., 2001

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION - SILICA OR SILICA-RELATED DUST

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

**A.** The following exclusion is added to Paragraph **B. Exclusions** in **Section II - Liability:**

   **B. Exclusions-**

   This insurance does not apply to:

   **SILICA OR SILICA-RELATED DUST**

   **1.** "Bodily injury" arising, in whole or in part, out of the actual, alleged, threatened or suspected inhalation of, or ingestion of, "silica" or "silica-related dust".

   **2.** "Property damage" arising, in whole or in part, out of the actual, alleged, threatened or suspected contact with, exposure to, existence of, or presence of, "silica" or "silica-related dust".

   **3.** "Personal and advertising injury" arising, in whole or in part, out of the actual, alleged, threatened or suspected inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, "silica" or "silica-related dust".

   **4.** Any loss, cost or expense arising, in whole or in part, out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to or assessing the effects of, "silica" or "silica-related dust", by any insured or by any other person or entity.

**B.** The following definitions are added to Paragraph **F. Liability And Medical Expenses Definitions** in **Section II - Liability:**

   **1.** "Silica" means silicon dioxide, (occurring in crystalline, amorphous and impure forms), silica particles, silica dust or silica compounds.

   **2.** "Silica-related dust" means a mixture or combination of silica and other dust or particles.

   ISO Properties, Inc., 2005

**BUSINESSOWNERS**
**BP 05 42 01 15**

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# EXCLUSION OF PUNITIVE DAMAGES RELATED TO A CERTIFIED ACT OF TERRORISM

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

The following provisions are added to the Businessowners Liability Coverage Form **BP 00 06** and **Section II – Liability** of the Businessowners Coverage Form **BP 00 03:**

**A.** The following exclusion is added:

This insurance does not apply to:

**TERRORISM PUNITIVE DAMAGES**

Damages arising, directly or indirectly, out of a "certified act of terrorism" that are awarded as punitive damages.

**B.** The following definition is added:

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

**1.** The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

**2.** The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**C.** The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for injury or damage that is otherwise excluded under this Policy.

BP 05 42 01 15                   © Insurance Services Office, Inc., 2015                   Page 1 of 1

BUSINESSOWNERS

BP 05 77 01 06

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# FUNGI OR BACTERIA EXCLUSION (LIABILITY)

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

The following provisions are added to **Section II – Liability:**

**A.** The following exclusion is added to Paragraph **B.1., Exclusions - Applicable To Business Liability Coverage:**

**t. Fungi Or Bacteria**

**(1)** "Bodily injury", "property damage" or "personal and advertising injury" which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

**(2)** Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

This exclusion does not apply to any "fungi" or bacteria that are, are on, or are contained in, a good or product intended for bodily consumption.

**B.** The following definition is added Paragraph **F. Liability And Medical Expenses Definitions:**

**1.** "Fungi" means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or by-products produced or released by fungi.

BUSINESSOWNERS
BP 10 05 07 02

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION – YEAR 2000 COMPUTER-RELATED AND OTHER ELECTRONIC PROBLEMS

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

The following exclusion is added to Paragraph **B., Exclusions** in **Section II - Liability:**

**1.** This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising directly or indirectly out of:

  **a.** Any actual or alleged failure, malfunction, or inadequacy of:

    **(1)** Any of the following, whether belonging to any insured or to others:

      **(a)** Computer hardware, including microprocessors or other Electronic Data Processing Equipment as may be described elsewhere in the policy;

      **(b)** Computer application software or other Electronic Media and Records as may be described elsewhere in the policy;

      **(c)** Computer operating systems and related software;

      **(d)** Computer networks;

      **(e)** Microprocessors (computer chips) not part of any computer system; or

      **(f)** Any other computerized or electronic equipment or components; or

    **(2)** Any other products and any services, data or functions that directly or indirectly use or rely upon, in any manner, any of the items listed in Paragraph **1.a.(1)** of this endorsement

    due to the inability to correctly recognize, process, distinguish, interpret or accept the year 2000 and beyond.

  **b.** Any advice, consultation, design, evaluation, inspection, installation, maintenance, repair, replacement or supervision provided or done by you or for you to determine, rectify or test for, any potential or actual problems described in Paragraph **1.a.** of this endorsement.

# Brethren Mutual
### Insurance Company

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# VIRGINIA EXCLUSION - LEAD POISONING

This endorsement modifies Insurance provided under the following:

**BUSINESSOWNERS COVERAGE FORM - SECTION II - LIABILITY - BP 00 03**
**COMMERCIAL GENERAL LIABILITY COVERAGE FORM - CG 00 01**

This insurance does not apply to:

1. "bodily injury", "property damage", "personal and advertising injury", or the "products-completed operations hazard"" arising out of or caused directly or indirectly which would not have occurred in whole or in part but for the actual, alleged or threatened:
   a. Discharge, dispersal, seepage, migration, release or escape of any form of lead.
   b. Inhalation, ingestion, absorption or pro-longed physical exposure at any time to materials, compounds, goods or products containing lead.

2. Any loss, cost or expense arising out of any:
   a. Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, cleanup, remove, contain, treat, detoxify or neutralize or in any way respond to, or assess the effects of any form of lead contamination or poisoning; or
   b. Claim or suit by or on behalf of a government authority for damages because of testing, containing, treating, detoxifying or neutralizing, or in any way responding to or assessing the effects of any form of lead contamination or poisoning.

3. Any supervision, instructions, recommendations, warnings or advice provided or which should have been provided by you or by others on your behalf relative to **1.** above.

The company shall not have any duty to investigate, defend or settle any claim or "suit" or pay any fine, penalty or expense against an insured seeking damages related to **1., 2.,** or **3**. above.

This exclusion, **EXCLUSION - LEAD POISONING,** applies

1. Regardless of any other cause, event, material, product or building component that contributed concurrently or in any sequence; or
2. Even if the claims allege negligent or other wrong doing in the employment, investigation, hiring, supervision, monitoring or retention of others by an insured:
   if the "bodily injury"" or "property damage" was caused by or resulted from, in whole or in part, lead exposure.

**Definitions** of the Policy Forms are amended as follows:

   "**Insured contract**" means**:** Paragraph **d.** as it applies to this endorsement is replaced by:

   d. An obligation as required by ordinance or law, to indemnify a municipality, except:

      1) In connection with work for a municipality; or
      2) Enforcement of building, zoning or land use ordinance or laws for damages arising out of any materials, compounds, goods, or products containing lead.

The following is added to the **Definition** of "**Insured Contract**" means:

   "**Insured Contrac**t" does not mean any contract or agreement or any part of any other contract or agreement (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage", due to lead; to a third person or organization.



**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# VIRGINIA - EQUIPMENT BREAKDOWN ENHANCEMENT ENDORSEMENT

This endorsement changes coverage provided by the:

**BUSINESSOWNERS COVERAGE FORM - BP 00 03**

Read the entire endorsement carefully to determine rights, duties and what is and is not covered.

**SECTION I - PROPERTY**

**A. Coverage**

The following **Limitations** are deleted:

**4. Limitations**

**a.** We will pay for loss of or damage to:

**(1)** Steam boilers, steam pipes, steam engines or steam turbines caused by or resulting from any condition or event inside such equipment. But we will pay for loss of or damage to such equipment caused by or resulting from an explosion of gases or fuel within the furnace of any fire vessel or within the flues or passages through which the gases of combustion pass.

**(2)** Hot water boilers or other water heating equipment caused by or resulting from any condition or event inside such boilers or equipment, other than an explosion.

**5. Additional Coverages**

The following **Additional Coverages** are added:

**s. Pollutant Clean-up and Removal for "Equipment Breakdown"**

We will pay for the Pollutant Clean-up and Removal for loss resulting from an "Equipment Breakdown." The most we will pay for the Pollutant Clean-up and Removal is $250,000. This will be a part of and not an addition to the limit per loss.

This Additional Condition does not apply to costs to test for, monitor or assess the existence, concentration or effects of "pollutants." But we will pay for testing which is performed in the course of extracting the "pollutants" from the land or water.

**t. Expediting Expense**

We will pay for the expediting expense loss resulting from an "Equipment Breakdown" with respect to your damaged Covered Property. We will pay the reasonable extra cost to:

**(1)** Make temporary repairs;

**(2)** Expedite permanent repairs; and

**(3)** Expedite permanent replacement

Reasonable extra cost shall mean "the extra cost of temporary repair and of expediting the repair of such damaged equipment of the insured, including overtime and the extra cost of express or other rapid means of transportation." This will be a part of and not an addition to the limit per loss.

**u. Refrigerant Contamination**

We will pay the loss from contamination by refrigerant used in refrigerating, cooling or humidity control equipment at the described premises as a result of an "Equipment Breakdown."

The most we will pay for loss or damage under this coverage is $250,000. This will be part of and not an addition to the limit per loss.

**v.   Spoilage Coverage**

We will pay for loss of "perishable goods" due to spoilage resulting from lack of or excess power, light, heat, steam or refrigeration caused by an "Equipment Breakdown" to types of property covered by this policy, that are:

**(1)** Located on or within 1,000 feet of your described premises; and

**(2)** Owned or used by you, the building owner at your described premises, or owned by a public utility.

However, we will not pay for any loss, damage, cost or expense directly caused by, contributed to by, resulting from or arising out of the following causes of loss:

Fire, lightning, combustion explosion, windstorm or hail, weight or snow, ice or sleet, falling objects, smoke, aircraft or vehicles, riot or civil commotion, vandalism, sinkhole collapse, volcanic action, leakage from fire extinguishing equipment, water damage, earth movement and flood.

"Perishable Goods" means stock preserved and maintained under controlled conditions and susceptible to loss or damage if the controlled conditions change.

The most we will pay for loss or damage under this coverage is $250,000. This will be a part of and not an addition to the limit per loss.

**w.   CFC Refrigerants**

We will pay for the additional cost to repair or replace Covered Property because of the use or presence of a refrigerant containing CFC (chlorofluorocarbon) substances resulting from an "Equipment Breakdown."

Additional costs mean those in excess of what would have been required to repair or replace covered property, had no CFC refrigerant been involved. We also pay for additional loss as described under the Spoilage or Loss of Income Coverages provided by this endorsement, caused by the presence of a refrigerant containing CFC substances.

We pay no more than the least of the following:

**(1)** The cost to repair the damage property and replace any lost CFC refrigerant;

**(2)** The cost to repair the damaged property, retrofit the system to accept a non-CFC refrigerant, and charge the system with a non-CFC refrigerate; or

**(3)** The cost to replace the system with one using a non-CFC refrigerant.

This will be a part of and not an addition to the limit per loss.

**x.   "Computer Equipment"**

We will pay for loss or damage to your "computers" caused by an "Equipment Breakdown." "Computer equipment" means Covered Property that is electronic computer or other data processing equipment, including peripherals used in conjunction with such equipment, and electronic media and records. This will be a part of and not an addition to the limit per loss.

**y.   Service Interruption**

Any insurance provided for Business Income or Extra Expense is extended to apply to your loss, damage or expense caused by an "Equipment Breakdown" to equipment that is owned by a utility, landlord or other supplier, with whom you have a contract to supply you with any of the following services: electrical power, waste disposal, air conditioning, refrigeration, heating, natural gas, compressed air, water, steam, internet access, telecommunications services, wide area networks or data transmission. The equipment must meet the definition of "Equipment Breakdown" except that it is not Covered Property.

This will be a part of and not an addition to the limit per loss.

**z.   "Valuable Papers and Records"**

We will pay for your reasonable and necessary cost to research, replace and restore the lost information on electronic media and records as a result of an "Equipment Breakdown."

This will be part of and not an addition to the limits provided by the "valuable papers and records" coverage under the property form to which this endorsement is attached.

**B.   Exclusions**

The following **Exclusions** are replaced with the following:

**2.   a.   Electrical Apparatus**

Artificially generated electrical, magnetic or electromagnetic energy that disturbs, disrupts or otherwise interferes with any:

**(1)** Electrical or electronic wire, device, appliance, system, or network; or

**(2)** Device, appliance, system or network utilizing cellular or satellite technology.

For the purpose of this exclusion, electrical, magnetic or electromagnetic energy includes but is not limited to:

**(1)** Electronic current, including arching;

**(2)** Electrical charge produced or conducted by a magnetic or electromagnetic field;

**(3)** Pulse of electromagnetic energy; or

**(4)** Electromagnetic waves or microwaves.

But if artificially generated electrical current results in fire, we will pay for the loss or damage caused by fire.

We will pay for loss or damage to "computer(s)" due to artificially generated electrical current if such loss or damage is caused by or results from:

**(1)** An occurrence that took place within 100 feet of the described premises; or

**(2)** Interruption of electric power supply, power surge, blackout or brownout if the cause of such occurrence took place within 100 feet of the described premises.

However, if damage results causing an "Equipment Breakdown," we will pay for the loss or damage caused by the "Equipment Breakdown."

The following **Exclusions** are deleted:

**d.   Steam Apparatus**

Explosion of steam boilers, steam pipes, steam engines or steam turbines owned or leased by you, or operated under your control. But if explosion of steam boilers, steam pipes, steam engines or steam turbines results in fire or combustion explosion, we will pay for the loss or damage caused by that fire or combustion explosion. We will also pay for loss or damage caused by or resulting from the explosion of gases or fuel within the flues or passages through which the gases of combustion pass.

**l.   Other Types of Loss**

**(6)** Mechanical breakdown, including rupture of bursting caused by centrifugal force. This exclusion does not apply with respect to the breakdown of "computer(s)."

**F.   Property General Conditions**

The following **Property General Conditions** are added:

**5.   Suspension**

Whenever Covered Property is found to be in, or exposed to, a dangerous condition, any of our representatives may immediately suspend the insurance against loss to that Covered Property for the perils covered by this endorsement. Coverage can be suspended and possibly reinstated by delivering or mailing a written notice of suspension/coverage reinstatement to:

**a.** Your last known address: or

**b.** The address where the property is located.

If we suspend your insurance, you will get a pro-rata refund of premium. But the suspension will be effective even if we have not yet made or offered a refund.

**6.   Jurisdictional Inspections**

If any Covered Property under this endorsement requires inspection to comply with state or municipal boiler and pressure vessel regulations, we agree to perform such inspection on your behalf. We do not warrant that conditions are safe or healthful.

**7. Environmental, Safety and Efficiency Improvements**

If Covered Property requires repair or replacement due to an "Equipment Breakdown," we will pay your additional cost to replace with equipment that is better for the environment, safer, or more energy efficient than the equipment being replaced.

However, we will not pay more than 125% of what the cost would have been to repair or replace with like kind and quality. This Condition does not apply to any property to which Actual Cash Value applies.

**8. Green Environmental and Efficiency Improvement**

If Covered Property requires repair or replacement due to an "Equipment Breakdown," we will pay:

**a.** The lesser of the reasonable and necessary additional cost incurred by the Insured to repair or replace physically damaged Covered Property with equipment of like kind and quality which qualifies as "Green." "Like kind and quality" includes similar size and capacity.

**b.** The additional reasonable and necessary fees incurred by the Insured for an accredited professional certified by a "Green Authority" to participate in the repair or replacement of physically damaged Covered Property as "Green."

**c.** The additional reasonable and necessary cost incurred by the Insured for certification or recertification of the repaired or replaced Covered Property as "Green."

**d.** The additional reasonable and necessary cost incurred by the Insured for "Green" in the removal, disposal or recycling of damaged Covered Property.

**e.** The business interruption (if covered within the Policy to which this **Equipment Breakdown Enhancement Endorsement** is attached) loss during the additional time required for repair or replacement of Covered Property, consistent with "Green," in the coverages above.

We will not pay more than 125%, to a maximum limit of $100,000, of what the cost would have been to repair or replace with equipment of like kind and quality inclusive of fees, costs, and any business interruption loss incurred as stated above.

**Green Environmental and Efficiency Improvements** does not cover any of the following:

**a.** Covered Property does not include stock, raw materials, finished goods, "production machinery," merchandise, electronic data processing equipment not used in the functional support of the real property, process water, molds and dies, property in the open, property of others for which the Insured is legally liable, or personal property of others.

**b.** Any loss adjusted on any valuation basis other than a repair or replacement basis as per the Valuation section of this policy.

**c.** Any loss covered under any other section of this policy.

**d.** Any cost incurred due to any law or ordinance which the Insured was legally obligated to comply prior to the time of the "Equipment Breakdown."

**G. Optional Coverages**

With regards to coverage provided by this endorsement, Paragraph **G.1.c.(5)** of the **Outdoor Sign Optional Coverage** does not apply.

The provisions of this endorsement supercede the following **Optional Coverages**:

**4. Mechanical Breakdown**

**H. Property Definitions**

The following is added to **12.** "Specified Causes of Loss"

**12.** "Specified Causes of Loss" also means "Equipment Breakdown."

"Equipment Breakdown" as used herein means:

**a.** Physical loss or damage both originating within:

**(1)** Boilers, fired or unfired pressure vessels, vacuum vessels, and pressure piping, all normally subject to vacuum or internal pressure other than static pressure of contents, excluding:

**a.** Waste disposal piping;

**b.** Any piping forming part of a fire protective system;

**c.** Furnaces; and

**d.** Any water piping other than

    **(i)** Boiler feed water piping between the feed pump and the boiler;

    **(ii)** Boiler condensate return piping; or

    **(iii)** Water piping forming part of a refrigerating or air conditioning system used for cooling, humidifying or space heating purposes.

**(2)** All mechanical, electrical, electronic or fiber optic equipment; and

**b.** Caused by, resulting from, or consisting of:

**(1)** Mechanical breakdown; or

**(2)** Electrical or electronic breakdown; or

**(3)** Rupture, bursting, bulging, implosion, or steam explosion.

However, "Equipment Breakdown" will not mean:

**a.** Physical loss or damage caused by or resulting from any of the following; however, if loss or damage not otherwise excluded results, then we will pay for such resulting damage;

**(1)** Wear and Tear;

**(2)** Rust or other corrosion, decay, deterioration, hidden or latent defect, mold or any other quality in property that causes it to damage or destroy itself;

**(3)** Smog;

**(4)** Settling, cracking, shrinking or expansion;

**(5)** Nesting or infestation, or discharge or release of waste products or secretions, by birds, rodents or other animals.

**(6)** Any accident, loss, damage, cost, claim, or expense, whether preventative, remedial, or otherwise, directly or indirectly arising out of or relating to the recognition, interpretation, calculation, comparison, differentiation, sequencing, or processing of data by any computer system including any hardware, programs or software.

**(7)** Scratching and marring;

**b.** Loss, damage, cost or expense directly caused by, contributed to by, resulting from or arising out of the following cause of loss:

Fire, lightning, combustion explosion, windstorm or hail, weight of snow, ice or sleet, freezing, falling objects, smoke, aircraft or vehicles, riot or civil commotion, vandalism, sinkhole collapse, volcanic action, leakage from fire extinguishing equipment, water, water damage, earth movement or flood.

The following **Definitions** are added:

**15.** "Green" means products, materials, methods and processes certified by a "Green Authority" that conserve natural resources, reduce energy or water consumption, avoid toxic or other polluting emissions or otherwise minimize environmental impact.

**16.** "Green Authority" means an authority on "Green" buildings, products, materials, methods or processes certified and accepted by Leadership in Energy and Environmental Design (LEED, Reg U.S. Pat & TM Off), "Green" Building Initiative Green Globes (Reg U.S. Pat & TM Off), Energy Star Rating System or any other recognized "Green" rating system.

**17.** "Production machinery" means any machine which processes, forms, shapes, or transports raw materials, materials in process, waste materials or finished products.

All other terms and conditions of this policy remain unchanged.



**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ABSOLUTE ASBESTOS EXCLUSION

This endorsement modifies insurance provided under the following:

> **BUSINESSOWNERS COVERAGE FORM - SECTION II - LIABILITY - BP 00 03**
>
> **COMMERCIAL GENERAL LIABILITY COVERAGE FORM - CG 00 01**

This insurance does not apply to:

1.  "bodily injury", "property damage", "personal and advertising injury", or the "products-completed operations hazard" arising out of or caused directly or indirectly which would not have occurred in whole or in part but for the actual, alleged or threatened:
    a.  Discharge, dispersal, seepage, migration, release or escape of any form of silica, asbestos, coal, beryllium, aluminum or other pneumoconiosis, mesothelioma or carcinoma causing agents;
    b.  Inhaling, ingestion, absorption or prolonged physical exposure at any time to materials, compounds, goods or products containing silica, asbestos, coal, beryllium, aluminum or other pneumoconiosis, mesothelioma or carcinoma causing agents.

2.  Any loss, cost or expense arising out of any:
    a.  Request demand, order or statutory or regulatory requirement that any insured or others test for, monitor, cleanup, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of any form of silica, asbestos, coal, beryllium, aluminum or other pneumoconiosis, mesothelioma or carcinoma causing agents, or
    b.  Claim or suit by or on behalf of a governmental authority for damages because of testing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of any form of silica, asbestos, coal, beryllium, aluminum or other pneumoconiosis, mesothelioma or carcinoma causing agents.

3.  Any supervision, instructions, recommendations, warnings or advice provided or which should have been provided by you or by others on your behalf relative to **1.** above.

The company shall not have any duty to investigate, defend or settle any claim or "suit" or pay any fine, penalty or expense against an insured seeking damages related to **1., 2.** or **3.** above.

This exclusion, **ABSOLUTE ASBESTOS EXCLUSION**, applies:

1.  Regardless of any other cause, event, material, product or building component that contributed concurrently or in any sequence; or
2.  Even if the claims allege negligent or other wrong doing in the employment, investigation, hiring, supervision, monitoring or retention of others by an insured; if the "bodily injury" or "property damage" was caused or resulted from, in whole or in part, by any form of silica, asbestos, coal, beryllium, aluminum or other pneumoconiosis, mesothelioma or carcinoma causing agents .

**Definitions** of the Policy Forms are amended as follows:

Under **"Insured contract**" means: Paragraph **d.** as it applies to this endorsement is replaced by:

- **d.**  An obligation as required by ordinance or law, to indemnify a municipality, except:

  - **1)**  In connection with work for a municipality; or
  - **2)**  Enforcement of building, zoning or land use ordinance or laws for damages arising out of silica, asbestos, coal, beryllium, aluminum or other pneumoconiosis, mesothelioma or carcinoma causing agents;

The following is added to **Definitions** of **"Insured contract"** means:

> **"Insured contract"** does not mean any contract or agreement or any part of any other contract or agreement (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage", due to damages because of silica, asbestos, coal, beryllium, aluminum or other pneumoconiosis, mesothelioma or carcinoma causing agents; to a third person or organization.

POLICY NUMBER:  BOP0076884   02                                        EMPLOYMENT PRACTICES LIABILITY INSURANCE
VEP 00 02 10 11



# EMPLOYMENT PRACTICES LIABILITY INSURANCE
## (CLAIMS MADE)
## EMPLOYMENT PRACTICES LIABILITY INSURANCE COVERAGE FORM - VIRGINIA

### SCHEDULE

| | |
|---|---|
| Aggregate Limit Of Insurance: | $  100,000 |
| Each "Claim" Limit: | $  100,000 |
| Each "Claim" Deductible: | $  5,000 |
| Retroactive Date:   05/08/2016 | |

**THIS INSURANCE PROVIDES CLAIMS MADE AND REPORTED COVERAGE. DEFENSE COSTS APPLY AGAINST THE LIMITS OF INSURANCE AND ARE SUBJECT TO THE DEDUCTIBLE.**

**PLEASE READ THIS COVERAGE CAREFULLY TO DETERMINE RIGHTS, DUTIES, COVERAGE AND COVERAGE RESTRICTIONS.**

**WE HAVE NO DUTY TO PROVIDE COVERAGE UNLESS THERE HAS BEEN FULL COMPLIANCE WITH ALL THE CONDITIONS, SECTION V AND ANY OTHER APPLICABLE COVERAGE CONDITIONS.**

**IF WE HAVE ISSUED THIS COVERAGE BASED UPON YOUR APPLICATION FOR THIS INSURANCE, THE APPLICATION IS INCORPORATED BY REFERENCE AND IS ON FILE WITH THE COMPANY OR IT'S AGENT AND BECOMES A PART OF THIS POILCY. THAT APPLICATION IS A REPRESENTATION OF THE CORRECTNESS OF THE INFORMATION BASED UPON WHICH WE HAVE ISSUED THIS POLICY.**

Throughout this Coverage, the words "you" and "your" refer to the Named Insured shown in the Declarations and any other person or organization qualifying as a Named Insured under this Coverage. The words "we", "us" and "our" refer to the Company providing this insurance. The word "insured" means any person or organization qualifying as such under **SECTION II –   WHO IS AN INSURED**.

All words and phrases that appear in quotation marks have special meaning. Refer to **SECTION VII –   DEFINITIONS**.

**SECTION I –   COVERAGE**

In consideration of the payment of premium and subject to the Limits of Insurance shown in the Schedule above, and all the definitions, exclusions, terms and conditions of this insurance, we agree with you as follows:

1.  **Insuring Agreement**

    **a.**   We will pay on behalf of the insured for "damages" in excess of the Deductible arising out of any "employment practices" to which this insurance applies.

    We have no obligation under this insurance to make payments or perform acts or services except as provided for in this paragraph and in paragraph **2.** below.

    **b.**   This insurance applies to such "damages" only if:

    **(1)**   The "damages" result from "claims" made by:

    **(a)**   "Employees";

    **(b)**   "Leased workers";

    **(c)**   "Temporary workers";

    **(d)**   Former "employees"; or

    **(e)**   Applicants for employment by you;

    **(2)**   The "employment practices" take place in the "coverage territory";

    **(3)**   Such "employment practices" occured:

    **(a)**   After the Retroactive Date, if any, shown in the Schedule above; or

    **(b)**   Before the end of the policy period; and

Includes copyrighted material of Insurance Services, Inc.
with its pemission.

(4) A "claim" is both:

    (a) First made against any insured, in accordance with paragraph **c.** below, during the policy period or any Extended Reporting Period we provide under **SECTION VI –  EXTENDED REPORTING PERIODS**; and

    (b) Reported to us either **(i)** during the policy period or within thirty (30) days thereafter; or **(ii)** with respect to any "claim" first made during any Extended Reporting Period we provide under **SECTION VI –  EXTENDED REPORTING PERIODS**, during such Extended Reporting Period.

**c.** A "claim" will be deemed to have been made at the earlier of the following times:

    (1) When notice of such "claim" is received and recorded by you or by us, whichever comes first; or

    (2) When we make settlement in accordance with paragraph **2.b.(2)** below.

**d.** All "claims" by one or more claimants for "damages" based on or arising out of:

    (1) One "employment practice"; or

    (2) An "interrelated" series of "employment practices";

by one or more insureds shall be deemed to be one "claim" and to have been made at the time the first of those "claims" is made against any insured.

**e.** Each payment we make for "damages" or "defense expense" reduces the Amount of Insurance available, as provided under **SECTION III –  LIMITS OF INSURANCE**.

**2.  Defense of Claims, Administrative Hearings & Settlement Authority**

Subject to the limits of insurance, deductible, conditions, exclusions, definitions, and other terms of this Coverage:

**a.** We have the right and duty to defend "claims" against the insured seeking "damages" to which this insurance applies and to pay for related, "defense expense."

However, we have no duty to:

    (1) Defend "claims" against the insured seeking "damages"; or

    (2) Pay for related "defense expense", when this insurance does not apply.

**b.** We may, at our sole discretion:

    (1) Investigate any "employment practice" that may result in "damages"; and

    (2) Settle any "claim" which may result, provided:

        (a) We have the insured's written consent to settle; and

        (b) The settlement is within the applicable Limit of Insurance available.

**c.** Our liability will be limited as described below if:

    (1) The insured refuses to consent to any settlement we recommend; and

    (2) Such recommended settlement is acceptable to the claimant.

After such refusal, our liability under this Coverage for such "claim" shall not exceed the amount we would have paid for "damages" and "defense expense" if the insured had consented to our settlement recommendation. The insured shall thereafter be responsible for the negotiation and defense of that "claim" at their own cost and without our involvement.

**d.** Our right and duty to defend such "claims" ends when we have used up the Limit of Insurance available, as provided under **SECTION III – LIMITS OF INSURANCE**. This applies both to "claims" pending at that time and any that may be made.

**e.** (1) When we control defense of a "claim", we will pay associated "defense expense" and choose a counsel of our choice from the panel of attorneys we have selected to deal with "employment practices" "claims"" If you give us a specific written request at the time a "claim" is first made:

    (a) You or any involved insured may select one of our panel of employment law attorneys; or

    (b) You or such insured may ask us to consider the approval of a defense attorney of your or that insured's choice who is not on our panel.

We will then use the attorney selected in **(a)** above, or consider the request in **(b)** above, if we deem it appropriate to engage counsel for such "claim".

**(2)** If by mutual agreement or court order the insured assumes control of the defense before the applicable Limit of Insurance is used up, the insured will be allowed to select defense counsel and we will reimburse the insured for reasonable "defense expense". You and any involved insured must:

**(a)** Continue to comply with **SECTION V – CONDITIONS**, **4. Duties in Event of "Employment Practices" or ""Claims".**

**(b)** Direct defense counsel to:

**(i)** Furnish us with the additional information we request to evaluate the "employment practices" or "claim"; and

**(ii)** Cooperate with any counsel we may select to monitor or associate in the defense of the "employment practices" or "claim".

If we defend any insured under a reservation of rights, both such insured's counsel and our counsel will be required to maintain records pertinent to "defense expenses". These records will be used to determine the allocation of any "defense expenses" for which you or any insured may be solely responsible, including defense of an allegation not covered by this insurance.

We will notify you in writing when the applicable limit of insurance has been used-up by the payment of judgments, settlements or "defense expense".  We will also initiate and cooperate in the transfer of defense of any "claim" to an appropriate insured for whom the duty to defend has ended by reason of **SECTION I – COVERAGES**, paragraph **2.d.** above.

**f.** Upon notice to us and with our prior approval, the first Named Insured is authorized to act on behalf of all insureds with respect to the payment of "damages" in settlement of any Administrative Hearing or other non-judicial proceeding before the Federal Equal Employment Opportunity Commission, or any similar Federal, state or local body or commission. This authorization is limited to the sum of:

**(1)** "Damages" covered by this Coverage; and

**(2)** "Defense expenses", as defined in paragraph **5.d.** in **SECTION VII - DEFINITIONS;**

in a total amount not to exceed two times the amount of the Deductible stated in the Schedule above.

**3. Exclusions**

This insurance does not apply to "claims" based on, arising out of, or in any way involving:

**a.** **(1)** "Employment practices" which were the subject of any demand, suit or other proceeding which was initiated against any insured; or

**(2)** Facts and circumstances which would cause a reasonable person to believe a "claim" would be made and which were known to any insured;

prior to the effective date of the earlier of:

**(a)** The first Coverage of this type that we issued to you of which this Coverage was an uninterrupted renewal of this type of coverage; or

**(b)** This Coverage.

**b.** Loss of any benefit conferred or loss of any obligation imposed under an express contract of employment.

**c.** Any obligation to pay "damages" by reason of the assumption of liability in any contract or agreement.

However, this exclusion does not apply to liability for "damages" that the insured would have in the absence of the contract or agreement.

**d.** Liability arising under any of the following laws:

**(1)** Any workers compensation, disability benefits or unemployment compensation law, or any similar law.

However, this exclusion shall not apply to any "claim" based upon, arising from or in consequence of any actual or alleged retaliatory treatment of the claimant by the insured on account of the claimant's exercise of rights pursuant to any such law;

**(2)** Employees' Retirement Income Security Act of 1974, Public Law 93-406, (ERISA) as now or hereafter amended or any similar state or other governmental law. This includes

**(a)** Fiduciary liability;

**(b)** Liability arising out of the administration of any employee benefit plan; and

**(c)** Any other liability under any such laws

**(3)** The Fair Labor Standards Act, or any state or common law wage or hour law, including, but not limited to laws governing minimum wages, hours worked, overtime compensation and including any recordkeeping and reporting related thereto.

This exclusion includes actions or claims brought by or on behalf of individuals or agencies seeking wages, fines, penalties, taxes, disgorgement or other affirmative relief or compensation.

This exclusion does not include claims based on the Equal Pay Act or retaliation related to Equal Pay Act claims;

**(4)** The National Labor Relations Act;

**(5)** The Worker Adjustment and Retraining Notification Act (Public Law 100-379);

**(6)** The Consolidated Omnibus Budget Reconciliation Act of 1985 (COBRA); or

**(7)** The Occupational Safety and Health Act (OSHA).

This exclusion **d. (1) - (7)** also applies to:

**(a)** Any rules or regulations promulgated under any of the foregoing and amendments thereto,

**(b)** Any similar provisions of any federal, state or local law,

**(c)** That part of any "damages" awarded for the cost or replacement of any insurance benefits due or alleged to be due to any current or former "employee", and

**(d)** Any "claim" based upon, arising from or in consequence of any actual or alleged retaliatory treatment of the claimant by the insured on account of the claimant's exercise of rights pursuant to any such law described in this item **d.** This provision **d.(d)** does not apply to the specific retaliation exceptions shown in Paragraphs **d.(1)** and **d.(3)** above.

**e.** Oral or written publication of material, if such material:

**(1)** Was published by or at the direction of the insured with knowledge of the material's falsity; or

**(2)** Was first published before the Retroactive Date, if any, shown in the Schedule above.

**f.** Dishonest, criminal or fraudulent acts of the insured.

**g.** The willful failure by the insured or with the insured's consent to comply with any law or any governmental or administrative order or regulation relating to "employment practices". Willful, as used in this exclusion **g.**, means acting with intentional or reckless disregard for such employment related laws, orders or regulations.

The enforcement of this exclusion against any insured shall not be imputed to any other insured.

**h.** "Bodily injury".

**i.** "Employment practices" which occur when or after any other business entity acquires an ownership interest in you, which is greater than fifty percent.

**j.** Costs of complying with physical modifications to your premises or any changes to your usual business operations as mandated by the Americans with Disabilities Act of 1990 including any amendment thereto, or any similar federal, state or local law.

This exclusion also applies to any "claim" based upon, arising from or in consequence of any actual or alleged retaliatory treatment of the claimant by the insured on account of the claimant's exercise of rights pursuant to any such law described in this item **j.**

**k.** Lockout, strike, picket line, related worker replacements or other similar actions resulting from labor disputes or labor negotiations.

This exclusion also applies to any "claim" based upon, arising from or in consequence of any actual or alleged retaliatory treatment of the claimant by the insured on account of the claimant's exercise of rights pursuant to labor disputes or labor negotiations.

**SECTION II - WHO IS AN INSURED**

**1.** For purposes of this insurance, if you are designated in the Declarations as:

**a.** An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

**b.** A partnership or joint venture, you are an insured. Your current or former members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

**c.** A limited liability company, you are an insured. Your current or former members are also insureds, but only with respect to the conduct of your business. Your current or former managers are insureds, but only with respect to their duties as your managers.

    **d.** An organization other than a partnership or joint venture, you are an insured. Your current or former directors are insureds, but only with respect to their duties as your directors.

**2.** Your current or former "employees" are also insureds, but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business.

**3.** Any heirs, executors, administrators, assignees or legal representatives of any individual insured in subparagraphs **1.** and **2.** above, in the event of the death or incapacity of such insured, shall be insureds, but only to the extent this insurance would have been available to such insured but for their death or incapacity.

**4.** Any organization you newly acquire or form, other than a partnership or joint venture, and over which you maintain ownership or majority interest, which qualify as an insured if there is no other similar insurance available to that organization. However:

    **a.** You must provide us notice of such acquisition or formation within 30 days of the effective date of your acquisition or formation;

    **b.** Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

    **c.** Coverage does not apply to any "employment practices" that occurred before you acquired or formed the organization; and

    **d.** You must pay us any additional premium due as a condition precedent to the enforceability of this additional extension of coverage.

This Paragraph **4.** does not apply to any organizatio after it is shown in the Declarations.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

### SECTION III – LIMITS OF INSURANCE

**1.** The Amount of Insurance stated as Aggregate Limit on the Schedule above is the most we will pay for the sum of:

    **a.** "Damages"  for all "claims" arising out of any actual or alleged "employment practices" covered by this insurance; and

    **b.** "Defense expense" for all "claims" seeking "damages" payable under paragraph **a.** above.

Each payment we make for such "damages" or "defense expenses" reduces the Aggregate Limit by the amount of the payment.

This reduced limit will then be the Amount of Insurance available for further "damages" and "defense expenses" under this Coverage.

**2.** Subject to paragraph **1.** above, the Amount of Insurance stated as the Each "Claim" Limit of Insurance is the most we will pay in excess of the Deductible as further described in **SECTION IV – DEDUCTIBLE** for the sum of:

    **a.** "Damages":

        **(1)** For injury arising from "employment practices" covered by this insurance; and

        **(2)** Arising out of one "claim"; and

    **b.** "Defense expense" associated with that specific "claim" in item **2.a**. immediately preceding.

**3.** We will pay all interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the amount available for judgment under the provisions of paragraph **1.** and **2.** above.  This payment will be in additional to the Limits of Liability.

The Limits of Insurance of this Coverage apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

### SECTION IV –  DEDUCTIBLE

**1.** A deductible applies to all "damages" for injury arising from "employment practices" and any "defense expense" however caused.

**2.** Our obligation to pay "damages" and "defense expense" on behalf of any insured applies only to the sum of the amount of "damages" and "defense expense" for  any one "claim" which are in excess of the deductible amount stated in the Schedule above.

**3.** Your obligation is to pay the deductible applicable to each "claim" made against this insurance. That deductible applies to the sum of all "damages" because of injury arising from "employment practices" paid for any one "claim" and applicable "defense expense" associated therewith. If there should be no "damages" paid for a "claim", you are still obligated to pay the applicable deductible for any "defense expense" incurred by us in connection with that "claim".

4. The terms of this insurance apply irrespective of the application of the deductible, including those with respect to:

   **a.** Our right and duty to defend any "claims" seeking those "damages", and

   **b.** Your and any involved insured's duties in the event of a "claim"

5. We may pay any part or all of the deductible to effect settlement of any "claim" and, upon notification of the action taken, you shall promptly reimburse us for such part of the deductible as we may have paid for "damages" or "defense expense".

6. The application of the deductible does not reduce the applicable Limits of Insurance.

**SECTION V - CONDITIONS**

**1. Bankruptcy**

The bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this insurance.

In addition, any party who has obtained a judgment against the insured that is returned unsatisfied may bring an action against the insurer to recover damages insured by the policy.

**2. Cancellation**

   **a.** The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

   **b.** We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation, stating the reason for cancellation, at least:

     **(1)** 15 days before the effective date of cancellation if we cancel for nonpayment of premium.

     **(2)** 45 days before the effective date of cancellation if we cancel for any other reason.

   **c.** We will mail or deliver written notice to your last mailing address known to us.  If notice is mailed, it will be sent by ordinary mail for which a Certificate of Mailing has been obtained, or by registered or certified mail.

   **d.** Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

   **e.** If this policy is cancelled, we will send the first Named Insured any premium refund due. The cancellation will be effective even if we have not made or offered a refund. The following provisions govern calculation of return premium:

     **(1)** We will compute return premium pro rata and round to the next higher whole dollar when this policy is cancelled:

       **(a)** At our request;

       **(b)** Because you no longer have a financial or insurable interest in the property or business operation that is the subject of insurance;

       **(c)** And rewritten by us or a member of our company group; or

       **(d)** After the first year, if it is a prepaid policy written for a term of more than one year.

     **(2)** When this policy is cancelled at your request (except when Paragraph **(1)(b)**, **(1)(c)** or **(1)(d)** applies), we will return 90% of the pro rata unearned premium, rounded to the next higher whole dollar.  If we cancel, the refund will be pro rata.

**3. Changes**

This Coverage contains all agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this Coverage with our consent. This Coverage's terms can be amended or waived only by endorsement issued by us and made a part of this Coverage.

**4. Duties in the Event of "Employment Practices" or "Claims"**

   **a.** You must see to it that we are notified as soon as practicable of any specific "employment practices" which you believe may result in an actual "claim". Your belief must be reasonably certain as the result of specific allegations made by a potential claimant or such potential claimant's representative, or as the result of specifically identifiable injury sustained by a potential claimant. Notices of "employment practices" should include the following detailed information:

     **(1)** How, when and where such "employment practices" took place;

     **(2)** The names and addresses of any potential claimants and witnesses; and

     **(3)** The nature of any injury arising out of such "employment practices".

Notice of such "employment practices" is not notice of a "claim", but preserves any insured'srights to future coverage for subsequent "claims" arising out of such "employment practices" as described in the Basic Extended Reporting Period of **SECTION VI - EXTENDED REPORTING PERIODS**.

Includes copyrighted material of Insurance Services, Inc. with its permission.

**b.** If a "claim" is received by any insured:

**(1)** You must immediately record the specifics of the "claim" and the date received;

**(2)** You and any other involved insured must see to it that we receive written notice of the "claim", as soon as practicable, but in any event we must receive notice either:

**(a)** During the policy period or within thirty (30) days thereafter; or

**(b)** With respect to any "claim" first made during any Extended Reporting Period we provide under **SECTION VI - EXTENDED REPORTING PERIODS**, during such Extended Reporting Period.

As a condition precedent for coverage under this insurance, notice of a "claim" must include the detailed information required in paragraphs **4.a.(1), (2)** and **(3)** above; and

**(3)** You and any other involved insured must:

**(a)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "claim";

**(b)** Authorize us to obtain records and other information;

**(c)** Cooperate with us in the investigation, settlement or defense of the "claim"; and

**(d)** Assist us, upon our request, in the enforcement of any right against any person or organization, which may be liable to the insured because of injury or damage to which this insurance may also apply.

**c.** No insureds will, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense without our consent, other than those specific payments authorized under paragraph **2.f.** of **Defense of Claims, Administrative Hearings & Settlement Authority,** in **SECTION I - COVERAGE.**

**5. Examination of Your Books and Records**

We may examine and audit your books and records as they relate to this insurance at any time during the policy period and up to three years thereafter.

**6. Inspections and Surveys**

We have the right but are not obligated to:

**a.** Make inspections and surveys at any time;

**b.** Give you reports on the employment conditions we find; and

**c.** Recommend procedures, guidelines and changes.

Any inspections, surveys, reports or recommendations relate only to insurability and the premiums to be charged. We do not undertake to perform the duty of any person or organization to provide for the health or safety of, or lawful practices towards your workers or the public. We do not warrant that conditions:

**(1)** Are safe or healthful; or

**(2)** Comply with laws, regulations, codes or standards as they relate to the purpose of this or any other insurance.

This condition applies not only to us, but also to any rating, advisory, rate service or similar organization, which makes insurance inspections, surveys, reports or recommendations on our behalf.

**7. Legal Action Against Us**

No person or organization has a right under this Coverage:

**a.** To join us as a party or otherwise bring us into a "claim" seeking "damages" from any insured; or

**b.** To sue us on this Coverage unless all of its terms have been fully complied with.

Any person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured obtained after an actual trial, but we will not be liable for "damages" that are not payable under the terms of this Coverage or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**8. Other Insurance**

If other valid and collectible insurance is available to the insured for "damages" or "defense expense" we cover under this Coverage Form our obligations are limited as follows:

**a.** As this insurance is primary insurance, other than when **b.** below applies, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in **c.** below.

Includes copyrighted material of Insurance Services, Inc. with its permission.

**b.** If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach, each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**c.** Insurance provided under any **Supplemental Extended Reporting Period Endorsement** is excess over any of the other insurance, whether primary, excess, contingent or on any other basis, whose policy period begins or continues after the **Supplemental Extended Reporting Period** begins.

**9. Payment of Premiums and Deductibles Amounts**

**a.** We will compute all premiums for this insurance in accordance with our rules and rates; and

**b.** The first Named Insured shown in the Declarations is responsible for the payment of all premiums and deductibles due and will be the payee for any return premiums we pay.

**10. Representations**

By accepting this Coverage you agree that:

**a.** The statements in the Schedule above are accurate and complete; and

**b.** Those statements are based upon representations you made to us.

**11. Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage to the first Named Insured, this insurance applies:

**a.** As if each Named Insured were the only Named Insured; and

**b.** Separately to each insured against whom "claim" is made.

**12. Sole Agent**

The first Named Insured is authorized to act on behalf of all insureds as respects to requesting any Extended Reporting Period and agreeing to any changes in this Coverage.

**13. Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this insurance, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will sue those responsible or transfer those rights to us and help us enforce them.

**14. Transfer of Your Rights and Duties Under This Coverage**

Your rights and duties under this Coverage may not be transferred without our written consent.

**15. When We Do Not Renew**

**a.** We may elect not to renew this policy by mailing notice of nonrenewal to the first Named Insured at the last mailing address known to us at least 45 days before the expiration date of this policy.

**b.** We will send notice of nonrenewal to the first Named Insured by certificate of mail or by commercial mail delivery service. We will maintain proof of mailing in a form authorized or accepted by the United States Postal Service or by other commercial mail delivery service when such service is used. Proof of mailing will be sufficient proof of notice.

**c.** When we elect not to renew a policy that has been in effect for more than 45 days for a reason other than nonpayment of premium, we will provide a written statement of the actual reason for the refusal to renew. You may request additional information within 30 days from the date of our notice.

**d.** If we offer to renew at least 45 days before the renewal date and you fail to make the required premium payment by the renewal date, the policy will terminate on the renewal date for nonpayment of premium.

**SECTION VI - EXTENDED REPORTING PERIODS**

**1.** We will provide Extended Reporting Periods, as described below, if:

**a.** This Coverage is cancelled or not renewed for any reason other than due to:

**(1)** Nonpayment of premium

**(2)** Failure to comply with terms or conditions of the policy; or

**(3)** Fraud

**b.** This coverage is renewed with insurance that does not apply on a claims-made basis;

**c.** This coverage is modified so that it has a Retroactive Date later than the date shown in the Schedule above; or

**d.** We renew or replace this coverage with insurance that has a reduction in coverage other than:

    **(1)** A reduction in limits; or

    **(2)** An increase in deductible amount.

When we provide Extended Reporting Periods as provided under Paragraph **1.d.** above, coverage shall apply only to the portion of coverage that has been reduced.

**2.** Extended Reporting Periods are an extension of time allowed to report "claims" and do not extend the policy period or change the scope of coverage provided.

They apply only to "claims" as the result of "employment practices" committed after the Retroactive Date, if any, shown in the Schedule above and prior to the termination of the coverage.

Once in effect, Extended Reporting Periods may not be cancelled.

**3.** When the Supplemental Extended Reporting Period is in effect, we will provide a Supplemental Extended Reporting Period Limit of Insurance for any "claim" first made during the Supplemental Extended Reporting Period.

The Supplemental Extended Reporting Period Limit of Insurance will be equal to the unimpaired dollar amount shown in the Schedule above under the Annual Aggregate Limit of Insurance.

**4.** A Basic Extended Reporting Period is automatically provided without additional charge. This period starts with the end of the policy period and lasts for sixty-days with respect to "claims" arising from "employment practices" not previously reported to us.

The Basic Extended Reporting Period does not apply to "claims" that are covered under any subsequent insurance you purchase, or that would be covered but for exhaustion of the amount of insurance applicable to such claims.

**5.** A Supplemental Extended Reporting Period of either twelve (12), twenty-four (24) or thirty-six (36) months duration is available, but only by endorsement and for an extra charge. This supplemental period starts when the Basic Extended Reporting Period set forth in paragraph **4.b.** above ends. You must give us a written request for the endorsement, and its length, within 30 days after the end of the policy period. The Supplemental Extended Reporting Period will not go into effect unless you pay the additional premium when due. We will determine the additional premium in accordance with our rules and rates. In doing so we may take into account the following:

**a.** The exposures insured;

**b.** Previous types and amounts of insurance;

**c.** Limits of Insurance available under this Coverage for future payment of "damages" or "defense expense"; and

**d.** Other related factors.

The additional premium will not exceed 200% of the annual premium for this Coverage.

**6.** Coverage provided by a Supplemental Extended Reporting Period shall apply excess over any other valid and collectible insurance available under policies in force after the Supplemental Extended Reporting Period begins.

**SECTION VII - DEFINITIONS**

**1.** **"Bodily injury"** means physical injury to the body, sickness or disease sustained by a person as the result of direct physical injury to the body, including death resulting from any of these at any time. "Bodily injury" does not include mental anguish that results from an "employment practice".

**2.** **"Claim"** means written or oral notice presented by:

**a.** Any "employee," "leased worker," "temporary worker," former "employee" or applicant for employment by you; or

**b.** The EEOC or any other federal, state or local administrative or regulatory agency on behalf of a person described in paragraph **2.a.** above;

alleging that the insured is responsible for "damages" as a result of injury arising out of any "employment practices".

"Claim" includes any civil proceeding in which either "damages" are alleged or fact finding will take place, when either is the result of any "employment practice" to which this insurance applies. This includes:

    **(1)** An arbitration proceeding in which such "damages" are claimed and to which the insured submits with our consent;

    **(2)** Any other alternative dispute resolution proceeding in which such "damages" are claimed and to which the insured submits with our consent; or

    **(3)** Any administrative proceedings as established under federal, state or local laws applicable to "employment practices" covered under this insurance.

3.  **"Coverage territory"** means:

    a.  The United States of America (including its territories and possessions) and Puerto Rico; or

    b.  Anywhere in the world with respect to the activities of a person whose place of employment is in the territory described in paragraph **3.a.** above, while he or she is away for a short time on your business, provided that the insured's responsibility to pay "damages" is determined in a suit on the merits (or any type of civil proceeding described under the definition of "claim") in and under the substantive law of the United

4.  **"Damages"** means monetary amounts to which this insurance applies and which the insured is legally obligated to pay as judgments or awards, or as settlements to which we have agreed in writing.

    "Damages" include:

    a.  "Pre-judgment interest" awarded against the insured on that part of the judgment we pay;

    b.  Any portion of a judgment or award, to the extent allowed by law, that represents a multiple of the compensatory amounts, punitive or exemplary damages; and

    c.  Statutory attorney fees.

        "Damages" do not include:

        (1)  Civil, criminal, administrative or other fines or penalties;

        (2)  Equitable relief, injunctive relief, declarative relief or any other relief or recovery other than money; or

        (3)  Judgments or awards because of acts deemed uninsurable by law.

5.  **"Defense expense"** means payments allocated to a specific "claim" for its investigation, settlement, or defense, including:

    a.  Attorney fees and all other litigation expenses.

    b.  The cost of bonds to appeal a judgment or award in any "claim" we defend. We do not have to furnish these bonds.

    c.  The cost of bonds to release attachments, but only for bond amounts within the Amount of Insurance available. We do not have to furnish these bonds.

    d.  Reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of any "claim", including actual loss of earnings up to $250 a day because of time off from work.

    e.  All court costs taxed against the insured in the "claim".  However, these payments do not include attorney's fees or attorney's expenses taxed against the insured.

    "Defense expense" does not include:

    (1)  Salaries and expenses of our employees or your "employees", other than:

        (a)  That portion of our employed attorneys' fees, salaries and expenses allocated to a specific "claim" for the defense of the insured; or

        (b)  The expenses described in paragraph **d.** above; or

    (2)  Interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the amount available for the judgment under the provisions of **SECTION III - LIMITS OF INSURANCE**.

6.  **"Employee"** means:

    a.  A person employed by you for wages or salary;

    b.  A person who is a current or former member of your board of directors; or

    c.  A "temporary worker".

    However, "employee" does not include any:

    (1)  Independent contractor;

    (2)  Any employees of any independent contractor while acting within the scope of their employment; or

    (3)  Any "leased worker".

7.  **"Employment Practices"** means any remedy which is sought by any of your:

    a.  "Employees";

    b.  "Leased workers";

    c.  Former "employees"; or

    d.  Applicants for employment by you, under any civil employment law whether federal, state or local and whether arising out of statutory or common law, because of any of the following actual or alleged practices:

        (1)  Wrongful refusal to employ a qualified applicant for employment;

        (2)  Wrongful failure to promote;

        (3)  Wrongful deprivation of career opportunity;

        (4)  Wrongful demotion, evaluation, reassignment or discipline;

**(5)** Wrongful termination of employment, including constructive discharge;

**(6)** Employment related misrepresentation;

**(7)** Harassment, coercion, discrimination or humiliation as a consequence of race, color, creed, national origin, marital status, medical condition, gender, age, physical appearance, physical and/or mental impairments, pregnancy, sexual orientation or sexual preference or any other protected class or characteristic established by any applicable federal, state or local statute; or

**(8)** Oral or written publication of material that:

   **(a)** Slanders;

   **(b)** Defames or libels; or

   **(c)** Violates or invades a right of privacy.

**8.** **"Interrelated"** means having as a common nexus any fact, circumstance, situation, event, transaction, cause or series of related facts, circumstances, situations, events, transactions or causes.

**9.** **"Leased worker"** means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

**10.** **"Pre-judgment interest"** means interest added to a settlement, verdict, award or judgment based on the amount of time prior to the settlement, verdict, award or judgment, whether or not made part of the settlement, verdict, award or judgment.

**11.** **"Temporary worker"** means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

**EMPLOYMENT PRACTICES LIABILITY INSURANCE**
**B45 EP 2000 12 15**



## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# EMPLOYMENT PRACTICES LIABILITY INSURANCE AMENDMENT - VIRGINIA

This endorsement modifies insurance provided under the following:

EMPLOYMENT PRACTICES LIABILITY INSURANCE COVERAGE FORM - VIRGINIA

**SECTION V – CONDITIONS**

**1.** Paragraph **2.c**. under **Cancellation** is deleted and replaced by the following:

**c.** We will mail or deliver written notice to the First Named Insured's last mailing address known to us. If notice is mailed, it will be sent in accordance with Virginia Law.

**2.** Paragraph **15.b**. under **When We Do Not Renew** is deleted and replaced by the following:

**b.** We will mail or deliver written notice of nonrenewal to the First Named Insured's last mailing address known to us. If notice is mailed, it will be sent in accordance with Virginia Law.

If notice is mailed, proof of mailing will be sufficient proof of notice.

All other provisions of this policy apply.

B45 CY 1225 01 17



**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CYBER LIABILITY – VIRGINIA CHANGES

This Endorsement modifies insurance provided under the following:

**CYBER LIABILITY INSURANCE ENDORSEMENT**

**SECTION VI – EXTENDED REPORTING PERIOD**, paragraph **B.5.**, is deleted in its entirety and replaced with the following:

**5.** The Supplemental Extended Reporting Period will not take effect unless the additional premium for it is paid when due. Once in effect, the entire premium for the Supplemental Extended Reporting Period will be deemed fully earned, and if **you** terminate the Supplemental Extended Reporting Period for any reason, we will not be liable to return any portion of the premium to **you**. We cannot cancel the Supplemental Extended Reporting Period unless cancellation is for non-payment of premium or fraud.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS OF THE CYBER LIABILITY INSURANCE ENDORSEMENT AND YOUR POLICY REMAIN THE SAME



# CYBER LIABILITY INSURANCE ENDORSEMENT
### (Claims-Made and Reported Coverage)

**SCHEDULE**

| | |
|---|---|
| Each "Claim" Limit: | $100,000 |
| Annual Aggregate Limit: | $100,000 |
| Endorsement Effective Date: | |
| Retroactive Date: | 05/08/2017 |

This Endorsement ("Endorsement") amends **your** policy to provide Cyber Liability insurance on a Claims-Made and Reported basis. Read the entire Endorsement carefully to determine **your** rights and duties and what is and is not covered. The terms, conditions, exclusions, and limits of insurance set forth in this Endorsement apply only to the coverage provided by this Endorsement.

All words and phrases in this Endorsement that appear in bold print have the meanings set forth in Section V of this Endorsement.  To the extent any words or phrases used in this Endorsement are also defined elsewhere in the Policy, such definitions do not apply to the words or phrases used in this Endorsement.

The Cyber Liability limits of insurance are specified in the Schedule shown above. Such limits of insurance are in addition to, and will not erode, the limits of insurance provided elsewhere under **your** Policy.  **Defense costs** paid under this Endorsement will erode the limits set forth in the Schedule.

## SECTION I – COVERAGE AGREEMENTS

### A.  MULTIMEDIA LIABILITY COVERAGE

Subject to the limits shown in the Schedule, the Company will pay **damages**, including liability **assumed under contract**, which an **insured** becomes legally obligated to pay, and related **defense costs**, because of a **claim** for a **multimedia peril**, provided that:

1.  Such **claim** is first made against the **insured** during the **endorsement period**;
2.  Such **claim** is reported to the Company no later than sixty (60) days after the **claim** is first made against the **insured**; and
3.  The **multimedia peril** takes place or first commences on or after the **retroactive date**.

### B.  SECURITY AND PRIVACY LIABILITY COVERAGE

Subject to the limits shown in the Schedule, the Company will pay **damages**, including liability **assumed under contract**, which an **insured** becomes legally obligated to pay, and related **defense costs**, because of a **claim** for a **security and privacy wrongful act**, provided that:

1.  Such **claim** is first made against the **insured** during the **endorsement period**;
2.  Such **claim** is reported to the Company no later than sixty (60) days after the **claim** is first made against the **insured**; and
3.  The **security and privacy wrongful act** takes place or first commences on or after the **retroactive date**.

### C.  PRIVACY REGULATORY DEFENSE AND PENALTIES COVERAGE

Subject to the limits shown in the Schedule, the Company will pay **regulatory fines and penalties** and **regulatory compensatory awards** which an **insured** becomes legally obligated to pay, and related **defense costs**, because of a **claim** for a **security breach** or **privacy breach**, provided that:

1.  Such **claim** is first made against the **insured** during the **endorsement period**;
2.  Such **claim** is reported to the Company no later than sixty (60) days after the **claim** is first made against the **insured**; and
3.  The **security breach** or **privacy breach** takes place or first commences on or after the **retroactive date**.

**D.  PCI DSS ASSESSMENT COVERAGE**

Subject to the limits shown in the Schedule, the Company will pay **PCI DSS assessments** which an **insured** becomes legally obligated to pay, and related **defense costs**, because of a **claim** for a **security breach** or **privacy breach**, provided that:

**1.**  Such **claim** is first made against the **insured** during the **endorsement period**;

**2.**  Such **claim** is reported to the Company no later than sixty (60) days after the **claim** is first made against the **insured**; and

**3.**  The **security breach** or **privacy breach** takes places or first commences on or after the **retroactive date**.

**E.  PRIVACY BREACH RESPONSE COSTS, NOTIFICATION EXPENSES, AND BREACH SUPPORT AND CREDIT MONITORING EXPENSES COVERAGE**

Subject to the limits shown in the Schedule, the Company will pay reasonable and necessary **privacy breach response costs**, **notification expenses**, and **breach support and credit monitoring expenses** which **you** incur as a direct result of an **adverse media report**, **security breach** or **privacy breach**, provided that:

**1.**  The **adverse media report**, **security breach** or **privacy breach** takes place or first commences on or after the **retroactive date**;

**2.**  An **insured** first discovers the **adverse media report**, **security breach** or **privacy breach** during the **endorsement period**; and

**3.**  **You** report the **adverse media report**, **security breach** or **privacy breach** to the Company no later than sixty (60) days from the date an **insured** first discovers the **adverse media report**, **security breach** or **privacy breach**.

**F.  NETWORK ASSET PROTECTION COVERAGE**

**1.**  <u>Data Recovery</u>

Subject to the limits shown in the Schedule, the Company agrees to pay **digital assets loss** and **special expenses** which **you** incur as a direct result of a **covered cause of loss** that causes damage, alteration, corruption, distortion, theft, misuse or destruction of **your digital assets**, provided that:

**a.**  The **covered cause of loss** takes place or first commences on or after the **retroactive date**;

**b.**  An **insured** first discovers the **covered cause of loss** during the **endorsement period**;

**c.**  **You** report the **covered cause of loss** to the Company no later than sixty (60) days from the date an **insured** first discovers the **covered cause of loss**; and

**d.**  **You** provide clear evidence that the **digital assets loss** and **special expenses** directly resulted from the **covered cause of loss**.

The Company will pay **digital assets loss** and **special expenses** for a period of up to twelve (12) months following the discovery of the damage to, or alteration, corruption, distortion, theft, misuse or destruction of, **your digital assets**.

**2.**  **Non-Physical Business Interruption and Extra Expense**

Subject to the limits shown in the Schedule, the Company agrees to pay **income loss**, **interruption expenses** and **special expenses** which **you** incur during the **period of restoration**, but after the **waiting period**, as a direct result of a **covered cause of loss** that causes a total or partial interruption, degradation in service or failure of an **insured computer system**, provided that:

**a.**  The **covered cause of loss** takes place or first commences on or after the **retroactive date**;

**b.**  An **insured** first discovers the **covered cause of loss** during the **endorsement period**;

**c.**  **You** report the **covered cause of loss** to the Company no later than sixty (60) days from the date an **insured** first discovers the **covered cause of loss**; and

**d.**  **You** provide clear evidence that the **digital assets loss** and **special expenses** directly resulted from the **covered cause of loss**.

**G.  CYBER EXTORTION COVERAGE**

Subject to the limits shown in the Schedule, the Company agrees to pay **cyber extortion expenses** and

**cyber extortion monies** which **you** incur as a direct result of a **cyber extortion threat**, provided that:

1. Such **cyber extortion threat** is first made against an **insured** during the **endorsement period**;
2. **You** report the **cyber extortion threat** to the Company no later than sixty (60) days from the date the **cyber extortion threat** is made against an **insured**; and
3. **You** provide clear evidence that the **cyber extortion expenses** and **cyber extortion monies** directly resulted from the **cyber extortion threat**.

The **insured** shall not incur **cyber extortion expenses** or **cyber extortion monies** without the Company's prior consultation and written authorization. **You** must make every reasonable effort to notify local law enforcement authorities and the Federal Bureau of Investigation or any similar equivalent foreign agency before surrendering any **cyber extortion monies** in response to a **cyber extortion threat**.

**H. CYBER TERRORISM COVERAGE**

Subject to the limits shown in the Schedule, the Company agrees to pay **income loss**, **interruption expenses** and **special expenses** which **you** incur during the **period of restoration**, but after the **waiting period**, as a direct result of an **act of cyber terrorism** that causes a total or partial interruption, degradation in service or failure of an **insured computer system**, provided that:

1. The **act of cyber terrorism** takes place or first commences on or after the **retroactive date**;
2. An **insured** first discovers the **act of cyber terrorism** during the **endorsement period**;
3. **You** report the **act of cyber terrorism** to the Company no later than sixty (60) days from the date an **insured** first discovers the **act of cyber terrorism**; and
4. **You** provide clear evidence that the **income loss**, **interruption expenses** and **special expenses** directly resulted from the **act of cyber terrorism**.

**I. BRANDGUARD COVERAGE**

Subject to the limits shown in the Schedule, the Company will reimburse **you** for provable and ascertainable **brand loss** which **you** sustain during the **period of indemnity**, but after the **waiting period**, as a direct result of an **adverse media report** or **notification**, provided that:

1. The **adverse media report** or **notification** results from a **privacy breach** or **security breach** that takes place or first commences on or after the **retroactive date**;
2. **You** discover the **brand loss** during the **endorsement period**;
3. **You** report the **brand loss** to the Company no later than sixty (60) days from the date **you** first discover the **brand loss**; and
4. **You** provide clear evidence that the **brand loss** directly resulted from the **adverse media report** or **notification**.

# SECTION II – EXCLUSIONS

The insurance provided under this Endorsement does not apply to:

**A.** Any **claim** based upon, arising out of, resulting from, in consequence of, or in any way involving any **multimedia peril**, **security and privacy wrongful act**, **security breach**, **privacy breach**, **adverse media report**, **covered cause of loss**, **cyber extortion threat**, or **act of cyber terrorism**:

1. Which was the subject of written notice given to us or to any other insurer prior to the original inception date of this Cyber Liability coverage;
2. Which was the subject of any prior or pending written demand made against an **insured**, or a civil, administrative or arbitration proceeding commenced against an **insured**, prior to the original inception date of this Cyber Liability coverage, or that involved the same or substantially the same fact, circumstance, or situation underlying or alleged in such prior demand or proceeding;
3. That was identified in any summary or statement of **claims** or potential **claims** submitted in connection with **your** application for insurance; or
4. Which an **insured** had knowledge of prior to the original inception date of this Cyber Liability coverage.

**B.** Any **claim** based upon, arising out of, resulting from, in consequence of, or in any way involving any actual, alleged or threatened discharge, dispersal, release or escape of pollutants, or any direction, request or voluntary decision to test for, abate, monitor, clean up, remove, contain, treat, detoxify or neutralize pollutants, nuclear material or nuclear waste. For purposes of this exclusion, "pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including mold, smoke, vapor, soot, fumes, acids, alkalis, chemicals, odors, noise, lead, oil or oil products, radiation, asbestos or asbestos-containing products and waste, and any electric, magnetic or electromagnetic field of any frequency. "Waste" includes, but is not limited to, material that is, or is to be, recycled, reconditioned or reclaimed.

**C.** Any **claim** for liability assumed by an **insured** under any oral or written contract or agreement, except where such liability would apply apart from such contract or agreement and is otherwise covered by this Endorsement. With respect to any **multimedia peril**, **security breach** or **privacy breach**, this exclusion does not apply to any **claim** alleging liability **assumed under contract**.

**D.** Any **claim** for breach of any express, implied, actual or constructive contract, warranty, guarantee, or promise, except where such liability would apply apart from such contract, warranty, guarantee or promise and is otherwise covered by this Endorsement.  This exclusion does not apply to any **claim** alleging breach of **your** privacy policy or liability **assumed by contract**.

**E.** Any business, joint venture or enterprise, which is not named on the Declarations or by endorsement to the Policy.

**F.** Any **claim** for violation of the False Claims Act or any similar federal or state law, rule, or regulation concerning billing errors or fraudulent billing practices or abuse.

**G.** Any **claim** for infringement of any patent or the misappropriation, theft, copying, display, or publication of any trade secret.

**H.** Any **claim** for unfair competition, price fixing, deceptive trade practices, restraint of trade, or violation of any anti-trust laws.

**I.** Any **claim** based upon, arising out of, resulting from, in consequence of, or in any way involving:
  **1.** Any employment or employment-related matters, including, but not limited to, employer-employee relations, policies, acts or omissions;
  **2.** Any actual or alleged refusal to employ any person or any other actual or alleged misconduct with respect to employees; or
  **3.** Any actual or alleged obligations of an **insured** under any workers' compensation, unemployment insurance, social security, disability benefits or other similar law.

  This exclusion does not apply to an otherwise covered **claim** under Coverage Agreement B, which is brought by **your** past, present or future employee alleging a **security and privacy wrongful act**.

**J.** Any claim for bodily injury or property damage.

**K.** Any **claim** for harassment or discrimination because of, or relating to, race, creed, color, age, sex, sexual orientation or preference, national origin, religion, handicap, disability, political affiliation, marital status, or any other basis prohibited by federal, state or local law.

**L.** Any **claim** based upon, arising out of, resulting from, in consequence of, or in any way involving:
  **1.** Satellite failures;
  **2.** Electrical or mechanical failure or interruption including, but not limited to, electrical disturbance, spike, brownout, or blackout;
  **3.** Outages to gas, water, telephone, cable, telecommunications or other infrastructure, unless such infrastructure is under **your** direct operational control and such **claim** is otherwise covered under Coverage Agreement F or Coverage Agreement H;
  **4.** The failure of overhead transmission and distribution lines; or
  **5.** The gradual deterioration of subterranean insulation.

**M.** Any **claim** for violation of any of United States of America's economic or trade sanctions, including, but not limited to, sanctions administered and enforced by the U.S. Treasury Department's Office of Foreign Assets Control ("OFAC").

**N.** Any **criminal proceeding**.

**O.** Any **claim** based upon, arising out of, resulting from, in consequence of, or in any way involving any of the following, if committed by an **insured**, whether acting alone or in collusion with other persons:
  **1.** Any willful, deliberately dishonest, malicious, or fraudulent act or omission;
  **2.** Any intentional violation of the law or **your** privacy policy; or
  **3.** The gaining in fact of any profit, remuneration or financial advantage to which an **insured** was not legally entitled.

Notwithstanding the foregoing, the insurance afforded by this Endorsement will apply to **defense costs** incurred in defending any such **claim** until such time as there is a judgment or other final adjudication adverse to the **insured** establishing such willful, dishonest, fraudulent, or malicious conduct. The Company will have the right to recover **defense costs** incurred in defending such **claim** from those parties found to have committed the conduct described in this exclusion.

This exclusion does not apply to:
  **1.** Any **insured** that did not commit, participate in, or have knowledge of any conduct described in this exclusion; or
  **2.** A **claim** resulting from sabotage by **your** employee.

**P.** Any **claim** based upon, arising out of, resulting from, in consequence of, or in any way involving:
  **1.** Any actual or alleged **multimedia peril**, **security and privacy wrongful act**, **security breach**, **privacy breach**, **covered cause of loss**, **cyber extortion threat**, **act of cyber terrorism**, or **adverse media report** that took place or first commenced prior to the **retroactive date**; or
  **2.** Any actual or alleged **multimedia peril, security and privacy wrongful act, security breach, privacy breach, covered cause of loss, cyber extortion threat, act of cyber terrorism**, or **adverse media report** that took place on or after the **retroactive date**, which, together with an actual or alleged **multimedia peril**, **security and privacy wrongful act**, **security breach**, **privacy breach**, **covered cause of loss**, **cyber extortion threat**, **act of cyber terrorism**, or **adverse media report** that took place prior to the **retroactive date**, would constitute related **multimedia perils**, **security and privacy wrongful acts**, **security breaches**, **privacy breaches**, **covered causes of loss**, **cyber extortion threats**, **acts of cyber terrorism**, or **adverse media reports**.

For purposes of this exclusion, **multimedia perils**, **security and privacy wrongful acts**, **security breaches**, **privacy breaches**, **covered causes of loss**, **cyber extortion threats**, **acts of cyber terrorism** or **adverse media reports** will be deemed related if we determine that they are logically or causally connected by any common fact, circumstance, situation, event, transaction or series of facts, circumstances, situations, events or transactions.

**Q.** Any claim based upon, arising out of, resulting from, in consequence of, or in any way involving any conduct, act, error or omission of any individual serving in any capacity other than as **your** officer, director, partner, stockholder, trustee or employee.

**R.** Any **claim** based upon, arising out of, resulting from, in consequence of, or in any way involving an **insured's** insolvency or bankruptcy, the insolvency or bankruptcy of any other individual or entity, or the failure, inability or unwillingness to make payments because of the insolvency, liquidation, or bankruptcy of any individual or entity.

**S.** Any **claim** based upon, arising out of, resulting from, in consequence of, or in any way involving the wear and tear, drop in performance, progressive deterioration, or aging of **your** electronic equipment or **computer hardware**.

**T.** Any **claim** based upon, arising out of, resulting from, in consequence of, or in any way involving fire, smoke, explosion, lightning, wind, water, flood, earthquake, volcanic eruption, tidal wave, landslide, hail, force majeure or any other physical event, however caused.

**U.** Any **claim** based upon, arising out of, resulting from, in consequence of, or in any way involving the gradual deterioration or wear and tear of an **insured computer system**.

**V.** Any **claim** based upon, arising out of, resulting from, in consequence of, or in any way involving the actual or alleged inaccurate, inadequate or incomplete description of the price of goods, products or services.

**W.** Any **claim** based upon, arising out of, resulting from, in consequence of, or in any way involving cost guarantees, cost representations, contract price or cost estimates being exceeded.

**X.** Any **claim** brought by or on behalf of:

    **1.** An **insured** against another **insured**;

    **2.** Any entity, which is owned, in whole or in part, by an **insured**, or any entity directly or indirectly controlled, operated or managed by an **insured**;

    **3.** Any entity which is a parent, affiliate or subsidiary of any business, organization or joint venture in which an **insured** is a partner; or

    **4.** Any individual or entity who is a partner of any business, organization or joint venture in which an **insured** is also a partner.

This exclusion does not apply to an otherwise covered **claim** under Coverage Agreement B, which is brought by **your** past, present or future employee alleging a **security and privacy wrongful act**.

**Y.** Any **claim** based upon, arising out of, resulting from, in consequence of, or in any way involving unauthorized trading. For purposes of this exclusion, "unauthorized trading" means trading, which at the time of the trade is:

    **1.** In excess of permitted financial limits; or

    **2.** Outside of permitted product lines.

**Z.** Any **claim** based upon, arising out of, resulting from, in consequence of, or in any way involving:

    **1.** The actual or alleged purchase or sale of securities, or an offer, or solicitation of an offer, to purchase or sell securities;

    **2.** The actual or alleged loss of value of any securities; or

    **3.** Any actual or alleged violation of any securities law such as the provisions of the Securities Act of 1933, the Securities Exchange Act of 1934, the Sarbanes-Oxley Act of 2002 or any regulation promulgated under the foregoing statutes, or any federal, state, local, or foreign laws similar to the foregoing statutes, including "Blue Sky" laws, whether such law is statutory, regulatory or common law.

**AA.** Any **claim** for violation of the Organized Crime Control Act of 1970 (commonly known as 'Racketeer Influenced And Corrupt Organizations Act' or 'RICO'), as amended, or any regulation promulgated under the foregoing statutes, or any similar federal, state, local or foreign laws, whether such law is statutory, regulatory or common law.

**BB.** Any **claim** which is brought by the Federal Trade Commission, the Federal Communications Commission or any other federal, state or local governmental entity, in such entity's regulatory or official capacity. This exclusion does not apply to an otherwise covered **claim** under Coverage Agreement C.

**CC.** Any **claim** alleging:

    **1.** The violation of any pension, healthcare, welfare, profit sharing or mutual or investment plans, funds or trusts; or

    **2.** The violation of any provision of the Employee Retirement Income Security Act of 1974 and its amendments and/or the Pension Protection Act of 2006 and its amendments, or any regulation, ruling or order issued pursuant thereto.

**DD.** Any **claim** based upon, arising out of, resulting from, in consequence of, or in any way involving:

    **1.** Strikes or similar labor actions, war, invasion, act of foreign enemy, hostilities or warlike operations (whether declared or not), civil war, mutiny, civil commotion assuming the proportions of, or

amounting to, a popular uprising, military uprising, insurrection, rebellion, revolution, military or usurped power, or any action taken to hinder or defend against these actions;

2.  The confiscation, commandeering, nationalization, requisition or destruction of, or damage to, property, including **computer hardware**, by or under the order of any government or public authority for whatever reason; or

3.  Any action taken in controlling, preventing, suppressing or in any way relating to **DD.1.** or **DD.2.** above.

This exclusion does not apply to an **act of cyber terrorism**.

**EE.** Any **claim** based upon, arising out of, resulting from, in consequence of, or in any way involving **your** commercial decision to cease providing a particular product or service, but only if **you** are contractually obligated to continue providing such products or services.

**FF.** Any **claim** based upon, arising out of, resulting from, in consequence of, or in any way involving:

1.  Gambling or pornography;

2.  Prizes, awards or coupons; or

3.  The sale or provision of prohibited, restricted or regulated items such as alcoholic beverages, tobacco or drugs.

**GG.** Any **claim** based upon, arising out of, resulting from, in consequence of, or in any way involving the use of programs that are not **operational programs** or **delivered programs**.

**HH.** Any **claim** based upon, arising out of, resulting from, in consequence of, or in any way involving an **insured's** intentional use of illegal or unlicensed programs.

**II.** Any **claim** based upon, arising out of, resulting from, in consequence of, or in any way involving the existence, emission or discharge of any electromagnetic field, electromagnetic radiation or electromagnetism that affects the health, safety or condition of any person or the environment or that affects the value, marketability, condition or use of any property.

**JJ.** Any claim based upon, arising out of, resulting from, in consequence of, or in any way involving any violation of the Telephone Consumer Protection Act (47 U.S.C.§227), the Telemarketing and Consumer Fraud and Abuse Prevention Act (15 U.S.C. §§ 6101-6108), or the CAN-SPAM Act (15 U.S.C. §§ 7701-7713), as amended, or any regulations promulgated thereunder, or any similar federal, state, local or foreign laws, whether such laws are statutory, regulatory or common law, including any anti-spam law or other law concerning the use of telephonic or electronic communications for solicitation purposes, or any allegations of invasion or violation of any rights to privacy derived therefrom. This exclusion does not apply to an otherwise covered **claim** under Coverage Agreement B or Coverage Agreement C alleging a violation of the CAN-SPAM Act as amended, or any regulations promulgated thereunder, or any similar federal, state, local or foreign law, whether such law is statutory, regulatory or common law, but only if such violation arises out of a **security breach**.

**KK.** Any **claim** based upon, arising out of, resulting from, in consequence of, or in any way involving:

1.  Any violation of the **PCI Data Security Standard** or any payment card company rules; or

2.  The failure to implement, maintain or comply with any security measures or standards related to payment card **data**, including any fine or penalty imposed by a payment card company on a merchant bank or payment processor that **you** have paid or agreed to reimburse or indemnify.

This exclusion does not apply to an otherwise covered **claim** under Coverage Agreement D.

**LL.** With respect to Coverage Agreement F.1:

1.  Any amount incurred in restoring, updating or replacing **digital assets** to a level beyond that which existed prior to the **covered cause of loss**;

2.  Physical damage to the **computer hardware** or **data** center, other than accidental physical damage or destruction of **electronic media** so that stored **digital assets** are no longer machine-readable;

3.  Contractual penalties or consequential damages;

4. Any liability to third parties for whatever reason, including legal costs and expenses of any type;
5. Fines or penalties imposed by law;
6. The economic or market value of **digital assets**;
7. Costs or expenses incurred to identify, patch or remediate software program errors or **computer system** vulnerabilities;
8. Costs to upgrade, redesign, reconfigure or maintain an **insured computer system** to a level of functionality beyond that which existed prior to the **covered cause of loss**; or
9. Any losses paid under Coverage Agreement F.2.).

**MM.** With respect to Coverage Agreement F.2.):
1. Any loss arising out of updating or replacing **digital assets** to a level beyond that which existed prior to the **covered cause of loss**;
2. Contractual penalties or consequential damages;
3. Any liability to third parties for whatever reason, including legal costs and expenses of any type;
4. Fines or penalties imposed by law;
5. Costs or expenses incurred to identify, patch or remediate software program errors or **computer system** vulnerabilities;
6. Loss of goodwill and reputational harm;
7. Costs to upgrade, redesign, reconfigure or maintain an **insured computer system** to a level of functionality beyond that which existed prior to the **covered cause of loss**; or
8. Any losses paid under Coverage Agreement F.1..

**NN.** With respect to Coverage Agreement I:
1. Any amounts incurred by **you** in an effort to re-establish **your reputation**, including **public relations expenses**;
2. Any amounts incurred in any **claim** that is insured by any other insurance, except excess insurance;
3. Any amounts incurred in connection with an **adverse media report** that also affects or refers in similar terms to a general security issue, an industry or **your** specific competitors without any specific allegations regarding a **privacy breach** or **security breach** by an **insured**, a **BPO service provider**, an **outsourced IT service provider**, or by others acting on **your** behalf and for whom **you** are legally responsible;
4. Any civil or regulatory liability to third parties for whatever reason, including legal costs and expenses of any type;
5. Contractual penalties or consequential damages;
6. **Privacy breach response costs**, **notification expenses** or **breach support and credit monitoring expenses** paid under Coverage Agreement E; or
7. Fines or penalties imposed by law or regulation.

## SECTION III – LIMITS OF LIABILITY

**A.** The "Each **Claim** Limit" shown in the Schedule is the most we will pay for any one **claim**, including **defense costs** where applicable, regardless of the number of **insureds** involved or affected, or the number of individuals or entities making a **claim**.

**B.** The "Annual Aggregate Limit" shown in Schedule is the most the Company will pay for the sum of all **claims** made, and all **claims** discovered, during the **endorsement period** (or during any extended reporting period, if applicable). The "Annual Aggregate Limit" includes **defense costs**. If the "Annual Aggregate Limit" is exhausted, our obligations under this endorsement will be deemed completely fulfilled and extinguished.

**C.** All **claims**, which arise out of the same, related, or continuing acts, facts or circumstances, will be considered a single **claim** without regard to the number of **insureds**, **claims**, or persons or entities making a **claim**, and only one "Each **Claim** Limit" will apply.  Such **claim** will be deemed to have been first made on the date the earlier of the related **claims** was first made and will be deemed to have been first reported to the Company on the date the earlier of the related **claims** was first reported to the Company in writing. Appeals and any post-trial proceedings or consolidated proceedings approved by us will be considered to be part of the original

**claim**.

**SECTION IV – NOTICE PROVISIONS**

**A. NOTICE OF A CLAIM**

1. **You** must give the Company written notice of any **claim** no later than sixty (60) days:
   a. After the **claim** is first made against **you**, as a condition precedent to coverage under Coverage Agreement A, B, C or D.
   b. From the date **you** first discover the event or incident giving rise to such **claim**, as a condition precedent to coverage under Coverage Agreement E, F, G, H or I.

2. **You** must provide the Company with copies of all documentation comprising the **claim** as well as any authorization, cooperation, or assistance as the Company may require.

3. The Company will not be obligated to pay any amounts incurred prior to notice of a **claim** to the Company or amounts incurred without the Company's prior written consent.

**B. NOTICE OF A POTENTIAL CLAIM**

If, during the **endorsement period**, any **insured** first becomes aware of any facts or circumstances which could give rise to a **claim** covered under this Endorsement, and if the **insured** provides the Company with written notice during the **endorsement period** of:

1. The details regarding such facts or circumstances;
2. The nature of the loss incurred;
3. The identity of the potential claimant(s) involved;
4. The manner in which the **insured** first became aware of the facts or circumstances; and
5. The consequences which have resulted or may result,

then any **claim** subsequently made arising out of such reported facts or circumstances will be deemed to be a **claim** first made on the date notice complying with the foregoing requirements was first received by the Company.

# SECTION V – LOSS DETERMINATION

**A. LOSS OF DIGITAL ASSETS**

For any and all coverage provided under Coverage Agreement F.1., **digital assets loss** will be determined as follows:

1. If the impacted **digital asset** was purchased from a third party, the Company will pay only the lesser of the original purchase price of the **digital asset** or the reasonable and necessary **digital assets loss**.

2. If it is determined that the **digital assets** cannot be replaced, restored or recreated, then the Company will only reimburse the actual and necessary **digital assets loss** incurred up to such determination.

**B. NON-PHYSICAL BUSINESS INTERRUPTION AND EXTRA EXPENSE AND CYBER TERRORISM**

For any and all coverage provided under Coverage Agreement F.2. or Coverage Agreement H, **income loss** will be determined as the reduction of **your** income during the **period of restoration**, which is:

1. **Your** net income (net profit or loss before income taxes) that would have been reasonably projected, but which has been lost directly as a result of a total or partial interruption, degradation in service or failure of an **insured computer system** caused directly by a **covered cause of loss** or **act of cyber terrorism**, whichever applies.  The income projection will take into account the prior experience of **your** business preceding the date of the **covered cause of loss** or **act of cyber terrorism** and the probable experience had no **covered cause of loss** or **act of cyber terrorism** occurred.  Income includes the amount of money paid or payable to **you** for goods, products or services sold, delivered or rendered in the normal course of **your** business. The income projection will be reduced by the extent to which **you** use substitute methods, facilities or personnel to maintain **your** revenue stream.  The Company will take into consideration **your** documentation of the trends in **your** business and variations in, or other

circumstances affecting, **your** business before or after the **covered cause of loss** or **act of cyber terrorism**, which would have affected **your** business had no **covered cause of loss** or **act of cyber terrorism** occurred; and

2. Any fixed operating expenses (including ordinary payroll) incurred, but only to the extent that such operating expenses must continue during the **period of restoration**.

## C. BRANDGUARD

For any and all coverage provided under Coverage Agreement I, **brand loss** will be calculated by taking into account the prior experience of **your** business preceding the date of the **adverse media report** or **notification**, whichever applies, and the probable experience had no **adverse media report** been published or **notification** occurred. Income includes the amount of money paid or payable to **you** for goods, products or services sold, delivered or rendered in the normal course of **your** business. The income projection will be reduced by the extent to which **you** use substitute methods, facilities, or personnel to maintain its revenue stream. The Company will take into consideration **your** documentation of the trends in **your** business and variations in, or other circumstances affecting, **your** business before or after the **adverse media report** or **notification**, which would have affected **your** business had no **adverse media report** been published or **notification** occurred. Any fixed operating expenses (including ordinary payroll) incurred will be considered in calculating **brand loss**, but only to the extent that such operating expenses must continue during the **period of indemnity**.

# SECTION VI – EXTENDED REPORTING PERIOD

## A. AUTOMATIC EXTENDED REPORTING PERIOD

In the event of non-renewal or termination of this Policy for any reason other than non-payment of premium, the Company will provide an Automatic Extended Reporting Period of sixty (60) days during which **claims** otherwise covered by this Endorsement may be reported.  Such Automatic Extended Reporting Period will commence immediately upon termination or expiration of this Policy and will apply to:

1. A **claim** under Coverage Agreement A, B, C, or D which:
   a. Arises out of an actual or alleged **multimedia peril**, **security and privacy wrongful act**, **security breach** or **privacy breach**, whichever applies, that takes place or first commences on or after the **retroactive date**, but prior to the expiration or termination of the Policy; and
   b. Is first made against an **insured** during the **endorsement period**, but prior to the Policy termination or expiration date; and
   c. Is reported in writing to the Company during the Automatic Extended Reporting Period.

2. A **claim** under Coverage Agreement E, F, G, H, or I which:
   a. Arises out of an **adverse media report**, **security breach**, **privacy breach**, **covered cause of loss**, **cyber extortion threat** or **act of cyber terrorism**, whichever applies, that takes place or first commences on or after the **retroactive date**, but prior to the expiration or termination of the Policy; and
   b. Is reported in writing to the Company during the Automatic Extended Reporting Period.

## B. SUPPLEMENTAL EXTENDED REPORTING PERIOD

1. **You** shall have the option, upon payment of the required additional premium, to purchase a Supplemental Extended Reporting Period of 12 months, 24 months, or 36 months following the effective date of termination of coverage. The Supplemental Extended Reporting Period will extend the time during which **claims** otherwise covered by this Endorsement may be made and reported.  If the Supplemental Extended Reporting Period is purchased, the Automatic Extended Reporting Period will be included within the Supplemental Extended Reporting Period. Such Supplemental Extended Reporting Period will apply only to:
   a. A **claim** under Coverage Agreement A, B, C, or D which:
      (1) Arises out of an actual or alleged **multimedia peril**, **security and privacy wrongful act**,

security breach or **privacy breach**, whichever applies, that takes place or first commences on or after the **retroactive date**, but prior to the expiration or termination of the Policy; and

    **(2)** Is first made against an **insured** during the Supplemental Extended Reporting Period; and

    **(3)** Is reported in writing to the Company no later than 60 days after the **claim** is first made against an **insured**.

  **b.** A **claim** under Coverage Agreement E, F, G, H, or I which:

    **(1)** Arises out of an **adverse media report**, **security breach**, **privacy breach**, **covered cause of loss**, **cyber extortion threat** or **act of cyber terrorism**, whichever applies, that takes place or first commences on or after the **retroactive date**, but prior to the expiration or termination of the Policy; and

    **(2)** Is reported in writing to the Company during the Supplemental Extended Reporting Period, but no later than 60 days from the date any **insured** discovers the **adverse media report**, **security breach**, **privacy breach**, **covered cause of loss**, **cyber extortion threat**, **act of cyber terrorism** or **brand loss**, whichever applies.

**2.** The right to purchase the Supplemental Extended Reporting Period shall terminate unless written notice of such election, together with full payment of the required additional premium due, is received by us no later than sixty (60) days after the effective date of non-renewal or termination of the Policy.

**3.** The additional premium for the Supplemental Extended Reporting Period shall be a percentage of the rates for such coverage in effect on the later of the date the policy was issued or last renewed.

**4.** If **you** do not elect to purchase a Supplemental Extended Reporting Period, then coverage under this Endorsement will terminate at the end of the Automatic Extended Reporting Period. If **you** elect to purchase a Supplemental Extended Reporting Period, coverage will terminate at the end of the Supplemental Extended Reporting Period.

**5.** Once in effect, the Supplemental Extended Reporting Period may not be canceled, and the entire premium will be deemed fully earned. We will not be liable to return any portion of the premium to **you** for such Supplemental Extended Reporting Period. If **you** have not paid the required additional premium for the Supplemental Extended Reporting Period when due, then such Supplemental Extended Reporting Period shall be void.

**C.** All terms and conditions of this Endorsement, including the limits of insurance, will continue to apply during any extended reporting period.

**D.** The existence of any extended reporting period will not increase or reinstate the limits of insurance shown in the Schedule.

## SECTION VII – DEFENSE, INVESTIGATION, AND SETTLEMENT

The Company will have the right and duty to defend any claim under Coverage Agreement A, B, C or D, even if the allegations of the **claim** are groundless, false or fraudulent. The Company has the right to appoint counsel to defend any such **claim**.

The Company may investigate or settle any **claim** at its sole discretion.  The applicable limit of insurance will be reduced and may be completely exhausted by payment of **defense costs**.  The Company will not be obligated to pay or defend any **claim** after the applicable limit of insurance hereunder has been exhausted.

No **insured** will incur any **defense costs** or other expenses, or settle any **claim**, assume any contractual obligation, admit liability, voluntarily make any payment, or otherwise consent to any settlement or judgment with respect to any **claim** without the Company's prior written consent, which will not be unreasonably withheld.  The Company will not be liable for any **defense costs** or other expenses, settlement or judgment to which the Company has not consented.

## SECTION VIII – OTHER INSURANCE

The coverage provided by this Endorsement will be excess insurance over any other valid and collectible insurance available, including any self-insured retention or deductible portion thereof, whether such insurance is stated to be primary, pro rata, contributory, excess, contingent or otherwise, unless such insurance specifically applies as excess insurance over the insurance provided under this Endorsement.

## SECTION IX – ARBITRATION

Notwithstanding any other provision of this Endorsement or the Policy, any irreconcilable dispute between the Company and an **insured** is to be resolved by arbitration in accordance with the then current rules of the American Arbitration Association, except that the arbitration panel shall consist of one arbitrator selected by the **insured**, one arbitrator selected by the Company, and a third independent arbitrator selected by the first two arbitrators. Judgment upon the award may be entered in any court having jurisdiction. The arbitrator has the power to decide any dispute between the Company and the **insured** concerning the application or interpretation of this Endorsement. However, the arbitrator shall have no power to change or add to the provisions of this Endorsement. The **insured** and the Company will share equally in the cost of arbitration.

## SECTION X – DEFINITIONS

When used in this Endorsement:

**Acquiring bank** means a bank or financial institution that accepts credit and debit card payments (including stored value cards and pre-paid cards) for products or services on behalf of a merchant, including processing and crediting those payments to a merchant's account.

**Act of cyber terrorism** means the premeditated use of information technology to organize and execute attacks, or the threat thereof, against computers, **computer systems**, networks or the internet by any person or group, whether acting alone, on behalf of, or in connection with any organization or government, which is committed for political, religious, or ideological purposes, with the intention to influence any government, put the public in fear, or cause destruction or harm to critical infrastructure or **data**.

**Adverse media report** means any report or communication of an actual or potential **security breach** or **privacy breach**, which:
1. Has been publicized through any media channel including, but not limited to, television, **print media**, radio or electronic networks, the internet, or electronic mail; and
2. Threatens material damage to **your reputation** or brands.

**Assumed under contract** means liability for **damages** resulting from a **multimedia peril, security breach** or **privacy breach** where such liability has been assumed by **you** in the form of a written hold harmless or indemnity agreement, provided that such agreement was executed prior to the date the **multimedia peril**, **security breach**, or **privacy breach** occurred.

**Bodily injury** means physical injury, sickness, disease, pain or death, and, if arising out of the foregoing, mental anguish, mental injury, shock, humiliation or emotional distress sustained by a person at any time.

**BPO service provider** means any third-party independent contractor that provides business process outsourcing services for **your** benefit under a written contract with **you**, including, but not limited to, call center services, fulfillment services, and logistical support.

**Brand loss** means **your** net profit as could have been reasonably projected immediately prior to **notification** or, in the event of an **adverse media report**, immediately prior to the publication of an **adverse media report**, but which has been lost as a direct result of such **notification** or **adverse media report**. **Brand loss** will be determined in accordance with Section VII.C of this Endorsement.

**Breach support and credit monitoring expenses** means those reasonable and necessary costs and expenses **you** incur, with the Company's prior written consent, for the provision of support activity to affected individuals in the event of a **privacy breach**, including the cost to provide a maximum of twelve (12) months of credit

monitoring and identity theft education or assistance.

**Card association** means Visa International, Mastercard, Discover, JCB American Express and any similar credit or debit card association that is a participating organization of the Payment Card Industry Security Standards Council.

**Claim** means:

1. With respect to Coverage Agreement A (Multimedia Liability) and Coverage Agreement B (Security and Privacy Liability):
   a. Any written demand for monetary or non-monetary relief made against an **insured**;
   b. Any civil proceeding or arbitration proceeding initiated against an **insured**, commenced by the service of a summons, complaint or similar pleading or notice; or
   c. Any written request to toll or waive a statute of limitations relating to a potential **claim** against an **insured**, including any appeal therefrom.

   A **claim** under Coverage Agreement A or Coverage Agreement B will be deemed to be first made when an **insured** first receives notice of any of A.1. through A.3. above.

2. With respect to Coverage Agreement C (Privacy Regulatory Defense and Penalties), a **government investigation** commenced against an **insured** by letter, notice, complaint or order of investigation.   A **claim** under Coverage Agreement C will be deemed to be first made when it is first received by an **insured**.

3. With respect to Coverage Agreement D (PCI DSS Assessment), a written demand made against an **insured** by an **acquiring bank** or **card association** for a **PCI DSS assessment** due to the **insured's** non-compliance with the **PCI Data Security Standard**.  A **claim** under Coverage Agreement D will be deemed to be first made when such written demand is received by an **insured**.

4. With respect to Coverage Agreement E (Privacy Breach Response Costs, Notification Expenses, and Breach Support and Credit Monitoring Expenses), **your** written report to the Company of an **adverse media report**, **security breach** or **privacy breach**.

5. With respect to Coverage Agreement F (Network Asset Protection), **your** written report to the Company of a **covered cause of loss**.

6. With respect to Coverage Agreement G (Cyber Extortion), **your** written report to the Company of a **cyber extortion threat**.

7. With respect to Coverage Agreement H (Cyber Terrorism), **your** written report to the Company of an **act of cyber terrorism**.

8. With respect to Coverage Agreement I (BrandGuard), **your** written report to the Company of **brand loss** directly caused by an **adverse media report** or **notification**.

**Computer hardware** means the physical components of any **computer system**, including CPU's, memory, storage devices, storage media, input/output devices and other peripheral devices and components, including, but not limited to, cables, connectors, fiber optics, wires, power supply units, keyboards, display monitors and audio speakers.

**Computer program** means an organized set of instructions that, when executed, causes a computer to behave in a predetermined manner.   **Computer program** includes, but is not limited to, communication systems, networking systems, operating systems, and related **computer programs** used to create, maintain process, retrieve, store, or transmit electronic **data**.

**Computer system** means interconnected electronic, wireless or web systems, or similar systems (including all **computer hardware** and software) used to process and store **data** or information in an analogue, digital, electronic or wireless format including, but not limited to, **computer programs**, electronic **data**, operating systems, **firmware**, servers, media libraries, associated input and output devices, mobile devices, networking equipment, websites, extranets, off line storage facilities (to the extent that they hold electronic **data**), and electronic backup equipment.

**Computer virus** means a program that possesses the ability to create replicas of itself (commonly known as an

"auto-reproduction" program) within other programs or operating system areas, and which is capable of spreading copies of itself, wholly or in part, to other **computer systems**.

**Covered cause of loss** means, and is limited to, the following:

1. Accidental Damage or Destruction
   a. Accidental physical damage or destruction of **electronic media**, so that stored **digital assets** are no longer machine-readable;
   b. Accidental damage or destruction of **computer hardware**, so that stored **data** is no longer machine-readable;
   c. Failure in power supply or under/over voltage, but only if such power supply, including back-up generators, is under **your** direct operational control;
   d. **Programming error** of **delivered programs**; or
   e. Electrostatic build-up and static electricity.

2. Administrative or Operational Mistakes
   An accidental, unintentional, or negligent act, error or omission by an **insured**, a **BPO service provider** or **outsourced IT service provider** in:
   a. The entry, or modification of **your** electronic **data**, which causes damage to such **data**; or
   b. The creation, handling, development, modification or maintenance of **your digital assets**; or
   c. The on-going operation or maintenance of an **insured computer system** excluding the design, architecture, or configuration of an **insured computer system**.

3. Computer Crime and Computer Attacks
   A negligent act, error or omission in the operation of an **insured computer system** or in the handling of **your digital assets** by an **insured**, a **BPO service provider** or **outsourced IT service provider**, which fails to prevent or hinder any of the following attacks on an **insured computer system**:
   a. A **denial of service attack**;
   b. **Malicious code**;
   c. **Unauthorized access**; or
   d. **Unauthorized use**.

**Criminal proceeding** means any governmental action for enforcement of criminal laws, including those offenses for which conviction could result in imprisonment or criminal fine.

**Cyber extortion expenses** means all reasonable and necessary costs and expenses **you** incur, with the Company's prior written consent, as a direct result of a **cyber extortion threat**, other than **cyber extortion monies**.

**Cyber extortion monies** means any funds or property **you** pay, with the Company's prior written consent, to a person or organization reasonably believed to be responsible for a **cyber extortion threat**, in order to terminate such **cyber extortion threat**.

**Cyber extortion threat** means a credible threat or series of related credible threats, including, but not limited to, a demand for **cyber extortion monies**, directed at **you** to:

1. Release, divulge, disseminate, destroy or use the confidential information of a third party taken from an **insured** as a result of **unauthorized access** to, or **unauthorized use** of, an **insured computer system**;
2. Introduce **malicious code** into an **insured computer system**;
3. Corrupt, damage or destroy an **insured computer system**;
4. Restrict or hinder access to an **insured computer system**, including, but not limited to, the threat of a **denial of service attack**; or
5. Electronically communicate with **your** customers and falsely claim to be **you** or to be acting under **your** direction in order to falsely obtain personal or confidential information of a customer (also known as "pharming", "phishing", or other types of false communications).

**Damages** means the amount of money which an **insured** is legally obligated to pay as a result of a covered **claim** under Coverage Agreement A or Coverage Agreement B, including judgments, legal fees and costs awarded against an **insured** pursuant to such judgments, and settlements negotiated with the Company's

consent.

**Damages** does not include:

1. Taxes;
2. Any amount for which an **insured** is absolved from legal responsibility to make payment to a third party;
3. Amounts owed under contract;
4. **Your** future profits or royalties or any return, withdrawal, restitution or reduction of **your** professional fees, profits or other charges;
5. Punitive, liquidated or exemplary damages or the multiplied portion of multiplied damages;
6. Fines, sanctions or penalties;
7. Any matters that are deemed uninsurable under applicable law;
8. The costs to comply with orders granting injunctive or non-monetary relief, including specific performance or any agreement to provide such relief;
9. Disgorgement of any remuneration or financial advantage to which **you** were not legally        entitled; or
10. Settlements negotiated without the Company's consent.

**Data** means any and all machine-readable information, including, but not limited to, ready-for-use programs, applications, account information, personal information, health and medical information, or electronic information subject to back-up procedures, irrespective of the way it is used or rendered.

**Defense costs** means reasonable and necessary legal fees and related costs and expenses incurred with the Company's consent in the investigation, defense and appeal of any **claim** under Coverage Agreement A, Coverage Agreement B, Coverage Agreement C, or Coverage Agreement D.  **Defense costs** does not include any wages, salaries, fees, overhead or other charges incurred by, or paid to, any **insured** for time spent in cooperating in the defense and investigation of any **claim** or potential **claim** under this Endorsement.

**Delivered programs** means programs, applications, and software where the development stage has been finalized, having passed all test-runs and been proven successful in a live environment.

**Denial of service attack** means an event caused by unauthorized or unexpected interference or a malicious attack intended by the perpetrator to overwhelm the capacity of a **computer system** by sending an excessive volume of electronic **data** to such **computer system** in order to prevent authorized access to such **computer system**.

**Digital assets** means **data** and **computer programs** that exist in an **insured computer system**. Digital assets does not include **computer hardware**.

**Digital assets loss** means reasonable and necessary expenses and costs **you** incur to replace, recreate or restore **digital assets** to the same state and with the same contents immediately before it was damaged, destroyed, altered, misused, or stolen, including expenses for materials and machine time.  **Digital assets loss** also includes amounts representing employee work time to replace, recreate or restore **digital assets**, which shall be determined on a predefined billable hours or per hour basis as based upon **your** schedule of employee billable hours.

**Electronic media** means floppy disks, CD ROMs, flash drives, hard drives, solid-state drives, magnetic tapes, magnetic discs, or any other media on which electronic **data** is recorded or stored.

**Endorsement period** means the period of coverage beginning on the effective date specified on this Endorsement and ending on the earlier of the termination, expiration or cancellation date of the Policy to which this Endorsement attaches. **Endorsement period** does not include any extended reporting period.

**Firmware** means the fixed programs that internally control basic low-level operations in a device.

**Government investigation** means a formal investigation instituted against an **insured** by any federal, state or local government agency or authority, the subject matter of which is a **privacy breach** or **security breach**.

**Income loss** means financial loss **you** sustain, as determined in accordance with the provisions of Coverage Agreement F.2. or Coverage Agreement H.

**Insured** means the **named insured** and current executive officers, partners, directors, stockholders, trustees, or

employees of the **named insured**, but only while such individuals are acting within the scope of their duties on behalf of the **named insured**.

**Insured computer system** means:

1. A **computer system** operated by, and either owned by or leased to, **you**;

2. With respect to Coverage Agreement B only, a **computer system** operated by a **BPO service provider** or **outsourced IT service provider** and used for the sole purpose of providing hosted computer application services to **you** or for processing, maintaining, hosting, or storing **your** electronic **data**, pursuant to a written contract with **you** to provide such services.

**Interruption expenses** means those expenses, excluding **special expenses**, which **you** incur in accordance with the provisions of Coverage Agreement F.2. or Coverage Agreement H to:

1. Avoid or minimize the suspension of **your** business as a result of a total or partial interruption, degradation in service, or failure of an **insured computer system** caused directly by a **covered cause of loss** or **act of cyber terrorism**, which **you** would not have incurred had no **covered cause of loss** or **act of cyber terrorism** occurred, including, but not limited to, the use of rented/leased external equipment, substitution of other work or production procedures, use of third party services, or additional staff expenditures or labor costs; and

2. Minimize or avoid a **covered cause of loss** or an **act of cyber terrorism** and continue **your** business.

The amount of **interruption expenses** recoverable under paragraph A. above shall in no case exceed the amount by which the covered **income loss** is reduced by such incurred expenses.

**Malicious code** means software intentionally designed to insert itself into and damage a **computer system** without the owner's informed consent by a variety of forms including, but not limited to, viruses, worms, Trojan horses, spyware, dishonest adware, and crimeware.

**Multimedia peril** means the release of or display of any **electronic media** on **your** internet site or **print media** for which **you** are responsible, which directly results in any of the following:

1. Any form of defamation or other tort related to the disparagement or harm to the reputation or character of any person or organization, including libel, slander, product disparagement or trade libel;

2. Invasion, infringement or interference with an individual's right of privacy or publicity, including false light, intrusion upon seclusion, commercial misappropriation of name, person or likeness, or public disclosure of private facts;

3. Plagiarism, piracy or misappropriation of ideas under an implied contract;

4. Infringement of copyright, trademark, trade name, trade dress, title, slogan, service mark or service name; or

5. Domain name infringement, improper deep linking, or framing.

**Named insured** means the person or organization listed as such on the Declarations Page of the Policy to which this Endorsement attaches.

**Notification** means written notice to affected individuals or organizations in the event of a **security breach** or a **privacy breach**.

**Notification expenses** means:

1. Those reasonable and necessary legal expenses, computer forensic and investigation fees, postage expenses and related advertising expenses incurred by **you**, with the Company's prior written consent, to comply with governmental privacy legislation mandating notice to affected individuals or organizations in the event of a **security breach** or **privacy breach**; and

2. **Voluntary notification expenses** incurred with the Company's prior written consent.

**Operational programs** means programs and software, which are ready for operational use, having been fully developed, tested, and accepted by **you**.

**Outsourced IT service provider** means a third party independent contractor that provides information technology services for **your** benefit under a written contract with **you**. **Outsourced IT service provider** services include, but are not limited to, hosting, security management, co-location, and **data** storage.

**PCI Data Security Standard** (known as "PCI DSS") means the published data security standards in effect now, or as hereafter amended, which all merchants and processors must follow when storing, processing and transmitting cardholder **data**.

**PCI DSS assessment** means monetary fines, penalties or assessments, such fraud recoveries, card reissuance costs, operational expenses or compliance case costs, imposed against an **insured** by an **acquiring bank** or **card association** as a result of a **security breach** or **privacy breach**.

**Period of indemnity** means the period beginning with the earlier of the date of **notification** or the first publication of an **adverse media report** (whichever applies), and ending on the earlier of:

1. The date that gross revenues are restored to the level they had been prior to **notification** or the first **adverse media report** (whichever applies); or

2. One hundred eighty (180) consecutive days after the notice of **brand loss** is received by the Company.

**Period of restoration** means the period of time beginning on the date when the interruption, degradation or failure of an **insured computer system** began and ending on the earlier of:

1. The date when the **insured computer system** is restored or could have been repaired or restored to the same condition, functionality, and level of service that existed prior to the **covered cause of loss** or **act of cyber terrorism** with reasonable diligence, plus up to thirty (30) additional consecutive days after restoration of the **insured computer system** to allow for restoration of **your** business; or

2. One hundred twenty (120) consecutive days after the notice of **covered cause of loss** or **act of cyber terrorism** is received by the Company.

**Print media** means newspapers, newsletters, magazines, brochures, books and literary works in any form, or other types of publications and advertising materials, including packaging, photographs, and digital images.

**Privacy breach** means any of the below, whether actual or alleged, but only if committed or allegedly committed by an **insured** or by others acting on **your** behalf for whom **you** are legally responsible, including **BPO service providers** and **outsourced IT service providers**:

1. A common law breach of confidentiality, infringement, or violation of any right to privacy, including, but not limited to, a breach of **your** privacy policy, false light, intrusion upon a person's seclusion, commercial misappropriation of name, person, or likeness, or public disclosure of a person's private information; or

2. Any breach or violation of U.S. federal, state or local privacy statutes or regulations, as they currently exist and as amended, associated with confidentiality, access, control, and use of personally identifiable, non-public information, including, but not limited to:

   a. The Health Insurance Portability and Accountability Act of 1996 (Public Law 104- 191), known as HIPAA, and related state medical privacy laws;

   b. The Gramm-Leach-Bliley Act of 1999 (GLBA), also known as the Financial Services Modernization Act of 1999;

   c. State and federal statutes and regulations regarding the security and privacy of consumer information;

   d. Governmental privacy protection regulations or laws associated with the control and use of personal information;

   e. Privacy provisions of consumer protection laws, including the Federal Fair Credit Reporting Act (FCRA) and similar state laws;

   f. Title XIII, the Health Information Technology for Economic and Clinical Health Act ("HITECH"), of the American Recovery and Reinvestment Act of 2009 ("ARRA").

A series of continuing **privacy breaches**, related or repeated **privacy breaches**, or multiple **privacy breaches** resulting from the same facts or circumstances will be considered a single **privacy breach** and will be deemed to have occurred at the time the first of such **privacy breaches** occurred.

**Privacy breach response costs** means those reasonable and necessary **public relations expenses you** incur, with the Company's prior written consent, to avert or mitigate any material damage to **your reputation** or brands, which results or reasonably will result from an **adverse media report**, including **proactive privacy breach responses costs**.

**Proactive privacy breach response costs** means those reasonable and necessary **public relations expenses you** incur in response to an actual or potential **security breach** or **privacy breach**, but prior to the publication of an **adverse media report**, in an effort to avert or mitigate the potential impact of such **adverse media report**.

**Programming error** means an error that occurs during the development or encoding of a **computer program**, software, or application, which would, when in operation, result in a malfunction or incorrect operation of a **computer system**.

**Property damage** means injury to tangible property, including all resulting loss of use of that property, and loss of use of tangible property that is not physically injured. **Data** is not considered tangible property.

**Public relations expenses** means reasonable and necessary fees and expenses **you** incur in the employment of a public relations consultant to re-establish **your reputation**, which was damaged as a direct result of an **adverse media report**.

**Regulatory compensatory award** means a sum of money an **insured** is legally obligated to pay as an award or fund for affected individuals, including a regulatory agency's monetary award to a third party, due to an adverse judgment or settlement arising out of a **government investigation**. **Regulatory compensatory award** does not include any criminal penalty or fine issued by a regulatory agency of any kind, including federal, state, or local governmental agencies.

**Regulatory fines and penalties** means civil or administrative fines and penalties imposed against an **insured** as a result of a **government investigation**.

**Regulatory fines and penalties** does not include:

1.  Any criminal fines or penalties of any nature whatsoever;

2.  Any fines or penalties imposed against an **insured** for failure to comply with or follow the **PCI Data Security Standard** or any payment card company rules; or

3.  Any interest assessed on **regulatory fines and penalties**.

**Retroactive date** means the date specified as such on this Endorsement, on or after which any **multimedia peril**, **security and privacy wrongful act**, **security breach**, **privacy breach**, **covered cause of loss**, **act of cyber terrorism**, or **adverse media report** must have taken place in order to be considered for coverage under this Endorsement.

**Security and privacy wrongful act** means any of the following acts, whether actual or alleged, but only if committed or allegedly committed by an **insured**:

1.  The failure to prevent or hinder a **security breach**, which in turn results in:

    a.  The alteration, copying, corruption, destruction or deletion of, or damage to, electronic **data** stored on an **insured computer system**;

    b.  Theft, loss or unauthorized disclosure of electronic or non-electronic confidential commercial, corporate, personally identifiable, or private information that is in an **insured's** care, custody or control;

    c.  Theft, loss or unauthorized disclosure of electronic or non-electronic confidential commercial, corporate, personally identifiable, or private information that is in the care, custody or control of a **BPO service provider** or **outsourced IT service provider** that is holding, processing or transferring such information on **your** behalf; provided, however, that the theft, loss or unauthorized disclosure occurs while **your** written contract with such **BPO service provider** or **outsourced IT service provider** is in effect; or

    d.  **Unauthorized use** of or **unauthorized access** to a **computer system** other than an **insured**

computer system.

2. The failure to timely disclose a **security breach** affecting personally identifiable, non-public information, or the failure to dispose of personally identifiable, non-public information within the required time period, in violation of privacy regulations in effect now or in the future;

3. The failure to prevent the transmission of **malicious code** or **computer virus** from an **insured computer system** to the **computer system** of a third party;

4. A **privacy breach**;

5. The failure to prevent or hinder participation by an **insured computer system** in a **denial of service attack** directed against internet sites or the **computer system** of any third party; or

6. The loss of **your** employee's information.

**Security breach** means any of the following, whether a specifically targeted attack or a generally distributed attack:

1. Unauthorized access to, or unauthorized use of, an insured computer system, including unauthorized access or unauthorized use resulting from the theft of a password from an insured computer system or from an insured;

2. A denial of service attack against an insured computer system; or

3. Infection of an insured computer system by malicious code or the transmission of malicious code from an insured computer system.

A series of continuing **security breaches**, related or repeated **security breaches**, or multiple **security breaches** resulting from a continuing failure of computer security will be considered a single **security breach** and will be deemed to have occurred at the time the first of such **security breaches** occurred.

**Special expenses** means reasonable and necessary costs and expenses **you** incur to:

1. Prevent, preserve, minimize, or mitigate any further damage to **your digital assets**, including the reasonable and necessary fees and expenses of specialists, outside consultants or forensic experts;

2. Preserve critical evidence of any criminal or malicious wrongdoing;

3. Purchase replacement licenses for **computer programs** because the copy protection system or access control software was damaged or destroyed by a **covered cause of loss** or **act of cyber terrorism**; or

4. Notify customers of a total or partial interruption, degradation in service, or failure of an **insured computer system** resulting from a **covered cause of loss** or **act of cyber terrorism**.

**Unauthorized access** means the gaining of access to a **computer system** by an unauthorized person.

**Unauthorized use** means the use of a **computer system** by unauthorized persons or by authorized persons in an unauthorized manner.

**Voluntary notification expenses** reasonable and necessary legal expenses, computer forensic and investigation fees, postage expenses and related advertising expenses **you** incur to provide written notice to any individual or organization of a **privacy breach** or **security breach** where there is no specific legal requirement in the applicable jurisdiction mandating such notice.

**Waiting period** means:

1. With respect to Coverage Agreement F.2. and Coverage Agreement H, the 8-hour period which must elapse before **income loss**, **interruption expenses** and **special expenses** may be payable. The **waiting period** applies to each **period of restoration**.

2. With respect to Coverage Agreement I, the two-week period which must elapse after **notification**, or in the event of an **adverse media report**, after publication of the first **adverse media report**, before **brand loss** may be payable. The **waiting period** applies to each **period of indemnity**.

**You** and **your** mean the **named insured**.

**Your reputation** means the estimation of trust that customers or clients have in doing business with **you** or in purchasing **your** products or services.

BUSINESSOWNERS
BP 07 10 01 06

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# MOTELS

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Businessowners Coverage Form apply, unless modified by this endorsement.

**A.** Paragraph **A.1.b.(2)** of **Section I - Property** is replaced by the following:

**(2)** Property of others that is in your care, custody or control, excluding property belonging to guests staying at your motel, except as otherwise provided in Loss Payment Property Loss Condition **E.5.d.(3)(b)**;

**B.** The following is added to Paragraph **A.1.b.** of **Section I - Property:**

**(6)** Your personal property in motel rooms furnished by you as a motel operator.

**C.** The following is added to Paragraph **A.5. Additional Coverages** of **Section I - Property:**

**s.  Lock Replacement**

We will pay the necessary expenses you incur to replace locks for motel rooms resulting from theft or copying of keys or any other legitimate security concern. The most we will pay under this Additional Coverage during each policy period is $2,500.

This insurance does not apply to loss caused by:

**(1)** Vandalism; or

**(2)** Wear and Tear.

Lock replacement coverage is not subject to a deductible.

**D.** Our obligation under this coverage applies only to the amount of damages in excess of any deductible amount stated in the Declarations as applicable to this coverage.

**E.** The following is added to Paragraph **A. Coverages** of **Section II - Liability:**

**3.  Liability For Guests' Property**

**a.** We will pay those sums that you become legally obligated to pay as damages because of loss or destruction of, or damage to property belonging to your motel guests while the property is on your premises or in your possession. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Paragraph **D - Liability And Medical Expenses Limits Of Insurance** in Section **II - Liability**; and

**(2)** Our right and duty to defend end when we have used up the applicable Limit of Insurance in the payment of judgments or settlements or medical expenses.

**b.** This insurance applies to damages resulting from the loss or destruction of, or damage to property belonging to motel guests only if the loss or destruction of, or damage to property took place in the "coverage territory" during the policy period.

**c.** This coverage does not apply to the following property:

**(1)** Samples or articles held for sale;

**(2)** Vehicles, including equipment, accessories or any property contained in or on a vehicle; and

**(3)** Property belonging to your guests while the property is in a "safe deposit box" on your premises.

**F.** The following is added to Paragraph **B. Exclusions** of **Section II - Liability:**

    **4. Applicable To Liability For Guests' Property**

        This insurance does not apply to:

        **a.** Liability excluded under Business Liability Coverage.

            However, with respect to the coverage provided for damage to Guests' Property, Exclusion **B.1.k.(4)** of **Section II - Liability** does not apply;

        **b.** Dishonest acts committed by you, your partners, members or managers;

        **c.** Destruction of or damage to property resulting from the spilling, upsetting or leaking of any food or liquid;

        **d.** Loss or destruction of or damage to property resulting from seizure or destruction of the property by order of governmental authority; and

        **e.** Liability incurred from your release of any other person or organization from legal liability.

**G.** The following is added to Paragraph **D. Liability And Medical Expenses Limits Of Insurance** of **Section II - Liability:**

    **5. Liability For Guests' Property Limits Of Insurance**

        **a.** The most we will pay for all damages because of loss or destruction of or damage to property belonging to your guests in any one "occurrence", regardless of the number of guests, is $25,000 unless a higher amount is shown in the Declarations.

        **b.** Subject to the applicable limit stated above in **5.a.,** the most we will pay for all damages because of loss or destruction of or damage to property belonging to any one guest is $1,000, unless a higher amount is shown in the Declarations.

            All loss, destruction or damage involving a single act or series of related acts whether caused by one or more persons is considered one "occurrence".

**H.** For coverage provided under this endorsement the following definition is added to **Section II - Liability:**

    **23.** "Safe Deposit Box" means a box or safe used for safe storage of valuables. The box or safe must be in an area inaccessible to the public whereby the valuables are turned over to the custody of a motel representative. "Safe deposit box" does not include any safe or storage facility in motel units occupied by guests.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# MOTEL - LIABILITY FOR GUESTS' PROPERTY IN SAFE DEPOSIT BOXES

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Businessowners Coverage Form are amended as follows:

**A.** The following is added to Paragraph **A. Coverages** of **Section II - Liability:**

**3. Liability For Guests' Property In "Safe Deposit Boxes"**

**a.** We will pay those sums that you become legally obligated to pay as damages because of loss or destruction of or damage to property belonging to your motel guests while the property is in a "safe deposit box" on your premises. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Paragraph **D**- Liability And Medical Expenses Limits Of Insurance in Section **II** - Liability; and

**(2)** Our right and duty to defend end when we have used up the applicable Limit of Insurance in the payment of judgments or settlements or medical expenses.

Our obligation under this coverage applies only to the amount of damages in excess of any deductible amount stated in the Declarations as applicable to this coverage.

**b.** This insurance applies to damages resulting from the loss or destruction of or damage to property belonging to your motel guests only if the loss or destruction of or damage to property took place in the "coverage territory" during the policy period.

**B.** The following are added to Paragraph **B. Exclusions** of Section **II - Liability:**

**4. Applicable to Liability For Guests' Property In "Safe Deposit Boxes"**

This insurance does not apply to:

**a.** Liability excluded under Business Liability Coverage.

However, with respect to the coverage provided for damage to Guests' Property, Exclusion **B.1.k.(4)** of Section **II** - Liability does not apply.

**b.** Dishonest acts committed by you, your partners, members or managers;

**c.** Destruction of or damage to property resulting from fire;

**d.** Loss or destruction of or damage to property resulting from seizure or destruction of the property by order of governmental authority; and

**e.** Liability incurred from your release of any other person or organization from legal liability.

**C.** The following is added to Paragraph **D. Liability And Medical Expenses Limits Of Insurance** of Section **II - Liability:**

**5. Liability For Guests' Property In "Safe Deposit Boxes" Limit Of Insurance**

The most we will pay for all damages because of loss or destruction of or damage to property belonging to your motel guests while the property is in a "safe deposit box" on your premises in any one "occurrence", regardless of the number of guests, is the Liability For Guests' Property In "Safe Deposit Boxes" Limit of Insurance shown in the Declarations.

   ISO Properties, Inc., 2004

**D.** For coverage provided under this endorsement the following definition is added to **Section II - Liability:**

    **23.** "Safe Deposit Box" means a box or safe used for safe storage of valuables. The box or safe must be in an area inaccessible to the public whereby the valuables are turned over to the custody of a motel representative. "Safe deposit box" does not include any safe or storage facility in motel units occupied by guests.

BUSINESSOWNERS
BP 05 38 01 15

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION OF OTHER ACTS OF TERRORISM COMMITTED OUTSIDE THE UNITED STATES; CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

The following provisions are added to the Businessowners Liability Coverage Form **BP 00 06** and **Section II – Liability** of the Businessowners Coverage Form **BP 00 03**:

**A.** The following exclusion is added:

This insurance does not apply to:

**TERRORISM**

"Any injury or damage" arising, directly or indirectly, out of an "other act of terrorism" that is committed outside of the United States (including its territories and possessions and Puerto Rico), but within the "coverage territory". However, this exclusion applies only when one or more of the following are attributed to such act:

**1.** The total of insured damage to all types of property exceeds $25,000,000 (valued in U.S. dollars). In determining whether the $25,000,000 threshold is exceeded, we will include all insured damage sustained by property of all persons and entities affected by the terrorism and business interruption losses sustained by owners or occupants of the damaged property. For the purpose of this provision, insured damage means damage that is covered by any insurance plus damage that would be covered by any insurance but for the application of any terrorism exclusions; or

**2.** Fifty or more persons sustain death or serious physical injury. For the purposes of this provision, serious physical injury means:

    **a.** Physical injury that involves a substantial risk of death; or

    **b.** Protracted and obvious physical disfigurement; or

    **c.** Protracted loss of or impairment of the function of a bodily member or organ; or

**3.** The terrorism involves the use, release or escape of nuclear materials, or directly or indirectly results in nuclear reaction or radiation or radioactive contamination; or

**4.** The terrorism is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

**5.** Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the terrorism was to release such materials.

With respect to this exclusion, Paragraphs **1.** and **2.** describe the thresholds used to measure the magnitude of an incident of an "other act of terrorism" and the circumstances in which the threshold will apply for the purpose of determining whether this exclusion will apply to that incident.

**B.** The following definitions are added:

**1.** For the purposes of this endorsement, "any injury or damage" means any injury or damage covered under any Coverage Form to which this endorsement is applicable, and includes but is not limited to "bodily injury", "property damage" or "personal and advertising injury" as may be defined in any applicable Coverage Form.

 © Insurance Services Office, Inc., 2015

**2.** "Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

**a.** The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act;

**b.** The act resulted in damage:

**(1)** Within the United States (including its territories and possessions and Puerto Rico); or

**(2)** Outside of the United States in the case of:

**(a)** An air carrier (as defined in Section 40102 of title 49, United States Code) or United States flag vessel (or a vessel based principally in the United States, on which United States income tax is paid and whose insurance coverage is subject to regulation in the United States), regardless of where the loss occurs; or

**(b)** The premises of any United States mission; and

**c.** The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**3.** "Other act of terrorism" means a violent act or an act that is dangerous to human life, property or infrastructure that is committed by an individual or individuals and that appears to be part of an effort to coerce a civilian population or to influence the policy or affect the conduct of any government by coercion, and the act is not a "certified act of terrorism".

Multiple incidents of an "other act of terrorism" which occur within a seventy-two hour period and appear to be carried out in concert or to have a related purpose or common leadership shall be considered to be one incident.

**C.** The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for injury or damage that is otherwise excluded under this Policy.

**D.** If aggregate insured losses attributable to terrorist acts certified under the federal Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.



## INDIVIDUAL RISK PREMIUM MODIFICATION PLAN
## BUSINESSOWNER'S PACKAGE POLICY

**Insured:**  JAI DEV INC DBA BEST WESTERN RADFORD INN

**Policy Number:**  BOP0076884  02          **Effective Date:**  05/08/2018

## RATING PROCEDURE

The following modifications shall be applied to recognize such special characteristics of the risk as are not fully reflected in the basic premium or rates. This plan shall be applied after the application of all other rating procedures.

| Risk Characteristics | Range of Modification | | | +/- Pct. |
|---|---|---|---|---|
| **1.   Management**<br>Cooperation in matters of safeguarding and proper handling of property covered | -10.0% | to | +10.0% | 0 |
| **2.   Location**<br>Accessibility, congestion and exposures | -10.0% | to | +10.0% | 0 |
| **3.   Building Features**<br>Age, condition and unusual structural features | -8.0% | to | +8.0% | 0 |
| **4.   Premises and Equipment**<br>Care, condition and type | -8.0% | to | +8.0% | 3 |
| **5.   Employees**<br>Selection, training, supervision and experience | -5.0% | to | +5.0% | 0 |
| **6.   Protection**<br>Not otherwise recognized | -5.0% | to | +5.0% | 0 |
| | | | **TOTAL** | 1.03000 |

**The total credits or debits may not exceed 40%.**

**Signature:**  Jennifer Kennedy          **Date:**  08/24/18

**BMI 99 16 10 10**

# BRETHREN MUTUAL
## Insurance Company

**Policy Number:** BOP0076884  02

# ADVISORY NOTICE TO VIRGINIA POLICYHOLDERS

**Privacy Notification:**
A credit report or other investigative report about you may be requested in connection with this application for insurance and subsequent renewals.  Any information which we have or may obtain about you or other individuals listed as policyholders on your policy will be treated confidentially.  However, this information as well as other personal or privileged information subsequently collected, may, under certain circumstances, be disclosed without prior authorization to non-affiliated third parties.  We may also share such information with affiliated companies for such purposes as claims handling, servicing, underwriting and insurance marketing.

You have the right to see personal information collected about you, and you have the right to correct any information, which may be wrong.  If you are interested in obtaining a description of our information practices, and your rights regarding information we collect, contact your agent or The Brethren Mutual Insurance Company at the address and/or phone number provided below.

**Notice of Flood Coverage Exclusion:**
Virginia Law requires that all insureds who have, or will be issued an insurance policy providing fire insurance coverage must be informed that the policy excludes coverage for damage due to flood, surface water, waves, tidal water, or any other overflow of a body of water, if the policy in fact does not provide this coverage. **YOUR POLICY CONTAINS SUCH AN EXCLUSION.**

Information regarding flood insurance is available from your insurance agent or from the National Flood Insurance Program. Coverage is generally described in this notice.  Only the policy provides a complete description of the coverages and their limitations.

**THIS EXCLUSION APPLIES TO ALL FUTURE RENEWALS, CONTINUATIONS AND CHANGES IN YOUR POLICY UNLESS WE NOTIFY YOU OTHERWISE IN WRITING.**

**Contact Information:**
In the event you need to contact someone about this insurance for any reason, please contact your agent at the following address and telephone number:

> MCGRIFF INSURANCE SERVICES INC
> P. O. BOX 929
> HARRISONBURG VA 22801-0000

> Phone: **540-437-1300**

If no agent was involved in the sale of this insurance, or if you have additional questions, you may contact us at the following address and telephone number:

**Brethren Mutual Insurance Company**
**149 N. Edgewood Drive**
**Hagerstown, MD  21740**
**1-800-621-4264**

If you have been unable to contact or obtain satisfaction from the company or the agent, you may contact the Virginia State Corporation Commission's Bureau of Insurance at:

**Commonwealth of Virginia**
**Tyler Building, 5th Floor**
**1300 East Main Street**
**Richmond, VA  23219**
**1-804-371-9741 or 1-800-552-7945 (Virginia Only)**

Written correspondence is preferable so that a record of your inquiry is maintained.   When contacting your agent, company or Bureau of Insurance, have your policy number available.