IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| THE BRETHREN MUTUAL | ) | |
| INSURANCE COMPANY, *et al*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 7:21-cv-00316 |
| | ) | |
| JAI DEV, INC., *et al*, | ) | By: Elizabeth K. Dillon |
| | ) | United States District Judge |
| Defendants. | ) | |

**MEMORANDUM OPINION**

The Brethren Mutual Insurance Company ("Brethren") and Great American Alliance

Insurance Company ("Great American") brought this diversity action against Jai Dev, Inc., and

David L. Wise.   Plaintiffs seek a declaratory judgment that an alleged injury caused by Wise's

inhalation of Legionella bacteria while staying at a hotel owned by Jai Dev is not a covered loss

under either of the insurance policies plaintiffs issued to Jai Dev and, as a result, that neither

Brethren nor Great American owes a duty to indemnify or defend Jai Dev for such a loss.   Wise

answered the complaint and brought a counterclaim seeking a declaratory judgment that both

policies provide coverage to Jai Dev with respect to his suit.

The matter is before the court on plaintiffs' motions for summary judgment.   (Dkt. Nos.

30, 32.)   Because the court concludes that Wise's alleged injury is a covered loss under

Brethren's policy, Brethren's motion will be denied.   As such, having determined that there are

no factual issues to resolve and that defendants are entitled to judgment as a matter of law on

Brethren's claim, the court will grant summary judgment in favor of defendants *sua sponte*

1

pursuant to Federal Rule of Civil Procedure 56(f)(1).   However, because the court concludes

that Wise's alleged injury is not a covered loss under Great American's policy, Great American's

motion will be granted.   Lastly, the court will decline to exercise jurisdiction over, and therefore

dismiss, Wise's counterclaim because it is effectively a "mirror image" of plaintiffs' complaint

that "merely restate[s] issues already before the court as part of [plaintiffs'] affirmative case."

*See Atl. Recording Corp. v. Serrano*, No. 07–CV–1824 W(JMA), 2007 WL 4612921, at *4 (S.D.

Cal. Dec. 28, 2007).

## I.   BACKGROUND

### A.  Factual and Procedural History

In March 2019, Jai Dev owned and operated a hotel in Radford, Virginia, then known as

the Best Western Radford Inn (the "Best Western").   (Stip., Dkt. No. 28 ¶ 1.)   Brethren and

Great American both issued insurance policies to Jai Dev in relation to the Best Western

effective from May 8, 2018 to May 8, 2019.   (*Id.* ¶¶ 2–3.)   Brethren was Jai Dev's primary

insurer, and Great American was Jai Dev's excess insurer.

On July 2, 2020, Wise sued Jai Dev in this court, claiming personal injuries arising out of

his alleged inhalation of a bacteria during his previous stay at the Best Western.   (*See* Dkt. No.

1-5; *see also Wise v. Jai Dev, Inc.*, No. 7:20-cv-00384 (W.D. Va.).)   That case (the "underlying

action") remains pending.   In the underlying action, Wise alleges that he stayed at the Best

Western from February 28, 2019, through March 3, 2019, (Stip. ¶ 5) and that he used the hot tub

and pool at the hotel on March 1 and 2, 2019 (*id.* ¶ 6).   Wise further submits that he contracted

Legionnaires' disease because the hot tub and pool at the Best Western were contaminated with

Legionella bacteria.   (*Id.* ¶ 7.)   As Wise states in his complaint in the underlying action, "[a]ccording to the U.S. Department of Health and Human Services, Centers for Disease Control and Prevention, Legionnaires' disease is a very severe type of pneumonia that is caused by inhalation of Legionella bacteria from a water source."   (*See* Dkt. No. 1-5 ¶ 11 (italics omitted).) "Legionella is found in warm water, particularly hot tubs that are not adequately cleaned and disinfected."   (*Id.* (same).)   "A person can become infected with Legionella when they breathe in steam or mist from a contaminated hot tub."   (*Id.* (same).)

Wise does not allege that Jai Dev sold or served any beverage that had Legionella bacteria in it or that otherwise contributed to his injuries during his visit to the Best Western. (Stip. ¶ 14.)   Wise did not intentionally ingest any of the water in the pool or hot tub during his visit to the Best Western (*id.* ¶ 11) but does not know if he unintentionally swallowed any water while in the pool or hot tub (*id.* ¶ 12).   During Wise's visit to the Best Western, the hot tub and pool were located indoors in an enclosed edifice with walls and a roof.   (*Id.* ¶ 13.)

On May 20, 2021, Brethren and Great American filed this action against Jai Dev and Wise, requesting that the court declare the parties' rights and obligations under both the Brethren and Great American policies with respect to the underlying action.   (Compl., Dkt. No. 1.)   Wise then answered the complaint and asserted a counterclaim, likewise requesting that the court declare the parties' rights and obligations under these insurance policies and issue a declaration that both Brethren and Great American have a legal duty to defend and indemnify Jai Dev in relation to the underlying action.   (Dkt. No. 12.)   Due to an inadvertent error in the listing of Brethren's legal name in the complaint, plaintiffs filed, upon the court's order (Dkt. No. 18), an

amended complaint that was otherwise identical in substance.   (Am. Compl., Dkt. No. 19.)

Plaintiffs now move for summary judgment (Dkt. Nos. 30, 32), which Wise opposes (Dkt. Nos.

35, 36).[1]

## B. The Brethren Policy

Brethren issued Policy No. BOP0076884 02, effective May 8, 2018 to May 8, 2019, to

Jai Dev in relation to the Best Western.   (*See* Dkt. No. 19-3 [hereinafter "Brethren Policy"];

Stip. ¶ 2.)   Under Section II.A.1.a of the "Businessowners Coverage Form" of the Brethren

Policy, Brethren agreed to insure, in relevant part, the following:

> We will pay those sums that the insured becomes legally obligated
> to pay as damages because of "bodily injury", "property damage"
> or "personal and advertising injury" to which this insurance
> applies. We will have the right and duty to defend the insured
> against any "suit" seeking those damages. However, we will have
> no duty to defend the insured against any "suit" seeking damages
> for "bodily injury", "property damage" or "personal and
> advertising injury", to which this insurance does not apply. We
> may at our discretion, investigate any "occurrence" and settle any
> claim or "suit" that may result.

(Brethren Policy 78.)   Section II.B.1.f of the Brethren Policy includes a Pollution Exclusion that

excludes from liability coverage, in relevant part, the following:

> (1) [This insurance does not apply to] [b]odily injury" or "property
> damage" arising out of the actual, alleged or threatened

---

[1] Jai Dev, on the other hand, has not yet answered the complaint, filed any motions, or otherwise appeared to defend its interests in this case (despite having answered Wise's complaint and moved for summary judgment in the underlying action).   However, no plaintiff here has applied for a default judgment against Jai Dev, *see* Fed. R. Civ. P. 55(b)(2), and Wise has appeared to assert Jai Dev's interest in insurance coverage.   Moreover, the court has jurisdiction to address claims by an insurer (here, Brethren and Great American) for declaratory relief against an injured third party (here, Wise), regardless of whether the insured is named in the suit.   *See, e.g.*, *Vermont Mut. Ins. Co. v. Everette*, 875 F. Supp. 1181, 1184 (E.D. Va. 1995) (citing *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270 (1941)).   For those reasons, the court will consider the merits of plaintiffs' motions against both defendants.

discharge, dispersal, seepage, migration, release or escape of "pollutants":

(a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

(i) "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests.

(*Id.* 81.)   Section II.F.15 of the Brethren Policy defines the term "pollutants" as "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste."   (*Id.* 92.)

The Brethren Policy also includes an endorsement which added a "fungi or bacteria" exclusion as Section II.B.1.t of the Policy; this endorsement excluded from coverage, in relevant part, the following:

(1) [This insurance does not apply to] "[b]odily injury", "property damage" or "personal and advertising injury" which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or *bacteria* on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

(*Id.* 104 (emphasis added).)[2]   Importantly, however, the endorsement also included an exception (the "bodily consumption exception") which mandates that this exclusion does not apply to "any 'fungi' or bacteria that are, are on, or are contained in, *a good or product intended for bodily*

---

[2]   The parties have stipulated that the Legionella at issue in the underlying action are bacteria.   (Stip. ¶ 8.)

*consumption*." (*Id.* (emphasis added).)

## C. The Great American Policy

Great American issued Policy No. UM1743916/Cert. No. 3887, effective May 8, 2018, to May 8, 2019, to Jai Dev through a risk purchasing group (Select Hospitality Insurance Company, Inc.) that provides umbrella and excess liability coverage. (Dkt. No. 19-4 [hereinafter "Great American Policy"]; Stip. ¶ 3.) Great American's policy generally provides excess liability coverage over a retained limit, which here includes $1 million of underlying general liability coverage. (Great American Policy 12, 36.)

The Great American Policy includes an endorsement that added an exclusion for "Organic Pathogens – with Exception for Food and Beverages" to Section IV of the "Commercial Umbrella Coverage Form." (*Id.* 64.) The organic pathogens exclusion excludes from coverage any "'[b]odily injury . . . arising out of any actual, alleged or threatened infectious, pathogenic, toxic or other harmful properties of any 'organic pathogen.'" (*Id.*) The exclusion further defines "organic pathogen" as, in relevant part, any "[b]acteria . . . other microorganisms; or mycotoxins, spores or other by-products [thereof]." (*Id.*).

However, the Great American Policy also includes an exception to the organic pathogen exclusion (the "beverage exception"), under which the exclusion "does not apply to 'bodily injury' caused by any 'organic pathogen' in or on *any food or beverages* sold, distributed, served or handled by any insured." (*Id.* (emphasis added).) Further, the beverage exception reiterates that "under no circumstances will the coverage provided by this Policy be any broader than the coverage provided by the 'underlying insurance'" (i.e., the Brethren Policy). (*Id.*)

## II. LEGAL STANDARDS

### A. Motion for Summary Judgment

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the non-moving party must then "come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (emphasis in original) (quoting Fed. R. Civ. P. 56(e)). Only disputes between the parties over facts that might affect the outcome of the case properly preclude the entry of summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (stating that a factual dispute is "material" only if it might affect the outcome of the suit under the governing law and "genuine" only if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party).

In determining whether there is a genuine issue for trial, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [its] favor." *Id.* at 255. Nevertheless, "permissible inferences must still be within the range of reasonable probability" and "it is the duty of the court to withdraw the case from the [factfinder] when the necessary inference is so tenuous that it rests merely upon speculation and conjecture." *Lovelace v.*

*Sherwin-Williams Co.*, 681 F.2d 230, 241 (4th Cir. 1982) (quotations and alteration omitted). Thus, summary judgment is warranted where "the verdict in favor of the non-moving party would necessarily be based on speculation and conjecture." *Myrick v. Prime Ins. Syndicate, Inc.*, 395 F.3d 485, 489 (4th Cir. 2005). By contrast, where "the evidence as a whole is susceptible of more than one reasonable inference, a [triable] issue is created," and summary judgment should be denied. *Id.* at 489–90.

## B. Declaratory Judgment

Under the Declaratory Judgment Act, a district court, in "a case of actual controversy within its jurisdiction . . . *may* declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a) (emphasis added). The statute is meant "to afford a speedy and inexpensive method of adjudicating legal disputes without invoking the coercive remedies of the old procedure, and to settle legal rights and remove uncertainty and insecurity from legal relationships without awaiting a violation of the rights or a disturbance of the relationships." *Aetna Cas. & Sur. Co. v. Quarles*, 92 F.2d 321, 325 (4th Cir. 1937). As courts have uniformly recognized, "[t]his power has consistently been considered discretionary." *Centennial Life Ins. Co. v. Poston*, 88 F.3d 255, 256 (4th Cir. 1996) (citations omitted). The Fourth Circuit has provided guidance on the exercise of this discretionary power, commenting that a declaratory judgment action is appropriate "when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and . . . when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Id.*

## C. Interpretation of Insurance Policies

"In a declaratory judgment action, an insurance carrier may appropriately move for summary judgment to determine whether it is obligated to provide coverage to an insured, where . . . there are no material ambiguities in the policy." *St. Paul Reinsurance Co. v. Ollie's Seafood Grille and Bar, LLC*, 242 F.R.D. 348, 352 (D.S.C. 2007) (citing *Highlands Ins. Co. v. Gerber Prods. Co.*, 702 F. Supp. 109, 111 (D. Md. 1988)).   In fact, "[s]ummary judgment is especially appropriate in [insurance coverage disputes] because the construction of insurance contracts is a legal question well suited for resolution by the court." *St. Paul Fire & Marine Ins. Co. v. Jacobson*, 826 F. Supp. 155, 157 (E.D. Va. 1993) (citations omitted), *aff'd*, 48 F.3d 778 (4th Cir. 1995).   "Virginia law leaves no room for a jury trial when exclusionary language in an insurance policy is ambiguous." *SunTrust Mortg., Inc. v. AIG United Guar. Corp.*, 784 F. Supp. 2d 585, 598 (E.D. Va. 2011) (citing *Highway Express, Inc. v. Fed. Ins. Co.*, Nos. 93-1715, 93-1889, 1994 WL 95956, at *6–7 (4th Cir. Mar. 24, 1994)).

Virginia's choice-of-law rules provide that questions regarding the interpretation of an insurance contract shall be governed by the law of the state where the contract was made. *Factory Mut. Ins. Co. v. Liberty Mut. Ins. Co.*, 518 F. Supp. 2d 803, 808 (W.D. Va. 2007) (citing *Lexie v. State Farm Mut. Auto. Ins. Co.*, 469 S.E.2d 61, 63 (Va. 1996)).   In Virginia, "[a]ll insurance contracts on or with respect to the ownership, maintenance, or use of property" located in Virginia "*shall be deemed to have been made in* and shall be construed in accordance with the laws" of Virginia."   Va. Code § 38.2-313 (emphasis added).   Because both policies at issue in plaintiffs' motions concern the maintenance or use of property located in Virginia, the court will

apply Virginia law in interpreting the terms of both policies.

In Virginia, "courts interpret insurance policies, like other contracts, in accordance with the intention of the parties gleaned from the words they used in the document." *Transcontinental Ins. Co. v. RBMW, Inc.*, 551 S.E.2d 313, 318 (Va. 2001) (alteration omitted). In doing so, courts "must adhere to the terms of a contract of insurance as written, if they are plain and clear and not in violation of law or inconsistent with public policy."   *Blue Cross & Blue Shield of Va. v. Keller*, 450 S.E.2d 136, 140 (Va. 1994).   Policy exclusions are likewise "construed according to their plain language."   *See TravCo Ins. Co. v. Ward*, 736 S.E.2d 321, 329 (Va. 2012).   In interpreting an insurance policy, a court cannot "make a new contract for the parties different from that plainly intended and thus create a liability not assumed by the insurer." *Blue Cross & Blue Shield of Va.*, 450 S.E.2d at 140 (quotations omitted).   "Each component of an insurance contract should be considered and construed together and seemingly conflicting provisions harmonized when that can be reasonably done, so as to effectuate the intention of the parties as expressed therein."   *Transcontinental*, 551 S.E.2d at 318 (internal quotations omitted).

In insurance coverage litigation "[g]enerally, policyholders bear the burden of proving that the claim is covered by the insurance policy."   *Carilion Clinic v. Am. Guarantee & Liab. Ins. Co.*, 583 F. Supp. 3d 715, 728 (W.D. Va. 2022) (citing *Res. Bankshares Corp. v. St. Paul Mercury Ins. Co.*, 407 F.3d 631, 636 (4th Cir. 2005)).   "Where an insured has shown that his loss occurred while the insurance policy was in force, but the insurer relies upon exclusionary language in the policy as a defense, the burden is upon the insurer to prove that the exclusion applies to the facts of the case."   *Id.* (citing *Bituminous Cas. Corp. v. Sheets*, 389 S.E.2d 696,

698 (Va. 1990)).   Importantly, if an ambiguity exists "on the face of the policy," *Granite State Ins. Co. v. Bottoms*, 415 S.E.2d 131, 134 (Va. 1992), "it must be construed against the insurer." *Res. Bankshares Corp.*, 407 F.3d at 636.   Under Virginia law, an insurance policy is ambiguous when "it can reasonably have more than one meaning given its context," where "two constructions are equally possible," or where "reasonable [persons] . . . may reach reasonable, but opposite, conclusions" as to the policy provision's meaning.   *See SunTrust Mortg., Inc.*, 784 F. Supp. 2d at 592 (citations omitted).

"A court should allow common sense as well as canons of construction to guide its interpretation of a provision."   *Dairy Energy, Inc. v. Hartford Steam Boiler Inspection & Ins. Co.*, 566 F. Supp. 3d 515, 523 (W.D. Va. 2021) (citing *Mount Aldie, LLC v. Land Trust of Va., Inc.*, 796 S.E.2d 549, 555 (Va. 2017)).   Terms used in the policy "must be given only the plain meaning of that term that makes sense in, or has some application to," the context in which the term appears.   *Morrow Corp. v. Harleysville Mut. Ins. Co.*, 110 F. Supp. 2d 441, 449 (E.D. Va. 2000) (citing *Gates, Hudson & Assocs. v. Fed. Ins. Co.*, 141 F.3d 500, 502 (4th Cir. 1998); *see also Erie Ins. Exch. v. EPC MD 15, LLC*, 822 S.E.2d 351, 355 (Va. 2019) ("[A] judicial interpretation should conform to the plain meaning that reasonable insurers and insureds likely would have attributed to the words.").   "Only in doing so is the parties' contractual intent given proper effect."   *Morrow Corp.*, 110 F. Supp. 2d at 449.

III. ANALYSIS

## A. Brethren's Motion for Summary Judgment

### 1. Bacteria exclusion

Wise alleges that he inhaled Legionella bacteria as a result of his use of the hot tub and pool at the Best Western.   (Stip. ¶ 7.)   Because the parties agree that the Legionella at issue here is a bacteria under the Brethren Policy (*see id.* ¶ 8), the question of whether the bacteria exclusion applies to Wise's injury depends on whether the bodily consumption exception to the exclusion applies.   As noted, that exception provides that the bacteria exclusion "does not apply to any fungi or bacteria that are, are on, or are contained in, a good or product intended for bodily consumption."   (Brethren Policy 104.)   Put simply, the parties ask the court to determine whether the water in the hot tub and pool at the Best Western is a "good or product intended for bodily consumption" under the Brethren Policy.[3]   Because the phrase is susceptible to more than one reasonable interpretation in this context, it is ambiguous and must be construed against the insurer.   As a result, the exception to the exclusion applies here, and the exclusion thus does not

---

[3]   Wise argues in his opposition brief that because he simply pled in the underlying action "that the hotel's 'water, potable water and plumbing systems, hot tub and pool are goods and products intended for bodily consumption,'" Brethren now "cannot escape its duty to defend."   (*See* Dkt. No. 35 at 9 (quoting Dkt. No. 1-5 ¶ 18).)   The court disagrees.   First, that allegation is a legal conclusion that would not be entitled to the presumption of truth in the underlying action because the question of whether something is a "good or product intended for bodily consumption" under the Brethren Policy is necessarily dependent upon the interpretation of the insurance policy, which is a legal issue.   *See Beck v. McDonald*, 848 F.3d 262, 270 (4th Cir. 2017) ("We do not, however, apply the same presumption of truth to conclusory statements and legal conclusions contained in [the] complaint.") (internal quotations and citations omitted); *St. Paul Fire & Marine Ins. Co.*, 826 F. Supp. at 157 ("[T]he construction of insurance contracts is a legal question.").   More fundamentally, though, on a motion for summary judgment, plaintiffs "are not entitled to 'rest on such mere allegations, but must set forth by affidavit or other evidence specific facts, which for purpose of the summary judgment motion will be taken to be true.'"   *Beck*, 848 F.3d at 270 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)).   Wise's complaint in the underlying action does not allege these specific facts, and the court will not blindly accept as true those bare legal conclusions.

bar coverage.

The Brethren Policy does not define the phrase "good or product intended for bodily consumption," so the court must consider "the plain meaning of that [phrase] that makes sense in, or has some application to," the context of a bacteria exclusion.[4]   *Morrow Corp.*, 110 F. Supp. 2d at 449 (citing *Gates, Hudson & Assoc.*, 141 F.3d at 502).   Brethren argues that, in this context, the word "consumption" refers to "[t]he action or fact of eating or drinking something, or of using something up in an activity."[5]   Brethren further underscores that this exception to the bacteria exclusion applies specifically to "bodily consumption," while two other portions of the Brethren Policy refer only to "consumption."[6]   According to Brethren, this indicates that the phrase "bodily consumption" must be read more narrowly than the unmodified word "consumption," and thus that the bodily consumption exception only refers to goods or products intended for eating or drinking.

As an initial matter, Brethren's proposed construction of the phrase "bodily consumption" appears reasonable.   For one, it is far from unreasonable to suggest that the word

---

[4]   Because Wise presented the court with plausible definitions of the words "good" and "product" in this context and Brethren's motion does not present any argument on how the court should define those terms, the court finds that those terms are, at a minimum, ambiguous, and construes them against the insurer.

[5]   *See* Dkt. No. 31 at 11 (citing *Consumption, n*., Oxford English Dictionary (3d ed. Mar. 2022), available at https://www.oed.com/view/Entry/39997?redirectedFrom=consumption#eid).

[6]   Those references to "consumption" appear in Section II.F of the Brethren Policy, which provides definitions of relevant terms.   First, under the Policy, for a given bodily injury or property damage to constitute a "products-completed operations hazard," that injury or damage "must occur away from premises you own or rent, unless your business includes the selling, handling or distribution of 'your product' *for consumption* on premises you own or rent."   (*See* Brethren Policy 92 (emphasis added).)   Second, the Policy defines the word "green" as "products, materials, methods and processes certified by a 'Green Authority' that conserve natural resources, reduce energy or water *consumption*, avoid toxic or other polluting emissions or otherwise minimize environmental impact."   (*See id.* 111 (emphasis added).)

"consumption" ordinarily and popularly refers to the act of drinking, eating, or using up something.  *See, e.g.*, *Heinecke v. Aurora Healthcare, Inc*., 841 N.W.2d 52, 58 (Wis. 2013) (interpreting analogous "consumption" exception and concluding that "[a] reasonable insured reading the policy would understand the word 'consumption' to reference a good or product that was intended to be eaten or drank, or otherwise used up").   Moreover, Brethren is correct that, because the exception refers specifically to "bodily consumption," this court must presume that the word "bodily" has a reasonable, non-superfluous meaning in this context.  *See City of Chesapeake v. States Self-Insurers Risk Retention Grp., Inc*., 628 S.E.2d 539, 541 (Va. 2006) ("No word or clause in the contract will be treated as meaningless if a reasonable meaning can be given to it, and there is a presumption that the parties have not used words needlessly.") (citations and quotations omitted)).   This indicates that the phrase "bodily consumption" must have a more specific meaning than standalone "consumption."   And that would also make sense in the context of the bacteria exclusion at issue here.   Under Brethren's reading, the policy would provide coverage whenever a person is injured due to their eating or drinking of one of the insured's contaminated goods or products that was intended for eating or drinking, yet still would exclude coverage when the person ingests a substance that was not so intended.

Wise maintains that the exception language unambiguously mandates coverage here because "[w]hen confronted with similar policy language, courts have uniformly held that the [consumption exception] does not apply to legionella exposure."   (Dkt. No. 35 at 6–7.)   Wise primarily relies on the Northern District of Georgia's interpretation of a nearly identical policy exception in *Nationwide Mutual Fire Insurance Co. v. Dillard House*, which concluded that

water in a hot tub could reasonably be defined as a "good or product intended for bodily consumption" under the policy.   651 F. Supp. 2d 1367, 1378–79 (N.D. Ga. 2009).   In *Dillard House*, the court suggested that water in a hot tub is a "good," that "consumption" could reasonably be defined as "the utilization of economic goods in the satisfaction of wants," and that "bodily" could be defined as "of or relating to the body."   *Id.* at 1378 (citing Webster's Third New International Dictionary, Unabridged (2002)).   Fusing those definitions, the court found that a reasonable interpretation of the bodily consumption exception supported the defendants' position that the alleged injury—contraction of Legionnaires' disease from bathing in a hot tub—fell within the scope of coverage.   *Id.* at 1379.   A preponderance of district court decisions interpreting bodily consumption exceptions have relied on *Dillard House* to reach the same or similar conclusions.[7]

Wise's argument that this court must find the policy language unambiguous in his favor "[g]iven the number of rulings which follow [his] argument" (Dkt. No. 35 at 7 n.33) reflects a mistaken understanding of how this court assesses ambiguity.   A contractual provision or term is not ambiguous "simply because courts have reached different conclusions as to its definition." *Solers, Inc. v. Hartford Cas. Ins. Co.*, 146 F. Supp. 2d 785, 792–93 (E.D. Va. 2001) (citations omitted).   It follows, then, that a provision or term is not *un*ambiguous simply because other

---

[7] *Westport Ins. Corp. v. VN Hotel Grp., LLC*, 761 F. Supp. 2d 1337 (M.D. Fla. 2010) (following *Dillard House* and applying Florida law); *Acuity v. Reed & Assocs. of TN, LLC*, 124 F. Supp. 3d 787 (W.D. Tenn. 2015) (following *Dillard House* and applying Tennessee law); *Paternostro v. Choice Hotel Int'l Servs. Corp.*, No. 13-0662, 2014 WL 6460844 (E.D. La., Nov. 17, 2014) (following *Dillard House* and applying Louisiana law).   Before *Dillard House*, one district court within the Fourth Circuit had interpreted an exception that applied only to "consumption" (as opposed to bodily consumption).   *Union Ins. Co. v. Soleil Grp., Inc.*, No. 2:07-cv-3995-PMD, 2009 WL 8652923 (D.S.C. May 13, 2009).

courts have reached *similar* conclusions as to its definition.   Because there is no binding authority interpreting the phrase "bodily consumption" in an analogous exception to an insurance policy exclusion, this court must consider every proposed interpretation of that phrase (whether explicitly suggested by the parties or adopted by lower courts in the decisions to which the parties cite), assess whether more than one such interpretation is reasonable, and, if so, interpret that ambiguity in favor of the insured.   If another court's interpretation of the exclusion is indeed reasonable, that certainly would support a finding that the disputed phrase is ambiguous. But the fact that a court has reached a particular conclusion interpreting one policy does not, in itself, make that conclusion reasonable in the context of this policy, and this court is not bound to mechanically declare ambiguity here just because there is another district court decision so finding.

That said, although Wise's proposed interpretation of the phrase "good or product intended for bodily consumption"—reflected in *Dillard House* and its progeny—might not be the *most* reasonable in Brethren's view, the court still agrees that it is reasonable at a threshold level. In support of this interpretation, the *Dillard House* court posited that water in a hot tub is an economic good "since it gives economic utility to the hot tub" and "is a commodity for which hotels and other users pay;" that one "consume[s]" the hot tub water by bathing in it because such bathing is "a mean[s] of indulging, or 'satisfying,' a desire, or 'want;'" and that hot tubs "are created for the purpose of bathing one's body," meaning that the user's "consumption" of the hot tub water is "bodily" in nature.   *See* 651 F. Supp. 2d at 1378–79.[8]

---

[8]   *See also Union Ins. Co*., 2009 WL 8652923, at *5 ("[T]he court believes that the water provided by the

16

This construction would also make sense in context.   Under this interpretation, the exclusion would not apply when the insured is injured due to their use of a substance that was intended to be used by the body (such as water in a hot tub or pool), even if the substance was not specifically intended for eating or drinking.[9]   The court is hard pressed to conclude that reasonable people could not read the consumption exception in the same way the *Dillard House* court did, even if that is not how this court would interpret it.   That alone requires a finding that the exception is ambiguous and must be construed in favor of the insured.

Importantly, even if the court adopted Brethren's suggested definition of "consumption" as the only reasonable interpretation of that word, ambiguity would still be present.   In its brief, Brethren proposed defining consumption as "[t]he action or fact of eating or drinking something, or of using something up in an activity."   (*See* Dkt. No. 31 at 11 (quoting *Consumption, n*., Oxford English Dictionary (3d ed. Mar. 2022).)   Reasonable people might agree that water in a pool or hot tub is not generally intended for eating or drinking, yet still disagree on whether a person's body is "using [] up" that water while bathing in it.   As one district court in the Fourth Circuit has noted, "while water in either a swimming pool or whirlpool tub may not be noticeably 'used up' every time a person makes use of one of these amenities, the Hotel surely puts water in them for its guests' consumption."   *Union Ins. Co.*, 2009 WL 8652923, at *5.

---

Hotel in sinks, bathtubs, and showers[,] so that its guests can make use of the soap, shampoo, and hand towels[,] is also intended for consumption."); *United States v. Midway Heights Cnty. Water Dist.*, 695 F. Supp. 1072, 1076 (E.D. Cal. 1988) (interpreting the phrase "human consumption" of water to include normal uses such as bathing and showering, cooking and dishwashing, and maintaining oral hygiene).

[9]   But this stands in contrast to instances where, for example, a particular body of water is meant only for decorative display and not for bodily use by the guests.   *See Heinecke*, 841 N.W.2d at 54 (finding that a decorative water fountain in the lobby of a hospital is not a good or product intended for consumption).

Although "the physical make-up and quantity of water in a swimming pool or whirlpool tub does not visibly deteriorate or decrease after every use, like bottled water, napkins, or soap, . . . the *quality* of the water, undoubtedly the feature that hotel guests care most about, surely does."   *Id.* (emphasis in original).   Even under Brethren's construction of the bodily consumption exception to the bacteria exclusion, there would still be meaningful ambiguity to be construed in the insured's favor.

In sum, although the Brethren Policy's bacteria exclusion does apply to inhalation of Legionella bacteria, because the court finds that, under Virginia law, the bodily consumption exception to that exclusion applies here, Brethren is not entitled to summary judgment on that basis.

### 2.   Pollution exclusion

Brethren alternatively argues that it is entitled to summary judgment because the Policy's pollution exclusion excludes coverage for Wise's injuries.   Under the pollution exclusion, the Policy does not apply to "'[b]odily injury' . . . arising out of the actual, alleged, or threatened discharge, dispersal, seepage, migration, release or escape of 'pollutants' at or from any premises, site or location which is or was at any time owned or occupied by . . . any insured." (Brethren Policy 81–82.)   The parties are bound by the Policy's definition of "pollutants," which include "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste."   (*Id.* 78.)   Because no party disputes that the injuries alleged here are "bodily injur[ies]," that Wise's alleged injuries were caused by exposure to Legionella bacteria, or that Jai Dev owns the Best Western Radford Inn, the only remaining

question is whether Legionella bacteria is a "pollutant" as defined by the Policy.   The court finds that it is not.

Brethren first argues, and the court agrees, that "[i]n interpreting similar pollutant exclusions, courts have held that Virginia does not limit the meaning of 'pollutant' to traditional environmental pollution."   (*See* Dkt. No. 31 at 14 (citing *TRAVCO Ins. Co. v. Ward*, 715 F. Supp. 2d 699, 715–17 (E.D. Va. 2010) (citing cases)).)   But Brethren then refers to an allegation from Wise's complaint in the underlying action—which states that "[a] person can become infected with Legionella when they breathe in steam or mist from a contaminated hot tub" (*see id.* at 15 (citing Dkt. No. 1-5 ¶ 11) (italics omitted))—and argues that because "steam and mist are simply water vapor" that "are both liquid and gaseous, . . . their substance falls within the definition of 'pollutant' under the policy."   (*See id.*)   Further, Brethren maintains that the exclusion applies because "[t]he steam rising off of the surface of the hot tub—carrying with it the Legionella bacteria—is dispersal, migration, or escape of the pollutant from the hot tub in which it was contained."   (*See id.* (italics omitted).)

Brethren's argument errs in that it focuses on whether the water vapor containing the Legionella bacteria is a pollutant, instead of whether the Legionella itself is a pollutant.   The bodily consumption exception discussed earlier refers to the "good or product" in which the harmful agent presents, but this pollution exclusion refers to the harmful agent itself.   The parties have stipulated that Legionella is a bacteria, and this court agrees with the panoply of lower court decisions concluding that "Legionella bacteria are not 'pollutants'" as defined in policies such as this one.   *See, e.g.*, *Westport Ins. Corp.*, 761 F. Supp. 2d at 1343.

Notably, unlike Legionella bacteria, all of the examples of "pollutants" that are enumerated in the Brethren Policy's definition (smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste) are "non-living and readily described as either 'solid, liquid, gaseous or thermal irritants or contaminants.'"   *See id.*   "Although Legionella bacteria may be contaminants in the abstract, they are living organisms and not readily classified as 'solid, liquid, gaseous, or thermal' substances, which are the only contaminants defined as 'pollutants'" under the Brethren Policy.   *See id.* (footnote omitted).   This distinction between Legionella bacteria and pollutants is evident from "the existence of separate exclusions for pollution and for bacteria" in the Brethren Policy.   *Id..* at 1344.   Finding otherwise "would permit any living organism with a contaminating effect—including bacteria, insects, rodents, and the like—to be 'pollutants'" that would trigger the pollution exclusion.   *Id.*

Because Legionella bacteria is not a pollutant under the Brethren Policy, the court finds that the pollution exclusion does not apply, and Brethren is not entitled to summary judgment on that basis.

### 3.  Summary judgment for defendants

In addressing Brethren's motion for summary judgment, the court has declared the rights and obligations of the parties under the Brethren Policy[10]  and determined that Wise's alleged injury is a covered loss.   Although defendants have not formally cross-moved for summary

---

[10]   In their amended complaint, plaintiffs raised several issues under their respective policies on which they sought declarations as to the parties' rights and obligations, other than those addressed in this opinion.   (*See* Am. Compl. 9–10.)   Because plaintiffs did not raise any of those issues in their summary judgment motions, and they are nevertheless obviated by the bacteria/organic pathogen and pollution exclusions, the court does not address them here.

judgment on this claim, there are no remaining factual issues to resolve, and pursuant to the court's declarations, defendants are entitled to judgment as a matter of law.

Under Federal Rule of Civil Procedure 56(f), a court may *sua sponte* grant summary judgment for a non-moving party after giving notice and a reasonable time to respond. *See* Fed. R. Civ. P. 56(f)(1); *see also Moore v. Equitrans, L.P.*, 27 F.4th 211, 224 (4th Cir. 2022). "'[D]istrict courts are widely acknowledged to possess the power to enter summary judgments *sua sponte*, so long as the losing party was on notice that she had to come forward with all of her evidence.'" *Id.* (quoting *Celotex Corp.*, 477 U.S. at 326).

Here, Brethren was already on notice of and had a reasonable opportunity to address this issue in the briefing on its own motion for summary judgment. *See, e.g.*, *Colony Ins. Co. v. Buckeye Fire Equip. Co.*, No. 3:19-cv-00534-FDW-DSC, 2020 WL 6152381, at *4 (W.D.N.C. Oct. 20, 2020) ("Plaintiff has been put on sufficient notice during oral argument and in briefing by the parties such that this Court finds it appropriate to [grant] summary judgment in favor of Defendant pursuant to Fed. R. Civ. P. 56(f)(1)."); *see also Allstate Ins. Co. v. Fritz*, 452 F.3d 316, 323 (4th Cir. 2006) (granting summary judgment *sua sponte* in favor of all defendants where plaintiff already had notice and opportunity to demonstrate a genuine issue of material fact, based on another co-defendant's motion for summary judgment"). As such, the court will grant summary judgment to defendants on Brethren's claim.

**B. Great American's Motion for Summary Judgment**

**1. Organic pathogens exclusion**

Compared to the analogous provision in the Brethren Policy, interpreting the exception to

the organic pathogens exclusion in the Great American Policy is far more straightforward. Although the two exceptions are similar in that they both operate to exclude coverage for injuries caused by exposure to bacteria (which the parties agree Legionella is), Great American's exception is worded in a crucially different way.   The Great American Policy excepts from exclusion any "'bodily injury' caused by any 'organic pathogen' in or on any food or beverages sold, distributed, served or handled by any insured."   (Great American Policy 64.)   Wise argues that Great American owes coverage because the water in the pool and hot tub is a beverage that was distributed or handled by the Best Western.

The court disagrees for several reasons.   First, from a common-sense perspective, "no native English speaker would refer to water intended for swimming or bathing as a 'beverage.'" (Dkt. No. 32-1 at 8.)   Rather, the word "beverage" ordinarily refers to a liquid intended for drinking that a person either purchases from another or creates for themselves.   As Great American playfully but accurately notes, "[a]ny reasonable hotel guest who felt thirsty and wanted to quench her thirst with a 'beverage' would not begin swallowing swimming pool water but would seek out a source of potable liquid intended for human ingestion (and presumably regulated by appropriate authorities to keep it safe for human ingestion).   (*Id.* at 7.)

Moreover, Webster's New International Dictionary (which Virginia courts have repeatedly consulted in ascertaining the plain meaning of certain words)[11]  defines "beverage" as

---

[11]   *See, e.g.*, *Erie Ins. Exch. v. Jones by Hardison*, 870 S.E.2d 716, 718 (Va. 2022) (considering Webster's Third New International Dictionary in interpreting an insurance policy's use of "type" in an exception to an exclusion); *Hubbard v. Henrico Ltd. P'ship*, 497 S.E.2d 335, 338 (Va. 1998) (considering Webster's Third New International Dictionary in defining the word "invoke" as used in a statute); *Loudoun Cnty. Dep't of Soc. Servs. v. Etzold*, 425 S.E.2d 800, 802 (Va. 1993) (considering Webster's Third New International Dictionary in defining the word "originate" as used in a statute).

a "drinkable liquid."  *See Beverage, n.*, Webster's Third New International Dictionary (2002).

Wise's sole argument on this point is that "water is a beverage because it is a drinkable liquid"

(*see* Dkt. No. 36 at 6).   But under that reading, every liquid is, in some sense, drinkable, to the

extent it is physically capable of being orally ingested.   Webster's Dictionary itself further

defines "drinkable" as "suitable or safe for drinking."  *See Drinkable, adj.*, Webster's Third

New International Dictionary (2002).   Though water in a hot tub or pool is clearly a liquid, it

would strain credulity to suggest that hot tub or pool water is ordinarily understood to be suitable

or safe for drinking.[12]

Several courts have recognized this and construed the word "beverage" to refer only to a

liquid intended for drinking.   *See, e.g.*, *In re Opinion of the Justices*, 186 N.E. 490, 493 (Mass.

1933) ("Beverage in its common meaning signifies a liquid designed for drinking by human

beings."); *Spratt v. Crusader Ins. Co.*, 37 P.3d 1269, 1273 (Wash. Ct. App. 2002) (following

Webster's Dictionary and construing the word "beverage" in an insurance policy as "a 'liquid for

drinking'" especially "'such liquid other than water . . . [usually] prepared . . . before being

consumed.'"); *United States v. Robason*, 38 F. Supp. 991, 992 (D. Kan. 1941) (construing the

word "beverage" and relying on an earlier edition of Webster's Dictionary defining the term as

"'[l]iquid for drinking; drink; usually, drink artificially prepared, and of an agreeable flavor.'")

Absent more, Wise has failed to demonstrate that this exception to the organic pathogen

---

[12]  *Cf. F.W. Woolworth Co. v. State*, 113 P.2d 399, 401 (Okla. Crim. App. 1941) ("[T]he definition of the term 'capable of being used as a beverage' . . . does not apply to a liquid that it is possible to swallow, but not reasonably fit or palatable"); *Wheeler v. State*, 220 P. 962, 964 (Okla. Crim. App. 1923) ("[T]he mere fact that such compound or mixture can be and is swallowed, does not make it a beverage").

exclusion is susceptible to more than one reasonable reading.

Because the parties do not dispute that Legionella is a bacteria and the court finds that hot tub or pool water is not a "beverage" as referred to in the policy, the organic pathogen exclusion applies to Wise's alleged injuries, and Great American is entitled to summary judgment.[13]

## C. Wise's Declaratory Counterclaim

Pursuant to its discretion under the Declaratory Judgment Act, a court may dismiss a declaratory counterclaim that is the "mirror image" of causes of action asserted in the complaint. *Biltmore Co. v. NU U, Inc.*, No. 1:15-CV-00288-MR, 2016 WL 7494474, at *2 (W.D.N.C. Dec. 30, 2016) (citations omitted).   "[W]hen the request for declaratory relief brings into question issues that already have been presented in plaintiff's complaint and defendant's answer to the original claim, courts often exercise their discretion to dismiss the counterclaim on the ground that it is redundant and a decision on the merits of plaintiff's claim will render the request for a declaratory judgment moot."   *Boone v. MountainMade Found.*, 684 F. Supp. 2d 1, 12 (D.D.C. 2010) (quoting *Waller v. DB3 Holdings, Inc.*, No. CIV.A.3:07-CV-0491-D, 2008 WL 373155, at *3 (N.D. Tex. Feb. 12, 2008)).   "[T]here must be some useful purpose to be achieved in deciding a controversy that a party seeks to have resolved through a declaratory judgment claim."   *Id.* (quoting *Pub. Serv. Comm'n of Utah v. Wycoff, Co., Inc.*, 344 U.S. 237, 240 (1952)). "[A] counterclaim is not duplicative or redundant if it asserts an independent case or controversy that survives dismissal of the plaintiff's claim."   *Marvel Worldwide, Inc. v. Kirby*, 756 F. Supp.

---

[13]   Because Great American is entitled to summary judgment on this basis, the court does not reach its alternative argument that it is not obligated to provide coverage because the primary policy excludes coverage.

2d 461, 467 (S.D.N.Y. 2010).

Here, Wise's counterclaim is functionally duplicative of plaintiffs' amended complaint. It raises the same issues and likewise seeks a declaration as to the parties' rights and obligations under the policies.   However, the court has already determined those rights and obligations in ruling on plaintiffs' motions for summary judgment, and the counterclaim does not raise any independent case or controversy.   As a result, Wise's counterclaim will be dismissed.

### IV.  CONCLUSION

For the foregoing reasons, the court will deny Brethren's motion for summary judgment (Dkt. No. 30), grant summary judgment to defendants on Brethren's declaratory claim *sua sponte*, grant Great American's motion for summary judgment (Dkt. No. 32), and dismiss Wise's declaratory counterclaim (Dkt. No. 12).   The court will issue an appropriate order.

Entered: February 14, 2023.

*/s/ Elizabeth K. Dillon*
Elizabeth K. Dillon
United States District Judge